JAY M. COGGAN (SBN 86107)
DAVID N. TARLOW (SBN 214050)
JOSHUA G. BLUM (SBN 249082)
COGGAN & TARLOW
1925 Century Park East, Suite 2320
Los Angeles, California 90067
Tel: (310) 407-0922
Fax: (310) 407-0923

Attorney for Defendant/Counterclaim-Plaintiff RMG
TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TICKETMASTER, L.L.C., a Virginia limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> RMG TECHNOLOGIES, INC., a Delaware corporation and DOES 1 through 10, inclusive, <br><br> Defendant. <br><br>_____ <br><br> AND RELATED COUNTER-CLAIMS <br> _____ | CASE NO: CV-07-2534 ABC(JCx) <br><br> **RMG TECHNOLOGIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TICKETMASTER, LLC AND IAC/INTERACTIVECORP'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6).** <br><br> **Date:** 2/25/2008 <br> **Time:** 10:00 a.m. <br> **Place:** Courtroom of Hon. Audrey B. Collins |

Dockets.Justia.com

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . 1

I.  PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.  STANDARD ON A MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) . . . . . . . . 1

B.  RMG HAS SUFFICIENTLY PLEADED A COUNTERCLAIM FOR
ATTEMPTED MONOPOLIZATION.. . . . . . . . . . . . . . . . . . . . . . 2

    1.  RMG Has Pleaded a Specific Intent to Destroy Competition in the
Ticket Resale Market. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.  RMG Has Pleaded a Dangerous Probability of Success. . . . . . . 5

    3.  RMG Has Alleged Facts Which Show That Ticketmaster has
Economic Power in the Ticket Resale Market.  . . . . . . . . . . . . . 6

    4.  RMG's Factual Allegations Confirm that Ticketmaster Is
Attempting to Monopolize the Ticket Resale Market. . . . . . . . . 8

    5.  RMG Alleges Anticompetitive Conduct. . . . . . . . . . . . . . . . . . . 9

        a.  The Noerr-Pennington Doctrine Does not Immunize
Ticketmaster and IAC from RMG's Claims. . . . . . . . . . . 9

        b.  Whether Ticketmaster's Website's Terms of Use Promote
Its Legitimate Goal of Protecting Its Reputation and
Consumer Goodwill is an Issue of Fact, and is Not
Appropriate for Determination on a 12(b)(6) Motion.  .  11

        c.  Other Anticompetitive Conduct.  . . . . . . . . . . . . . . . . .  12

        d.  RMG States a Counterclaim Against IAC.  . . . . . . . . . .  12

    6.  Request for Leave to Re-plead.. . . . . . . . . . . . . . . . . . . . . . . .  13

C.     RMG HAS SET FORTH A CLAIM FOR WHICH RELIEF MAY BE
GRANTED FOR ITS COUNTERCLAIM OF VIOLATION OF
CALIFORNIA'S UNFAIR COMPETITION LAW BASED ON
TICKETMASTER'S VIOLATION OF SECTION 2 OF THE
SHERMAN ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.     COPYRIGHT MISUSE IS A VIABLE COUNTERCLAIM . . . . . . . . . .

E.     RMG HAS STATED A CLAIM UPON WHICH RELIEF MAY BE
GRANTED WITH RESPECT TO ITS COUNTERCLAIM FOR
DECLARATORY RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# **TABLE OF AUTHORITIES**

**CASES** **Page(s)**

*American Tobacco, Co. v. United States*,
   (1946) 328 U.S. 781, 797, 66 S. Ct.1125, 1133, 90 L.Ed. 1575     . . . . . 7

*Arpin v. Santa Clara Valley Transportation Agency*,
   (9th Cir. 2001) 261 F.3d 912 at 923 . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Aurora Enterprises, Inc. v. National Broadcasting, Inc.*,
   (9th Cir. 1982) 688 F.2d 689, 695-696.  . . . . . . . . . . . . . . . . . . . . . 5, 9

*Bell Atlantic v. Twombly*,
   (2007) 127 S. Ct. 1955, 1964-1965, 167 L.Ed. 2d 929. . . . . . . . . . . . . 1

*Catch Curve, Inc. v. Venali, Inc.*,
   (C.D.Cal. 2007) 519 F.Supp.2d 1028, *1040 . . . . . . . . . . . . . . . . . . 14

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
   (1999) 20 Cal.4th 163, 187  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Christofferson Dairy, Inc. v. MMM Sales, Inc.*,
   (9th Cir. 1988)  849 F.2d 1168, 1174 . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Clipper Exxpress v. Rocky Mountain Tariff Bureau*,
   (9th Cir. 1982) 690 F.2d 1240, 1253 . . . . . . . . . . . . . . . . . . . . . . .  10

*Covad Communications Company v. Bellsouth Corporation*,
   (11th Cir. 2002) 299 F.3d 1272, 1279, 2002-2Trade Cases P 73,761. . . 2

*Dimidowich v. Bell & Howell*,
   (9th Cir. 1986) 803 F.2d 1473, 1478 . . . . . . . . . . . . . . . . . . . . . . .  13

*Doe v. Abbott Laboratories*,
   (N.D.Cal., 2004) 2004 WL 3639688, *5 . . . . . . . . . . . . . . . . . . . . .  14

*Eastman Kodak Company v. Image Technical Services, Inc.*,
   (1992) 112 S. Ct. 2072, 2081, 504 U.S. 451, 119 L.Ed.2d 265. 2, 3, 7, 12

*Electronic Data Systems Corp. v. Computer Associates Intern., Inc.*,
    (N.D.Tex.,1992) 802 F.Supp. 1463, *1466 . . . . . . . . . . . . . . . . . 15

*Forro Precision, Inc. v. IBM, Corp.*,
    (9th Cir. 1980) 673 F.2d 1045, 1059 . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    (1985) 471 U.S. 539 545-546, 105 S.Ct. 2218, 85 L.Ed. 2d 588 . . . . 15

*High Tech. Careers v. San Jose Mercury News*,
    (9th Cir. 1993) 996 F.2d 987, 990 . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*,
    (9th Cir. 1980) 627 F.2d 919, 924 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Image Technical Service, Inc. v. Eastman Kodak Co.*,
    (9th Cir. 1990) 903 F.2d 612, 620 . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
    (2003) 29 Cal.4th 1134, 1135 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Newcal Industries, Inc. v. IKON Office Solution, et al.*,
    (9th Cir. 2008) _F.3d_, 2008 WL 185520, *2 . . . . . . . . . . . . . . . . . 3

*Oahu Gas Service, Inc. v. Pac. Res., Inc.*,
    (9th Cir. 1988) 838 F.2d 360 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Open Source Yoga Unity v. Choudhury*,
    (N.D.Cal. 2005) 2005 WL 756558, *8 . . . . . . . . . . . . . . . . . . . . . . 16

*Oregon National Council v. Mohla*,
    (9th Cir. 1991) 944 F.2d 431, 533 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
    (11th Cir. 1983) 711 F.2d 989, 994-995 . . . . . . . . . . . . . . . . . . . . . . 2

*Rickards v. Canine Eye Registration Foundation, Inc.*,
    (9th Cir. 1985) 783 F.2d 1329, 1335. . . . . . . . . . . . . . . . . . 2, 5, 9, 10

*Sunbelt Television, Inc. v. Jones Intercable, Inc.,*
   (C.D.Cal.,1992) 795 F.Supp. 333, 338 . . . . . . . . . . . . . . . . . . . . . . . .   14

*Twentieth Century Music Corporation v. Aiken,*
   (1975) 422 U.S. 151 at 156, 95 S. Ct. 2040, 45 L.Ed2d 84  . . . . . . . .   15

*United States v. E.I. duPont,*
   (1956) 351 U.S. 377, 389, 76 S. Ct. 994, 100 L.Ed. 1264  . . . . . . . . . .   6

## **STATUTES**

15 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 2, 3, 11, 13

Federal Rule Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . .   1, 3, 11, 12

Federal Rule Civil Procedure 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

California Business and Professions Code § 17200  . . . . . . .   1, 13, 14, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  PRELIMINARY STATEMENT**

TICKETMASTER, L.L.C. ("Ticketmaster") has moved to dismiss RMG TECHNOLOGIES, INC.'S ("RMG") First Amended Counterclaims ("FACC") One through four, respectively, for Attempted Monopolization-Violation of Sherman Antitrust Act 15 U.S.C. § 2, Misuse of Copyright, Violation of California Unfair Competition Law- Business and Professions Code § 17200 and Declaratory Relief, even though all four said causes of action state claims upon which relief may be granted.  Therefore, RMG respectfully requests that the instant motion be denied in its entirety.

**II.  ARGUMENT**

**A.      STANDARD ON A MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

Pursuant to Rule 12(b)(6), a defense for failure to state a claim upon which relief may be granted may be made by the pleader by motion.

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations of the complaint as true and draw all *reasonable inferences* in favor of the nonmoving party." *Arpin v. Santa Clara Valley Transportation Agency*, (9th Cir. 2001) 261 F.3d 912 at 923. (Emphasis added).

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests'...Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, (2007) 127 S. Ct. 1955, 1964-1965, 167 L.Ed. 2d 929.

"There is no special rule requiring more factual specificity in antitrust pleadings." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, (9th Cir. 1980) 627 F.2d 919, 924.

1    "Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive

2    antitrust cases. In *Quality Foods*, which involved claims under sections 1 and 2

3    of the Sherman Act, this Court stated that 'the threshold of sufficiency that a

4    complaint must meet to survive a motion to dismiss for failure to state a claim is

5    exceedingly low.'" *Covad Communications Company v. Bellsouth Corporation*,

6    (11th Cir. 2002) 299 F.3d 1272, 1279, 2002-2 Trade Cases P.73,761; *Quality*

7    *Foods  de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, (11th Cir.

8    1983) 711 F.2d 989, 994-995.

9    **B.    RMG HAS SUFFICIENTLY PLEADED A COUNTERCLAIM FOR**

10    **ATTEMPTED MONOPOLIZATION.**

11    Pursuant to Sherman Antitrust Act 15 U.S.C. § 2 "[e]very person who

12    shall monopolize, or attempt to monopolize, or combine or conspire with any

13    other person or persons, to monopolize any part of the trade or commerce among

14    the several States, or with foreign nations, shall be deemed guilty of a felony,

15    and, on conviction thereof, shall be punished by fine not exceeding

16    $100,000,000 if a corporation, or, if any other person, $1,000,000, or by

17    imprisonment not exceeding 10 years, or by both said punishments, in the

18    discretion of the court."

19    "To establish a violation of 15 U.S.C. § 2, a plaintiff must prove (1)

20    specific intent to control prices or destroy competition in some sort of

21    commerce; (2) predatory or anticompetitive conduct directed toward

22    accomplishing that purpose; (3) a dangerous probability of success; and (4)

23    causal antitrust injury." *Rickards v. Canine Eye Registration Foundation, Inc.*,

24    (9th Cir. 1985) 783 F.2d 1329, 1335.

25    If a party adopts a scheme of willful acquisition or maintenance of

26    monopoly power, it will have violated 15 U.S.C. § 2. *Eastman Kodak Company*

27    *v. Image Technical Services, Inc.*, (1992) 112 S. Ct. 2072, 2081, 504 U.S. 451,

28    119 L.Ed.2d 265.

1    In this matter, it is respectfully submitted that RMG has pleaded facts

2    which satisfy all three of the aforestated elements.

3    **1.    RMG Has Pleaded a Specific Intent to Destroy Competition in**

4    **the Ticket Resale Market.**

5    Ticketmaster argues that RMG has failed to plead the element of a 15

6    U.S.C. § 2 violation of specific intent to destroy competition because RMG

7    allegedly failed to define the "relevant market" or describe the products present

8    in the "relevant market." This argument has no merit.

9    "There is no requirement that these elements of the antitrust claim be pled

10   with specificity. The antitrust complaint therefore survives a Rule 12(b)(6)

11   motion unless it is apparent from the face of the complaint that the alleged

12   market suffers from a fatal legal defect. And since the validity of the 'relevant

13   market' is typically a factual element rather than a legal element, alleged

14   markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by

15   summary judgment or trial." *Newcal Industries, Inc. v. IKON Office Solution, et*

16   *al.*, (9th Cir. 2008) _F.3d_, 2008 WL 185520, *2. The proper market definition

17   often can be determined only after a factual inquiry into the "commercial

18   realities" faced by customers, which occur during discovery. *See Eastman*

19   *Kodak Company v. Image Technical Services, Inc.*, (1992) 112 S. Ct. 2072,

20   2090, 504 U.S. 451, 119 L.Ed.2d 265.

21   In *Newcal Industries, Inc.*, (9th Cir. 2008) _F.3d_, 2008 WL 185520, *6-9

22   the Ninth Circuit Court of Appeals found that the plaintiff adequately pleaded

23   the "relevant market" where, among other things: (1) plaintiff pleaded that there

24   were two distinct markets for products and services, ie a primary market and a

25   derivative aftermarket; (2) plaintiff pleaded that the defendant had monopoly

26   power in the primary market; (3) that monopoly power in the primary market

27   gave it a unique position in the wholly derivative aftermarket; and (4) plaintiff

28   pleaded facts which show that defendant used its unique position due to its

1   activity in the primary market to restrain trade in a wholly derivative

2   aftermarket.

3         In RMG's FACC, it alleges that Ticketmaster maintains monopoly power

4   in the retail ticketing services market, as it maintains 60% to 90% of that

5   industry.  (FACC ¶ ¶8, 10, 11).  RMG alleges that there is a market for the resale

6   of tickets, thus a derivative or secondary market for the resale of tickets.  (FACC

7   ¶ 13 14).  RMG has alleged that Ticketmaster has attempted to obtain a

8   monopoly in the market for the resale of tickets by: (1) purchasing ticket broker

9   businesses; (2) reselling previously purchased tickets on the TicketExchange

10  and TeamExchange portions of its website; (3) selling tickets via auction on its

11  website; (4) purchasing software companies that create ticketing software; (5)

12  suing software companies and ticket brokers who allegedly use software to

13  purchase tickets in order to drive them out of the resale market; (6) excluding

14  ticket resellers from being able to purchase tickets on the retail market; (7)

15  excluding ticket resellers from using its website to purchase retail tickets; and

16  (8) creating "terms of use" for its primary ticket selling website, in order to

17  control the ticket resale market by severely limiting the amount of tickets that its

18  competition in the resale market can purchase, restricting its competition in the

19  resale market's method of access to its website and prohibiting use of its website

20  by its competition in the resale market from using its website for commercial

21  purposes.  RMG has alleged that Ticketmaster has taken all of these actions in

22  an attempt to obtain a monopoly in the ticket resale market.  (FACC ¶ 15, 16, 17,

23  18, 23).

24        Further, Ticketmaster's argument that RMG has not defined the "relevant

25  market" is a frivolous argument.  In plain English, RMG has defined the

26  "relevant market" as the "ticket resale market."  The products being sold are

27  tickets which have previously been sold at retail, and the market includes all of

28  the players who make the acquisition and distribution of tickets on the ticket

resale market possible, including, but not limited to ticket brokers and ticketing software developers.  (FACC ¶¶ 15, 16, 17, 23, 24, 26).

Moreover, RMG has sufficiently alleged that the "relevant market," the resale market for tickets, is legitimate, thriving and vibrant "*in this country*."  (FACC ¶ 13)."  Therefore, RMG defined the geographic area of the "relevant market" as the United States.  In fact, Ticketmaster even acknowledged in its Motion to Dismiss that the relevant market is the "ticket resale market" in the United States.  (Motion to Dismiss 6:3-5).  Thus, Ticketmaster has actual notice of the geographic area of the market.

### 2.  RMG Has Pleaded a Dangerous Probability of Success.

"Dangerous probability of success is inferrable from 'evidence of conduct alone, provided the conduct is also the sort from which specific intent can be inferred." *Aurora Enterprises, Inc. v. National Broadcasting, Inc.*, (9th Cir. 1982) 688 F.2d 689, 695-696.  *Rickards v. Canine Eye Registration Foundation, Inc.*, (9th Cir. 1985) 783 F.2d 1329, 1335.

In this matter, RMG has pleaded facts which show a dangerous probability of Ticketmaster's success in monopolizing the ticket resale market.

**First**, Ticketmaster has a monopoly in the retail ticket selling market.  (FACC ¶¶ 10, 11).

**Second,** Ticketmaster controls the vast majority of the retail ticket sales market which provides *all* of the inventory for the ticket resale market.  (FACC ¶¶ 23(4)).

**Third,** Ticketmaster now competes for sales on the ticket resale market.  (FACC ¶¶ 23(1)).

**Fourth**, Ticketmaster and its parent IAC are attempting to purchase some of the largest ticket resale brokers in the country for the purpose of reselling more tickets.  (FACC ¶¶ 23(2)).  **Ticketmaster disingenuously argued in the Motion to Dismiss that this Counterclaim should be dismissed because**

1  **RMG failed to identify any particular transaction where it purchased a**
2  **ticket reseller.  However, during the week of January 15, 2008,**
3  **Ticketmaster agreed to acquire ticket reseller TicketsNow.com for $265**
4  **million dollars.  The deal to acquire TicketsNow.com "will instantly make**
5  **Ticketmaster the number two secondary market reseller behind Stubhub!"**
6  (Request for Judicial Notice ("RJN"), Exhibit "A")

7  **Fifth,** Ticketmaster is attempting to purchase software companies which
8  produce ticketing software, so that it can purchase tickets to sell on the resale
9  ticket market.  (FACC ¶¶ 15, 23).

10  **Sixth,** it can be reasonably inferred from the facts pleaded that
11  Ticketmaster will probably succeed in monopolizing the resale ticket market
12  since: 1) it controls whether ticket brokers can purchase tickets at retail; 2) it has
13  the ability to prevent ticket brokers from purchasing tickets at retail; 3) it now
14  actively competes with ticket brokers for the resale of tickets; 4) it has an
15  incentive to drive ticket brokers out of the industry and usurp their marketshare,
16  as Ticketmaster now will resell tickets through its own website and through
17  TicketsNow.com;  and, 5) it has an incentive to purchase its own inventory at
18  retail prices to the exclusion of ticket brokers, in order to sell them on the resale
19  ticket market where it will obtain the entire markup on the ticket, and not merely
20  its convenience fees.

21  **3.    RMG Has Alleged Facts Which Show That Ticketmaster has**
22  **Economic Power in the Ticket Resale Market.**

23  "A party has monopoly power if it has, over 'any part of the trade or
24  commerce among the several states,' power of controlling prices or
25  unreasonably restricting competition.'" *United States v. E.I. duPont*, (1956) 351
26  U.S. 377, 389, 76 S. Ct. 994, 100 L.Ed. 1264.  "The test of willful maintenance
27  or acquisition of monopoly power is whether the acts complained of
28  unreasonably restricted competition." *Christofferson Dairy, Inc. v. MMM Sales,*

1 | *Inc.,* (9th Cir. 1988) 849 F.2d 1168, 1174.

2 | "The existence of such power ordinarily is inferred from the seller's

3 | possession of a predominant share of the market." *Eastman Kodak Company v.*

4 | *Image Technical Services, Inc.,* (1992) 112 S. Ct. 2072, 2081, 504 U.S. 451, 119

5 | L.Ed.2d 265. *See American Tobacco, Co. v. United States*, (1946) 328 U.S. 781,

6 | 797, 66 S. Ct. 1125, 1133, 90 L.Ed. 1575 (over two-thirds of the market is a

7 | monopoly).

8 | In the FACC, RMG has sufficiently pleaded facts which show that

9 | Ticketmaster has the power of restricting competition in the ticket resale market.

10 | **First,** Ticketmaster's market share for the primary ticket distribution

11 | services purchased by major venues in the U.S. is somewhere between 60% and

12 | 90%. (FACC ¶ 10). (This is a fact which will need to be fleshed out during

13 | discovery).

14 | **Second,** Ticketmaster maintains a monopoly in the retail ticketing

15 | industry. (FACC ¶ 11).

16 | **Third,** Ticketmaster controls a large percentage of all of the inventory

17 | which is sold for the ticket resale market. (FACC ¶ 23(4)).

18 | **Fourth,** Ticketmaster has specifically sought to exclude its competition in

19 | the resale ticket market from access to its inventory of tickets by blocking their

20 | access to the Ticketmaster website. (FACC ¶ 23(5))

21 | **Fifth,** Ticketmaster has used litigation and the threat of litigation to chill

22 | competitors in the ticket resale market, even though there is no legitimate

23 | business justification for doing so. (FACC ¶¶ 17, 18, 23 and 25).

24 | **Sixth,** Ticketmaster has misused its copyrights as a sword against its

25 | competition in the ticket resale market to prevent them from accessing its

26 | website and purchasing tickets at retail, rather than to protect its original

27 | expression in those copyrights. (FACC ¶ 19).

28 | **Seventh,** Ticketmaster has created its "terms of use" to assist it in

building a monopoly in the ticket resale market by greatly reducing the number of tickets which can be purchased on its website. (FACC ¶¶ 17).

**Eighth,** Ticketmaster competes with ticket brokers for the resale of tickets, (FACC ¶¶ 15, 23), and is the second largest reseller of tickets in the country. (RJN Exhibit "A").

All of the factors listed above, if proven, show that Ticketmaster has monopoly power in the ticket resale market because it clearly has the power to restrict its competition in the ticket resale market from being able to acquire tickets for the live events for which it sells tickets at retail, because it controls the ticket inventory. Moreover, RMG has specifically pleaded that Ticketmaster has taken actions to prevent its competition in the ticket resale market from acquiring tickets from that inventory. Ticketmaster's argument to the contrary is simply frivolous.

## 4. RMG's Factual Allegations Confirm that Ticketmaster Is Attempting to Monopolize the Ticket Resale Market.

In the Motion to Dismiss, Ticketmaster makes the novel argument that since RMG pleaded that many of Ticketmaster's contracts in the retail ticketing industry are expiring and clients are threatening not to renew, somehow Ticketmaster will no longer control the "vast majority" of retail tickets for "major venues and professional sports franchises" and therefore, would not be able to monopolize the ticket resale market. Ticketmaster's argument is frivolous for at least three reasons.

**First,** the face of the FACC pleads no facts which show that Ticketmaster's monopoly in the retail industry *has ended*. RMG has merely pleaded that Ticketmaster is bracing itself for the day when its monopoly in the retail ticketing business ends by attempting to monopolize the ticket resale market *now*, while it actually controls access to its inventory of tickets for a "vast majority" of live events.

1    **Second,** there are no facts pleaded in the FACC which negate the fact that

2    Ticketmaster has monopoly power *at the present time*, and is using that

3    monopoly power to restrict competition in the ticket resale market.[1]

4    **Third,** whether Ticketmaster would ever be able to monopolize the ticket

5    resale market is a factual issue which is not appropriate for determination on a

6    motion to dismiss. "This circuit has rejected the premise that probability of

7    actual monopolization is an essential element of *proof* of attempt to monopolize.

8    Specific intent to monopolize is sufficient and that intent may be inferred from

9    conduct. But...where there is not *proof* of market power, the conduct to support

10   an inference of specific intent to monopolize, should be of a kind clearly

11   threatening to competition or clearly exclusionary." *Forro Precision, Inc. v.*

12   *IBM, Corp.*, (9th Cir. 1980) 673 F.2d 1045, 1059. *Aurora Enterprises, Inc.*, (9th

13   Cir. 1982) 688 F.2d 689, 696. (Emphasis added).

14       **5.    RMG Alleges Anticompetitive Conduct.**

15       **a.    The Noerr-Pennington Doctrine Does not Immunize**

16              **Ticketmaster and IAC from RMG's Claims.**

17       "The *Noerr-Pennington* immunity is not, however, absolute. Immunity is

18   not afforded to those who resort to sham or unfounded litigation solely for anti-

19   competitive purposes." *Rickards v. Canine Eye Registration Foundation, Inc.*,

20   (9th Cir. 1985) 783 F.2d 1329, 1334. "When the antitrust plaintiff challenges

21   one suit, and not a pattern, a finding of sham requires not only that the suit is

22   baseless, but also that it has other characteristics of grave abuse, such as being

23

24   _____

25       [1]Now that Ticketmaster has used the time since RMG filed its FACC to
     allegedly go from a company that had merely commenced selling tickets on the resale
26   market on behalf of its customers who purchased tickets that they could not use, to
     the second biggest reseller in the ticket resale market through its acquisition of
27   TicketsNow.com, clearly demonstrates that it is in Ticketmaster's best interest to
28   eliminate other ticket resellers, so that it will not have competition in the ticket resale
     market, and so it will increase its profits.

**OPPOSITION TO MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

coupled with actions or effects external to the suit that are themselves, anti

competitive." *Rickards* (9th Cir. 1985) 783 F.2d 1329, 1334. Whether litigation

or threat of litigation is a sham or presented solely for anti-competitive purposes

is an issue of fact. *Clipper Exxpress v. Rocky Mountain Tariff Bureau*, (9th Cir.

1982) 690 F.2d 1240, 1253.

In this matter, the use of the threat of litigation, and litigation against

players in the ticket resale market is but one of several anticompetitive acts of

which RMG accuses Ticketmaster in its FACC.[2]  However, RMG has

sufficiently pleaded facts which show that Ticketmaster is not entitled to assert

the *Noerr-Pennington* Doctrine in this case.  Specifically, the threats of

litigation and litigation used by Ticketmaster have all arisen out of the alleged

violation of Ticketmaster's "Terms of Use." RMG has specifically alleged that

the "Terms of Use" do not serve any legitimate business purpose and have been

instituted by Ticketmaster for no other reason than to assist it in building a

monopoly in the ticket resale market.[3]  (FACC ¶ 17).  As RMG has pled that

Ticketmaster's acts are anticompetitive and do not serve any legitimate business

purpose, and its allegations are required to be accepted as true on this motion to

---

[2] Other anticompetitive acts set forth in the FACC, include, but are not limited to the purchasing of large ticket brokers, purchasing of ticketing software companies, controlling a vast majority of the inventory of tickets sold on the ticket resale market, excluding competitors on the ticket resale market from access to the ticket resale market by blocking their access to Ticketmaster's website and retail inventory of tickets and by creating "Terms of Use" of its website which are monopolistic and do not serve any legitimate business purpose as they are intended to chill resale market sellers from using the site and the misuse of copyright.

[3] RMG has pleaded that the reason the "Terms of Use" do not serve any legitimate business purpose is that they: (1) discourage the sale of tickets; (2) decrease Ticketmaster's revenue from the retail sale of tickets; (3) decrease the revenue earned by Ticketmaster's clients for sale of tickets to live events; and (4) decrease the number of tickets purchased by resellers who bear the risk of loss for live events which where the supply exceeds demand.

1   dismiss, the *Noerr-Pennington* Doctrine should not even be considered at this

2   point. *Arpin* (9th Cir. 2001) 261 F.3d 912 at 923.

3         Finally, Ticketmaster argues that the *Noerr-Pennington* Doctrine should

4   be applied because RMG failed to plead exception to same with specificity

5   pursuant to *Oregon National Council v. Mohla*, (9th Cir. 1991) 944 F.2d 431,

6   533.  However, a close reading of *Oregon National Council* merely indicates

7   that "a complaint must include allegations of the specific activities" which bring

8   the defendant's conduct into one of the exceptions to *Noerr-Pennington*

9   protection.  As stated above, RMG has set forth allegations of the specific

10  activities which bring this matter into the sham and anticompetitive acts

11  exception of the *Noerr-Pennington* Doctrine.  (FACC ¶¶ 17, 18, 19,23).

12        **b.    Whether Ticketmaster's Website's Terms of Use Promote Its**

13                **Legitimate Goal of Protecting Its Reputation and Consumer**

14                **Goodwill is an Issue of Fact, and is Not Appropriate for**

15                **Determination on a 12(b)(6) Motion.**

16        Ticketmaster has filed a Rule 12(b)(6) motion claiming that RMG failed

17  to plead a claim upon which relief may be granted as to RMG's attempted

18  monopolization claim pursuant to 15 U.S.C. § 2.  Ticketmaster therein, argues

19  that relief may not be granted because it has a defense to RMG's counterclaims,

20  namely, its "Terms of Use" are legitimate.  However, whether said "Terms of

21  Use" are legitimate is precisely one of the issues in this matter which must be

22  decided by a *trier of fact.  See Image Technical Service, Inc. v. Eastman Kodak*

23  *Co.*, (9th Cir. 1990) 903 F.2d 612, 620.

24        Moreover, Ticketmaster has not cited to any authority whatsoever, which

25  supports its argument that a legitimate business goal is sufficient to justify the

26  dismissal of a complaint on a Rule 12(b)(6) motion.  In fact, Ticketmaster has

27  cited to three cases to support this argument, none of which resulted in the

28  dismissal of an action on a Rule 12(b)(6) motion.  *See High Tech. Careers v.*

*San Jose Mercury News*, (9th Cir. 1993) 996 F.2d 987, 990. (Appeal of entry of summary judgment.). *See Oahu Gas Service, Inc. v. Pac. Res., Inc.*, (9th Cir. 1988) 838 F.2d 360. (Appeal of jury verdict). *See Eastman Kodak Co. V. Image Tech. Servs.*, (1992) 112 S. Ct. 2072, 504 U.S. 451, 119 L.Ed.2d 265. (Appeal of entry of summary judgment).

It is respectfully submitted that this issue is not ripe for adjudication on a motion to dismiss pursuant to Rule 12(b)(6).

### c. Other Anticompetitive Conduct.

Ticketmaster's argument that its acquisition-related conduct does not support an attempted monopolization claim because it is entitled to acquire competitors is over-simplified and disingenuous. RMG's claims are not simply that Ticketmaster is acquiring its competition, but that it is driving its competition on the ticket resale market out of the industry by excluding them from participating in the acquisition of Ticketmaster's retail inventory of tickets, by Ticketmaster's technological processes, by Ticketmaster's "Terms of Use" on its website, by threatening litigation and instituting litigation. Then, after driving these players out of the ticket resale market entirely or weakening their position therein, Ticketmaster is attempting to purchase up existing resellers and software companies. (FACC ¶¶ 10, 11, 15, 16, 17, 18, 19, 20, 23, 24,25).

**These activities are anticompetitive and predatory on their face!**

### d. RMG States a Counterclaim Against IAC.

RMG has not asserted any counterclaims against IAC based upon a conspiracy. RMG has merely alleged that IAC, as parent of Ticketmaster, has acted in conjunction with Ticketmaster to obtain a monopoly in the ticket resale business, for their mutual benefit. Pointedly Ticketmaster has excluded competition in the ticket resale market, and now both IAC and Ticketmaster have attempted to benefit from these exclusionary actions by purchasing resellers (FACC ¶¶15, 23, 24, 25, 26). Thus, IAC is a viable Counterclaim-

1   Defendant.

2       If Ticketmaster's argument were accepted by this Court, any subsidiary

3   could take anti-competitive actions to clear out a market and pave the way for its

4   parent to enter the market in and usurp all of the market share, and no party

5   would ever have any recourse against the parent, because it cannot "conspire"

6   with its subsidiary, even though they have effectively worked together to

7   monopolize the market. This result would simply be absurd.

8       **6.    Request for Leave to Re-plead.**

9       It is respectfully requested that if this Honorable Court rules that RMG

10  has failed to plead a claim upon which relief may be granted on its First

11  Counterclaim for Violation of Sherman Antitrust Act 15 U.S.C. § 2, that RMG

12  be granted leave to re-plead. Most of the objections that Ticketmaster had to the

13  Counterclaim are technical matters of pleading which can be cured through

14  further amendment, if necessary.

15  **C.   RMG HAS SET FORTH A CLAIM FOR WHICH RELIEF MAY BE**

16  **GRANTED FOR ITS COUNTERCLAIM OF VIOLATION OF**

17  **CALIFORNIA'S UNFAIR COMPETITION LAW BASED ON**

18  **TICKETMASTER'S VIOLATION OF SECTION 2 OF THE**

19  **SHERMAN ACT.**

20      Ticketmaster argues that RMG cannot allege "a violation of California's

21  state unfair competition law based on a violation of federal antitrust law."[4]

22

23      [4] Ticketmaster cites *Dimidowich v. Bell & Howell*, (9th Cir. 1986) 803 F.2d
24  1473, 1478 as the basis for this theory. Ticketmaster's reliance on *Dimidowich* is
    misplaced. In *Dimidowich*, plaintiff only pled a violation of California's Cartwright
25  Act. However, the Court failed to find a viable cause of action under the Cartwright
26  Act and "since California law is all he pleaded" the court could not find a violation
    of Section 17200. *Id.* The Court never precluded a violation of federal antitrust law
27  as a basis for alleging a Section 17200 violation. In fact, a fair reading of its opinion
28  indicates just the opposite conclusion; a finding of a viable claim for a federal
    antitrust violation is a basis for alleging a Section 17200 violation. Here, RMG has

1  (Motion to dismiss 16:13-14). This argument is fallacious and in contradiction

2  to the law of the State of California. Specifically, under section 17200 , "unfair

3  competition shall mean and include any unlawful, unfair or fraudulent business

4  act or practice." Cal. Bus. & Prof.Code § 17200 .  The unfair competition law

5  "embraces anything that can properly be called a business practice and that at

6  the same time is forbidden by law." *Korea Supply Co. v. Lockheed Martin*

7  *Corp.,* (2003) 29 Cal.4th 1134, 1135. "Section 17200 *et seq.* 'borrows'

8  *violations from other laws* and makes them independently actionable as unfair

9  business practices." *Id.* citing *Doe v. Abbott Laboratories,* (N.D.Cal., 2004)

10  2004 WL 3639688, *5.  (Emphasis added).

11      When a plaintiff invokes Section 17200, the word 'unfair' in that section

12  means conduct that threatens an incipient violation of an antitrust law or

13  otherwise significantly threatens or harms competition.  *Cel-Tech*

14  *Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th

15  163, 187.

16      Specifically, under California law, a Sherman Act violation, including a

17  violation encompassing solely unilateral conduct, is a basis for alleging a

18  violation under California's Business and Professions Code Section 17200. *See*

19  *Sunbelt Television, Inc. v. Jones Intercable, Inc.,* (C.D.Cal.,1992) 795 F.Supp.

20  333, 338 ("[P]laintiff's have adequately pled a violation of the Sherman Act,

21  they [therefore] have clearly stated a cause of action under California's Unfair

22  Competition law"). *Abbott Laboratories,* (N.D.Cal., 2004), 2004 WL 3639688,

23  *6(Plaintiffs adequately plead a Sherman Act violation and therefore denied

24  defendants motion to dismiss plaintiffs' claim for violation of Section 17200).

25  *Catch Curve, Inc. v. Venali, Inc.,* (C.D.Cal. 2007) 519 F.Supp.2d 1028, *1040.

26  (Plaintiff adequately alleged an attempted monopolization claim under the

27

28  pleaded a violation of federal antitrust law, and therefore plead an actionable
   violation of Section 17200.

Sherman Act and therefore the Court did not dismiss its claim under § 17200).

As set forth above, a violation of the Sherman Act is a basis for seeking a claim under Section 17200. Therefore, as set forth in Section (II)( B) *supra*, RMG has adequately pled a claim for attempted monopolization under the Sherman Act, and thus has stated a claim upon which relief may be granted for violation Business and Professions Code Section 17200. The defendant's motion to dismiss this counterclaim should be denied.

## D.   COPYRIGHT MISUSE IS A VIABLE COUNTERCLAIM.

"Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and other arts.  The immediate effect of our copyright law is to secure a fair return for an 'author's creative labor.'  But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good.  'The sole interest of the United States and the primary objective in conferring the monopoly,' this Court has said, 'lie in the general benefits derived by the public from the labors of authors.'" *Twentieth Century Music Corporation v. Aiken*, (1975) 422 U.S. 151 at 156, 95 S. Ct. 2040, 45 L.Ed2d 84.  *Harper & Row Publishers, Inc. v. Nation Enterprises*, (1985) 471 U.S. 539 545-546, 105 S.Ct. 2218, 85 L.Ed. 2d 588.

RMG's counterclaim for Copyright Misuse states a claim upon which relief may be granted.  To the extent a plaintiff seeks a declaration that it has not infringed on a defendant's copyrights because of defendant's misuse of its copyrights, courts have permitted such a claim to be asserted. *Electronic Data Systems Corp. v. Computer Associates Intern., Inc.,* (N.D.Tex.,1992) 802 F.Supp. 1463, *1466.

"In a declaratory relief setting, the declaratory relief plaintiff is thus permitted to 'assert' a claim for copyright misuse because the declaratory relief

1  plaintiff is in fact likely to be accused of copyright infringement." *Open Source*
2  *Yoga Unity v. Choudhury*, (N.D.Cal. 2005) 2005 WL 756558, *8.

3         Here, the gravamen of RMG's basis for seeking the claim for misuse of
4  copyright is due to Ticketmaster's unlawful attempt at using its copyrights for
5  the purpose of furthering its attempt at monopolizing the ticket resale market by
6  prohibiting those in the market from accessing its website, and limiting the
7  number of tickets which they can purchase.  (FACC ¶ 30).  As is demonstrated
8  by Ticketmaster's claim for copyright infringement against RMG, Ticketmaster
9  is wrongly attempting to misuse its copyrights for a purpose that the Copyright
10  Act did not intend to protect, namely furthering an unlawful objective of
11  attempted monopolization. As such, RMG has stated a claim upon which relief
12  may be granted. Therefore, Ticketmaster's motion to dismiss on this ground
13  should be denied.

14  **E.**  **RMG HAS STATED A CLAIM UPON WHICH RELIEF MAY BE**
15       **GRANTED WITH RESPECT TO ITS COUNTERCLAIM FOR**
16       **DECLARATORY RELIEF.**

17         Ticketmaster fails to set forth an actionable basis for dismissal of RMG's
18  Fourth Counterclaim for Declaratory Relief. Specifically, Ticketmaster seeks to
19  dismiss RMG's Fourth Counterclaim only *"to the extent it is based on copyright*
20  *misuse."* (Motion to Dismiss 19:13-14). Ticketmaster expressly *concedes* that
21  RMG has pled a viable claim for declaratory relief, at least to the extent that
22  RMG alleges that Ticketmaster's copyright registrations are invalid and
23  unenforceable due to lack of registrable subject matter. (Motion to Dismiss
24  footnote 10 p. 19). As such, Ticketmaster's motion to dismiss this counterclaim
25  is illogical, inconsistent and controverted by its own statements.

26        Furthermore, in the event Ticketmaster sought to strike portions of
27  RMG's Fourth Counterclaim, it should have moved pursuant to Fed.R.Civ.P.
28  12(f), governing motions to strike. It failed to do so.  Accordingly,

1  Ticketmaster's motion to dismiss portions of RMG's Fourth Counterclaim

2  should be denied as RMG has pled a viable claim for declaratory relief.

3  **III.  CONCLUSION**

4      Based upon the foregoing, it is respectfully requested that the instant

5  motion to dismiss be denied in its entirety.  If the Honorable Court is inclined to

6  grant any part of the motion to dismiss, RMG respectfully requests the

7  opportunity to re-plead those counterclaims.

8  Dated:       January 28, 2008            COGGAN & TARLOW

9

10                                          By:    David N. Tarlow

11                                          Attorneys for RMG Technologies, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA** )

) ss:

**COUNTY OF LOS ANGELES** )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: **1925 Century Park East, #2320, Los Angeles, California 90067**

On **January 28, 2008,** I served the foregoing document described as: **RMG TECHNOLOGIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TICKETMASTER, LLC AND IAC/INTERACTIVECORP'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** on all interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, and addressed as follows:

Robert H. Platt, Esq.
Mark Lee, Esq.
Tamar Feder, Esq.
Manatt, Phelps & Phillips, LLP
11355 W. Olympic Blvd.
Los Angeles, CA 90064

**( X ) BY MAIL.** I caused such envelopes to be deposited in the mail. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on the same day with postage thereon, fully prepaid, at Los Angeles, California in the ordinary course of business.

I declare under penalty of perjury that I am employed by a member of the bar of this court and this service was made at my direction.

Executed on this **28th** day of **January, 2008,** at Los Angeles, California.

Chandra R. McLaughlin