1   ROBERT H. PLATT (Bar No. CA 108533)
    rplatt@manatt.com
2   MARK S. LEE (Bar No. CA 094103)
    mlee@manatt.com
3   CHAD S. HUMMEL (Bar No. CA 139055)
    chummel@manatt.com
4   TAMAR FEDER (Bar No. CA 210571)
    tfeder@manatt.com
5   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
6   Los Angeles, CA  90064-1614
    Telephone:  (310) 312-4000
7   Facsimile:  (310) 312-4224

8   Attorneys for *Plaintiff and Counter-Defendant*
    TICKETMASTER L.L.C. and *Counter-Defendant*
9   IAC/INTERACTIVECORP

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  TICKETMASTER L.L.C., a Virginia          Case No. CV 07-2534-ABC (JCx)
    limited liability company,
14                                           **TICKETMASTER L.L.C. AND
                    Plaintiff,               IAC/INTERACTIVECORP'S REPLY
15                                           IN SUPPORT OF MOTION TO
          vs.                                DISMISS COUNTERCLAIMS 1
16                                           THROUGH 4 (FED. R. CIV. PROC.
    RMG TECHNOLOGIES, INC., a                12(b)(6))**
17  Delaware corporation, and DOES 1
    through 10, inclusive,                   Date:    February 25, 2008
18                                           Time:    10:00 a.m.
                    Defendants.              Place:   The Courtroom of the Hon.
19  _____                   Audrey B. Collins
    RMG TECHNOLOGIES, INC., a
20  Delaware corporation,

21                  Counterclaim-Plaintiff,  Complaint Filed:  April 17, 2007

22        vs.

23  TICKETMASTER L.L.C., a Virginia
    limited liability company,
24  IAC/INTERACTIVE CORP., a
    Delaware corporation, and ROES 1
25  through 10, inclusive,

26                  Counterclaim-Defendants.

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
                                             RELY IN SUPPORT OF MOTION TO
41206032.1                                   DISMISS FIRST AMENDED
                                             COUNTERCLAIMS

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................... 2

ARGUMENT ............................................................................................................ 4

I.   RMG'S COUNTERCLAIM FOR ATTEMPTED
     MONOPOLIZATION FAILS ......................................................................... 4

    A.   RMG Has Failed to Adequately Plead a Relevant Product
        Market ........................................................................................................ 4

    B.   RMG Fails to Plead a Dangerous Probability That Ticketmaster
        Will Monopolize the "Ticket Resale Market" ...................................... 7

    C.   The FACC Fails to Allege Any Cognizable Anticompetitive
        Conduct ................................................................................................... 10

        1.   RMG Did Not and Cannot Plead the Sham Exception to
            the Noerr-Pennington Doctrine With the Required
            Specificity ..................................................................................... 10

        2.   A Single, Incontrovertible Legitimate Business
            Justification Can Support Dismissal .......................................... 11

        3.   RMG Fails to Allege Facts That Render Ticketmaster's
            Acquisition-Related Conduct Anticompetitive ........................ 13

    D.   RMG Lacks Standing and Has Failed to Allege Injury. ..................... 14

II.  RMG'S COUNTERCLAIM FOR VIOLATION OF CALIFORNIA'S
     UNFAIR COMPETITION LAW CANNOT BE BASED ON
     CONDUCT THAT DOES NOT VIOLATE THE CARTWRIGHT
     ACT .................................................................................................................. 14

III. RMG CANNOT RECOVER DAMAGES FOR "COPYRIGHT
     MISUSE." .......................................................................................................... 16

IV.  RMG'S ALLEGED COPYRIGHT MISUSE DOES NOT SUPPORT
     DECLARATORY RELIEF ............................................................................. 18

V.   RMG FAILS TO STATE ANY CLAIM AGAINST IAC. ........................... 20

CONCLUSION ....................................................................................................... 21

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
NEW YORK

41206032.1                                        i

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Alcatel USA, Inc. v. DGI Technologies, Inc.*,
   166 F.3d 772  (5th Cir. 1999) ................................................................. 19

5

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) ............................................................... 16

6

7

*Arista Records, Inc. v. Flea World, Inc.*,
   356 F. Supp. 2d 411 (D. N.J. 2005) ........................................................ 18

8

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. 2001) ................................................................. 10

9

*Association of Med. Colleges v. Princeton Rev., Inc.*,
   332 F. Supp. 2d 11 (D.D.C. 2004) .............................................. 16, 17, 20

10

*Aulson v. Blanchard*,
   83 F.3d 1 (1st Cir. 1996) ......................................................................... 8

11

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ......................................................................... 13

12

*BellSouth v. Covad Comm.*,
   540 U.S. 1147 (2004) .............................................................................. 4

13

*Boulware v. State of Nevada Department of Human Resources*,
   960 F.2d 793 (9th Cir. 1992) ................................................................. 11

14

*Californians for Disability Rights v. Mervyn's, LLC*,
   39 Cal. 4th 223 (2006) .......................................................................... 15

15

16

*Catch Curve, Inc. v. Venali, Inc.*
   519 F. Supp. 2d 1028 (C.D. Cal. 2007) .................................................. 15

17

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) .......................................................................... 15

18

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) .................................................................. 15

19

20

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984) .............................................................................. 20

21

*Covad Comms. v. BellSouth*,
   299 F.3d 1272 (11th Cir. 2002) ............................................................... 4

22

*Dimidovich v. Bell & Howard*,
   803 F.2d 1473 (9th Cir. 1986) ......................................................... 14, 15

23

24

*Doe v.  Abbott Laboratories*,
   2004 WL 3639688 (N.D. Cal. 2004) ...................................................... 15

25

*Eastman Kodak Co. v. Image Tech. Servs.*,
   504 U.S. 451 (1992) .............................................................................. 11

26

27

*Electronic Data Sys. Corp. v. Computer Assoc. Int'l, Inc.*,
   802 F. Supp. 1463 (N.D. Tex. 1992) .......................................... 17, 18, 19, 20

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
NEW YORK

41206032.1

ii

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3 *Epstein v. Washington Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996)....................................................................8

4 *Formula One Licensing v. Purple Interactive LTD*,
  2001 WL 34792530 (N.D. Cal. 2001).......................................................11

5

6 *Forsyth v. Humana*,
  114 F.3d 1467  (9th Cir. 1997)...................................................................8

7 *Freeman v. DirecTV, Inc.*,
  457 F.3d 1001 (9th Cir. 2006)..................................................................10

8 *FTC v. Indiana Fed. of Dentists*,
  476 U.S. 447 (1986) ...................................................................................8

9 *Hall v. Time, Inc.*,
  158 Cal. App. 4th 847 (2008)...................................................................15

10 *Holt Civil Club v. Tuscaloosa*,
  439 U.S. 60 (1978) ...................................................................................12

11

12 *Image Technical Serv. Inc. v. Eastman Kodak Co.*,
  903 F.2d 612 (9th Cir. 1990)....................................................................11

13 *In re Napster, Inc. Copyright Litig.*,
  191 F. Supp. 2d 1087 (N.D. Cal. 2002)..................................................17

14 *In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996).....................................................................12

15

16 *Inlandboatmens Union of the Pac. v. Dutra*,
  279 F.3d 1075 (9th Cir. 2002)..................................................................12

17 *Kentmaster Mfg. Co. v. Jarvis Products Corp.*,
  146 F.3d 691 (9th Cir. 1998)....................................................................15

18 *Las Vegas Sands, Inc. v. Culinary Workers Union Local No. 226*,
  82 Fed. Appx. 580 (9th Cir. 2003) ...........................................................11

19

20 *Lasercomb America, Inc. v. Reynolds*,
  911 F.2d 970 (4th Cir. 1990)....................................................................19

21 *Mahone v. Addicks Util. Dist.*,
  836 F.2d 921 (5th Cir. 1988)....................................................................12

22 *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  269 F. Supp. 2d 1213 (C.D. Cal. 2003).............................................16, 18

23 *Newcal Indus. v. IKON Office Solution*,
  2008 WL 185520 (9th Cir. 2008)............................................................5, 9

24 *Omni Resource Dev. Corp. v. Conoco Inc.*,
  739 F.2d 1412  (9th Cir. 1984)..................................................................11

25

26 *Online Policy Group v. Diebold, Inc.*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004)..................................................16

27 *Open Source Yoga Unity v. Bikram Choudhury*,
  2005 WL 756558 (N. D. Cal. 2005).........................................17, 18, 19, 20

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
NEW YORK

41206032.1                              iii                    RELY IN SUPPORT OF MOTION TO
                                                                DISMISS FIRST AMENDED
                                                                    COUNTERCLAIMS

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Practice Management Info. Corp. v. Am. Med. Ass'n.*,
121 F.3d 516 (9th Cir. 1997) ................................................................. 17, 18, 20

*Queens City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d. Cir. 1997) ............................................................................ 5, 9

*Rebel Oil Co., Inc. v. Atlantic Richfield Co., Inc.*,
51 F.3d 1421 (9th Cir. 1995), *cert. denied* 516 U.S. 987 (1995) ....................... 9

*Ritter v. Hughes Aircraft Co.*,
58 F.3d 454 (9th Cir. 1995) ............................................................................. 12

*Rubin v. Greene*,
4 Cal. 4th 1187 (1993) ..................................................................................... 16

*Sanders v. Brown*,
504 F.3d 903 (9th Cir. 2007) ........................................................................... 10

*Schneider v. California Dept. of Corrections*,
151 F.3d 1194 (9th Cir. 1998) ........................................................................ 7, 9

*Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.*,
156 F. Supp. 2d 1148 (C.D. Cal. 2001) ............................................................ 16

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ........................................................................................ 5, 8

*Sunbelt Television, Inc. v. Jones Intercable, Inc.*,
795 F. Supp. 333 (C.D. Cal. 1995) ................................................................ 5, 15

*Tanaka v. University of Southern Cal.*,
252 F.3d 1059 (9th Cir. 2001) ............................................................................ 5

*U.S. v. Syufy Enterp.*,
903 F.2d 659 (9th Cir. 1990) .......................................................................... 9, 13

*UGG Holdings, Inc. v. Severn*,
2004 WL 5458526 (C.D. Cal. Oct. 1, 2004) ...................................................... 5

*Verizon Comms. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ........................................................................................... 4

*Walker Process Equip. v. Food Machinery & Chemical Corp.*,
382 U.S. 172 (1965) ........................................................................................... 5

## STATUTES

Cal. Bus & Prof. Code § 17200 ................................................. 4, 14, 15, 20

Cal. Bus & Prof. Code § 17204 ................................................................ 15

California Civil Code § 47(b) ................................................................... 16

Sherman Act, Section 2 .................................................................... passim

## OTHER AUTHORITIES

2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ............ 7

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
New York

41206032.1                          iv                    RELY IN SUPPORT OF MOTION TO
                                                          DISMISS FIRST AMENDED
                                                          COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES**

Fed. R. Evid. 201 ................................................................................................ 12

Rule 7(a) ............................................................................................................... 7

Rule 12 .................................................................................................................. 2

Rule 12(b)(6) .............................................................................................. 4, 5, 10

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

RMG's Opposition confirms that its First Amended Counterclaim ("FACC") is simply a defensive measure, cloaked in antitrust rhetoric, to challenge the Terms of Use for Ticketmaster's website. Those Terms of Use prohibit the use of automated devices to access and use the website, and limit the quantity of tickets that can be purchased through the website in a single transaction. There is a compelling and obvious business justification for these Terms of Use, which is to provide a fair and equitable ticket distribution system that enables consumers to have a meaningful opportunity to purchase tickets from Ticketmaster when they go on sale. This Court has recognized as much, by granting Ticketmaster's motion for preliminary injunction in this action against RMG for its role in providing such automated devices.

After RMG was sued by Ticketmaster for violating its website's Terms of Use, RMG reflexively asserted counterclaims that, stripped of antitrust labels, are simply an objection to those same Terms of Use. RMG's fatally flawed legal theory is that the Terms of Use are somehow anticompetitive because they limit the number of tickets that ticket brokers can buy from Ticketmaster to resell in a purported ticket resale market. However, this theory ignores the indisputable fact that the limitations in Ticketmaster's Terms of Use apply to <u>all</u> users of Ticketmaster's website, not just to ticket brokers that use RMG's prohibited automated devices.[1] RMG's antitrust claims therefore fail, not only as a matter of antitrust law, but also as a matter of logic.

---

[1]    Ticketmaster requested as part of its Motion that the Court take judicial notice of the Terms of Use for its website.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

1

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

## SUMMARY OF ARGUMENT

RMG's Opposition completely fails to demonstrate why any of the four counterclaims at issue in Ticketmaster's Rule 12 Motion survive dismissal.

RMG has attempted to assert a claim under Section 2 of the Sherman Act for attempted monopolization of a "ticket resale market." However, after failing to provide the requisite market definition in its FACC, RMG has belatedly provided a definition in its Opposition that is almost limitless and amounts to no definition at all. As described in the Opposition, this purported product market would include previously-purchased tickets, online marketplaces for the resale of such tickets (*e.g.*, StubHub and eBay), brokers who resell such tickets through those marketplaces and by any other means, anyone who provides software for the resale of tickets, and literally any consumer who ever resold a ticket. Such an amorphous and overbroad market definition is deficient as a matter of law to support any claim under the Sherman Act.

RMG's Opposition also underscores the absence of any factual allegations to support the notion that Ticketmaster is attempting to monopolize this ill-defined, amorphous ticket resale market through any "exclusionary" conduct – as that phase is used by courts interpreting Section 2 of the Sherman Act. The thrust of RMG's claim is that Ticketmaster's efforts to protect the integrity of its website and business reputation in a completely different market—the primary (or retail) ticketing market—constitute an attempt by Ticketmaster to monopolize the purported ticket resale market. However, neither Ticketmaster's Terms of Use, which, among other things, are designed to level the playing field for consumers attempting to purchase tickets, nor Ticketmaster's efforts to enforce those Terms of Use by blocking offenders from using the site and suing persistent offenders, bears any logical relation to any purported attempt to monopolize a market. Indeed, to characterize Ticketmaster's efforts to level the playing field as "sham" litigation— efforts that have already resulted in an injunction against RMG for its abuse of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1    Ticketmaster's website—is preposterous and wrong as a matter of law.

2         RMG's arguments regarding Ticketmaster's alleged acquisition activity are

3    equally illogical.  RMG has not identified a single broker acquired by Ticketmaster

4    or explained how any such acquisition would provide Ticketmaster with any

5    legally significant power in the amorphous resale market.  Similarly, RMG has not

6    explained how Ticketmaster's acquisition of "ticketing software" is

7    anticompetitive, considering that Ticketmaster is a ticketing company.  Moreover,

8    it is irrelevant that Ticketmaster operates a ticket reselling marketplace (Ticket

9    Exchange) and has entered an agreement to acquire another such marketplace

10   (TicketsNow), in the absence of any credible allegation that Ticketmaster has a

11   dangerous probability of achieving and exercising monopolistic power in the ill-

12   defined resale market.[2]

13        RMG's Opposition also fails to address the threshold issues of standing or

14   injury.  (*See* Motion at 8, n.4.)  The FACC alleges that RMG provides software

15   which enables brokers to purchase large quantities of tickets in the primary

16   ticketing market.  However, merely because those brokers may try to resell those

17   tickets in the purported "ticket resale market" does not confer standing on RMG to

18   assert any claim against Ticketmaster regarding its alleged role in that purported

19   market.  Moreover, the only purported injury alleged by RMG is the injunction that

20   this Court issued against RMG to stop RMG's illegal abuse of Ticketmaster's

21   website.  As a matter of law, this is not the type of "injury" that can support an

22   antitrust claim.

23        In the face of these fundamental defects, RMG cannot salvage its antitrust

---

24   [2]     While the agreement to acquire TicketsNow is not alleged in the FACC, such
     an allegation, even if it were made, would not change the outcome of this Motion.
25   The notion that Ticketmaster would achieve monopoly power in the alleged resale
     market as a result of its contemplated acquisition of TicketsNow is contradicted by
26   documents that RMG has submitted for judicial notice.  Those documents reveal
     that there are larger and more established resale marketplaces such as StubHub and
27   eBay.  Those documents also reveal that the "market" described by RMG also
     includes brokers and anyone who resells their tickets.
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

3

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1   claim by arguing that elements of the claim involve issues of "fact" which cannot

2   be resolved on a motion to dismiss.  It is well-established that a 12(b)(6) motion is

3   an appropriate juncture for dismissal of antitrust claims that fail to meet threshold

4   pleading requirements.[3]

5        The other three claims at issue in this Motion are equally defective.  RMG's

6   claim for violation of Section 17200 fails because (i) a plaintiff cannot sue under

7   Section 17200 for unilateral conduct that allegedly violates the Sherman Act, and

8   (ii) RMG has not alleged any cognizable injury as a result such alleged conduct.

9   RMG's claim for copyright misuse fails because copyright misuse is an affirmative

10  defense only and cannot support a claim for damages.  Similarly, RMG's claim for

11  declaratory relief based on copyright misuse fails because it is redundant of RMG's

12  affirmative defense, and RMG has not argued any comprehensible basis for

13  allowing a purported declaratory relief claim to proceed under such circumstances.

14       Accordingly, Ticketmaster respectfully requests that each of Counterclaims 1

15  through 4 in RMG's FACC be dismissed with prejudice.

16                        **ARGUMENT**

17                            **I.**

18  **RMG'S COUNTERCLAIM FOR ATTEMPTED MONOPOLIZATION**
                              **FAILS.**
19

20  **A.    RMG Has Failed to Adequately Plead a Relevant Product Market.**

        A claim under Section 2 of the Sherman Act for attempted monopolization

21  requires a definition of a relevant antitrust product market.  A plausible definition

22  of the relevant product market is essential if that definition is to be tested at a later

23

24  _____

    [3]    RMG's argument that the bar to survive a motion to dismiss an antitrust
25  claim is "exceedingly low" (*see* Opp. at 2) is based on discredited case law.  RMG
    cites *Covad Comms. v. BellSouth*, 299 F.3d 1272 (11th Cir. 2002), but that holding
26  was vacated by the Supreme Court for reconsideration in light of *Verizon Comms.
    v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004).  *BellSouth v. Covad
27  Comm.*, 540 U.S. 1147 (2004).  The Eleventh Circuit later upheld the district
    court's dismissal of plaintiff's antitrust case on a 12(b)(6) motion.  *Covad Comms.
28  v. BellSouth*, 374 F.3d 1044 (11th Cir. 2004).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

4                    REPLY IN SUPPORT OF MOTION TO
                     DISMISS FIRST AMENDED
                     COUNTERCLAIMS

1   stage in the proceedings. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447,

2   459 (1993) ("without a definition of that market there is no way to measure [the

3   defendant's] ability to lessen or destroy competition"), *quoting Walker Process*

4   *Equip. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965).

5        Contrary to the assertion in RMG's Opposition (*see* 3:12-20), a court may

6   consider on a motion to dismiss whether a claimant has alleged a "legally

7   cognizable 'relevant market'." *See Newcal Indus. v. IKON Office Solution*, 2008

8   WL 185520 *6 (9th Cir. 2008); *Tanaka v. University of Southern Cal.,* 252 F.3d

9   1059, 1063 (9th Cir. 2001) (affirming dismissal of antitrust claim for failure to

10  allege a relevant market). *See also Queens City Pizza, Inc. v. Domino's Pizza, Inc.,*

11  124 F.3d 430, 436-38 (3d. Cir. 1997) (finding plaintiff's market definition "facially

12  unsustainable"); *UGG Holdings, Inc. v. Severn*, 2004 WL 5458526 at *3 (C.D. Cal.

13  Oct. 1, 2004) (collecting cases where antitrust claims were dismissed for failure to

14  adequately plead a relevant market).    In *Sunbelt Television, Inc. v. Jones*

15  *Intercable, Inc.,* 795 F. Supp. 333, 337 (C.D. Cal. 1995), a case cited in RMG's

16  Opposition, the complaint was dismissed because "it was unclear from the face of

17  the complaint what market defendant is allegedly attempting to monopolize."[4]

18       RMG has not even posited a plausible product market definition.  The FACC

19  alleges that Ticketmaster is attempting to monopolize a "ticket resale market," but

20  offers no definition of any such "market."   The Opposition contains a belated

21  attempt to provide this definition, but the definition creates even more problems

22  than it solves.   As stated in RMG's Opposition, the "market" includes "tickets

23  which have previously been sold at retail," as well as "all of the players who make

24  the acquisition and distribution of tickets on the ticket resale market possible,

_____

[4]     RMG quotes only selectively from *Newcal* in arguing that whether a relevant
market is adequately defined is a factual matter. (*See* Opp. at 3:12-16.)  RMG's
discussion of *Newcal* neglects to include the statement that "[t]here are, however,
some legal principles that govern the definition of an antitrust 'relevant market'
and a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant
market' definition is facially unsustainable."  2008 WL 185520 at *6.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

5

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1   including, but not limited to ticket brokers and ticketing software developers."

2   (Opp. at 4:26-5:2) (emphasis added).) This description encompasses such a broad

3   range of products, activities, services, and participants as to be completely

4   meaningless from an antitrust perspective. The "players" in this amorphous market

5   would include, among others, online marketplaces for resale of tickets (*e.g.*,

6   StubHub and eBay), brokers who resell tickets through those marketplaces or

7   through other means, anyone who provides software to any marketplace or broker,

8   as well as any consumer who ever bought a ticket and sought to resell it.[5]

9       In simple terms, RMG contends that Ticketmaster is attempting to

10  monopolize a market that includes every person who has attempted to resell a ticket

11  which he or she did not want to use, as well as every online marketplace and every

12  business person with any involvement in that industry. As noted in Ticketmaster's

13  Motion, products or services that each have a distinct set of buyers and sellers

14  cannot be part of the same "relevant market." (Motion at 8:1-10.) The Opposition

15  neither rebuts this point nor addresses any of the cases cited by Ticketmaster

16  regarding RMG's failure to plead a relevant market.[6]

17      Further, the Opposition conflates the separate elements of relevant market

18  and anticompetitive conduct by arguing that allegations of anticompetitive conduct

19  somehow define the relevant market. (*See* Opp. at 4:3-23.) However, allegations

20  of anticompetitive conduct are not a substitute for pleading the separate and

21  preliminary element of a relevant antitrust product market. A coherent and

22  _____

23  [5]   Ironically, RMG, as a provider of software to brokers for obtaining tickets in
    the primary (retail) market, as opposed to the purported secondary (resale) market,
24  actually operates outside its own market definition.

25  [6]   Ticketmaster is not challenging an otherwise properly-alleged market. Nor is
    Ticketmaster suggesting that a market definition fails as a matter of law merely
26  because the market as defined would be large. Rather, Ticketmaster is arguing that
    RMG has failed even to identify a product market, because RMG's amorphous and
27  belated definition amounts to no allegation of any product market at all. This
    pleading defect is not salvaged by the facile assertion in RMG's Opposition that the
28  relevant product within that market is "tickets previously sold at retail . . . in this
    country." (Opp., 4-5 (emphasis deleted).)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

6

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1  economically rational relevant market cannot be inferred from allegations of
2  anticompetitive conduct.  RMG cannot avoid it obligation to define the relevant
3  market by simply pointing to wrongful conduct allegations in the FACC.

4      Finally, the fact that RMG waited until its Opposition to even attempt to
5  provide a market definition is itself improper.  *See Schneider v. California Dept. of*
6  *Corrections*, 151 F.3d 1194, 1197, n.1 (9th Cir. 1998) (court cannot consider
7  "new" facts alleged for the first time in opposition papers); *see also* 2 Moore's
8  Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take
9  into account additional facts asserted in a memorandum opposing the motion to
10 dismiss, because such memoranda do not constitute pleadings under Rule 7(a)").

**B.    RMG Fails to Plead a Dangerous Probability That Ticketmaster Will
Monopolize the "Ticket Resale Market."**

13     RMG argues that the required element of a "dangerous probability of
14 success" can be inferred from allegations of anticompetitive conduct, citing two
15 Ninth Circuit cases that are no longer valid law.  (Opp. at 5.)  In 1993, the Supreme
16 Court clarified that a dangerous probability of success cannot be inferred from
17 anticompetitive conduct alone:

18     The notion that proof of unfair or predatory conduct alone is sufficient
19     to make out the offense of attempted monopolization is contrary to the
20     purpose and policy of the Sherman Act . . . For these reasons, § 2
21     makes the conduct of a single firm unlawful only when it actually
22     monopolizes or dangerously threatens to do so.  The concern that § 2
23     might be applied so as to further anticompetitive ends is plainly not
24     met by inquiring only whether the defendant has engaged in "unfair"
25     or "predatory" tactics. Such conduct may be sufficient to prove the
26     necessary intent to monopolize, which is something more than an
27     intent to compete vigorously, but <u>demonstrating the dangerous
28     probability of monopolization in an attempt case also requires inquiry</u>

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

7

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1       <u>into the relevant product and geographic market and the defendant's</u>

2       <u>economic power in that market</u>.

3 *Spectrum Sports*, 506 U.S. at 457, 459 (citations omitted) (emphasis added).  Thus,

4 whether a defendant has a dangerous probability of success in achieving monopoly

5 power in a relevant market turns on the defendant's current economic power in that

6 market. [7]

7       Generally, market power is demonstrated through direct evidence of the

8 defendant's ability to inflict injury.  *See*, *e.g.*, *FTC v. Indiana Fed. of Dentists*, 476

9 U.S. 447, 460-61 (1986).  However, with one exception discussed below, RMG

10 does not contend that Ticketmaster possesses <u>any</u> appreciable share of the

11 purported ticket resale market.  Nor does RMG allege any fact that would support a

12 contention that Ticketmaster has economic power in any such "market," including

13 any power relating to market structure, barriers to entry or competitor capacity to

14 expand output.  Rather, RMG contends that Ticketmaster's alleged control over the

15 retail (primary) ticket inventory by virtue of its exclusive contracts with venues and

16 event promoters somehow translates into domination over the fragmented ticket

17 resale market.  (Opp. at 6:21-8:13.)

18       The problem with RMG's contention is that contractual obligations are not a

19 cognizable source of market power, *Forsyth v. Humana*, 114 F.3d 1467, 1476  (9th

20 Cir. 1997), and RMG does not allege that Ticketmaster's alleged control over retail

21 (primary) ticket inventory is the result of anything other than competitive bidding

22 for the exclusive right to sell such tickets on behalf of Ticketmaster's clients.

23 Without any allegation that these contracts are awarded in a non-competitive

24

_____

25 [7]    RMG's conclusory allegation that there is a "dangerous possibility [sic] that
Ticketmaster and IAC will succeed in their attempt to monopolize the ticket resale
26 market" (FACC, ¶ 23) need not be accepted by this Court.  *See Epstein v.
Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Aulson v.
27 Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (courts are not required to "swallow the
plaintiff's invective hook, line, and sinker; bald assertions, unsupportable
28 conclusions, periphrastic circumlocutions, and the like need not be credited").

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

8

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

manner, Ticketmaster's ability to abuse that contractual power in the aftermarket for ticket resales is "restrained by competition in the primary market." *See Newcal, supra,* 2008 WL 185520 at \*8; *see also id.* at \*9 ("The law prohibits an antitrust claimant from resting on market power that arises solely from contractual rights that consumers knowingly and voluntarily gave to the defendant" in order to prove an aftermarket separate from the primary product); *Queens City Pizza, supra,* 124 F.3d at 430 (competition in primary market for franchise agreements sufficed to discipline anticompetitive conduct in aftermarket for pizza supplies).

RMG has attempted to seize upon Ticketmaster's recent agreement to acquire TicketsNow, arguing that the deal will "instantly make Ticketmaster the number two secondary market reseller behind Stubhub." (Opp., 5:27-6:6.) However, even if the Court were to consider this contention (it may not, because it is not alleged in the FACC, *see Schneider, supra*), the press release cited by RMG reveals that Ticketmaster is in no danger of monopolizing a market that is dominated by other companies, such as Stubhub and eBay. As recognized by the Ninth Circuit:

> To pose a threat of monopolization, one firm <u>alone</u> must have the power to control market output and exclude competition. An oligopolist lacks this unilateral power. By definition, oligopolists are interdependent. An oligopolist can increase market price, but only if the others go along.

*Rebel Oil Co., Inc. v. Atlantic Richfield Co., Inc.*, 51 F.3d 1421, 1442-43 (9th Cir. 1995), *cert. denied* 516 U.S. 987 (1995) (citations omitted). *See also U.S. v. Syufy Enterp.*, 903 F.2d 659, 664 (9th Cir. 1990) ("There is universal agreement that monopoly power is the power to exclude competition or control prices").

Nevertheless, given the completely amorphous market definition in RMG's Opposition, any purported share of the online ticket resale marketplace is insignificant insofar as such a market also includes ticket software providers,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

9

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1   auction sites, ticket brokers, and any consumer who uses this vast purported market

2   to buy and sell tickets.    Ticketmaster's alleged ascendancy as an online

3   marketplace for ticket resales involves only one aspect of this purported "ticket

4   resale market."

5   **C.    The FACC Fails to Allege Any Cognizable Anticompetitive Conduct.**

6       RMG fails to rebut Ticketmaster's argument that, as a matter of law,

7   Ticketmaster's alleged conduct is not "exclusionary" under Section 2.

8       **1.    RMG Did Not and Cannot Plead the Sham Exception to the**
            ***Noerr-Pennington* Doctrine With the Required Specificity.**

9

10      The Ninth Circuit has explicitly and repeatedly affirmed dismissal under

11  Rule 12(b)(6) when *Noerr-Pennington* immunity applied.    *See Sanders v. Brown*,

12  504 F.3d 903, 914 (9th Cir. 2007) (affirming dismissal because "Noerr-Pennington

13  immunity shields the [defendants] from liability for the alleged supracompetitive

14  [sic] price increases."); *see also Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004

15  (9th Cir. 2006) (affirming dismissal where claim was barred under the *Noerr-*

16  *Pennington* doctrine).[8]

17      In this case, the Court has issued a preliminary injunction against RMG and

18  denied a motion by RMG to dismiss Ticketmaster's claims based on RMG's abuse

19  of Ticketmaster's website.    The Court has also denied motions by ticket broker

20  defendants in several related actions to dismiss claims by Ticketmaster based on

21  their misuse of Ticketmaster's website.    Thus, RMG cannot plausibly allege any

22  exception to the *Noerr-Pennington* doctrine on a theory that that this action and

23  

24  ---
    [8]    RMG cites *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th
    Cir. 2001), for the proposition that application of the *Noerr-Pennington* doctrine is
    a factual issue that should not be considered on a motion to dismiss.  (Opp. at 11:1-
    2.)  However, *Arpin* <u>did not even discuss</u> the *Noerr-Pennington* doctrine.  Rather,
    in *Arpin*, the Ninth Circuit affirmed the dismissal of unlawful arrest, battery, and
    common carrier claims, while reversing the dismissal of a state law false
    imprisonment claim.  *Id.* at 917-24.  *Arpin* hardly stands for the proposition that
    application of the *Noerr-Pennington* doctrine is an improper subject for resolution
    on a motion to dismiss.

25  

26  

27  

28  

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

10

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1   other similar actions pending before this Court constitute "baseless litigation in

2   federal court." *See, e.g., Omni Resource Dev. Corp. v. Conoco Inc.*, 739 F.2d

3   1412 , 1414 (9th Cir. 1984) ("the suit can not be characterized as baseless at all; for

4   although we do not know the outcome, at least to the point of a preliminary

5   injunction the state court plaintiffs were successful"); *Boulware v. State of Nevada*

6   *Department of Human Resources*, 960 F.2d 793, 798 (9th Cir. 1992) ("the fact that

7   NCSC succeeded in obtaining an injunction from the Nevada trial court judge

8   strongly suggests that the state court action was not baseless").[9]

9       **2.    A Single, Incontrovertible Legitimate Business Justification Can**
10              **Support Dismissal.**

11          RMG does not challenge Ticketmaster's assertion that protection of one's

12  business and reputation is a valid and legitimate business activity.  (*See* Motion at

13  13:1-4, *citing Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 502 (1992)

14  (protection of "seller's business reputation" a "legitimate purpose[]").)   Instead,

15  RMG argues that consideration of this issue must be deferred to summary

16  judgment or trial.  (Opp. at 11:12-23.)   However, the sole case cited by RMG for

17  this proposition, *Image Technical Serv. Inc. v. Eastman Kodak Co.,* 903 F.2d 612,

18  620 (9th Cir. 1990), does not support such a proposition.   Although *Image*

19  *Technical* involved review of a summary judgment decision, it did <u>not</u> hold that

20  whether an antitrust defendant has a legitimate business justification for the

21  challenged conduct is a question of fact that cannot be decided on a motion to

22  dismiss.   Rather, where, as here, a legitimate business justification is readily

23

24  _____
    [9]     Nor has RMG even attempted to plead any such exception to the *Noerr-
25  Pennington* doctrine with the requisite specificity.  *See Las Vegas Sands, Inc. v.
    Culinary Workers Union Local No. 226*, 82 Fed. Appx. 580, 585 (9th Cir. 2003)
26  ("the danger that the mere pendency of the action will chill the exercise of First
    Amendment rights requires more specific allegations than would otherwise be
27  required"); *Formula One Licensing v. Purple Interactive LTD,* 2001 WL
    34792530, *2 (N.D. Cal. 2001) (allegation that the plaintiff had "instigated a
28  meritless trademark infringement action . . . alleging the infringement of
    unenforceable, generic marks" did not satisfy the heightened pleading standard).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES                    11              RELY IN SUPPORT OF MOTION TO
41206032.1                                     DISMISS FIRST AMENDED
                                               COUNTERCLAIMS

1    established by reference to judicially noticeable documents, judgment on the issue

2    need not be deferred. *See* Fed. R. Evid. 201; *Inlandboatmens Union of the Pac. v.*

3    *Dutra*, 279 F.3d 1075, 1083 (9th Cir. 2002); *In re Syntex Corp. Sec. Litig.*, 95 F.3d

4    922, 926 (9th Cir. 1996); Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458-59 (9th

5    Cir. 1995).

6        Moreover, RMG does not oppose Ticketmaster's request for judicial notice

7    of Ticketmaster's Terms of Use and various press articles, which reveal that the

8    public recognizes and supports the legitimate need for the conduct (efforts to

9    ensure a fair and equitable ticket distribution system) which RMG attempts to

10   characterize as exclusionary.  And even without reference to these documents, the

11   Court may conclude at this juncture that the desire of Ticketmaster and its clients to

12   preserve consumer goodwill and provide a fair and equitable ticket distribution

13   system is the reason for the limitations in Ticketmaster's Terms of Use.  *See*

14   *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 937 (5th Cir. 1988), *citing Holt Civil*

15   *Club v. Tuscaloosa*, 439 U.S. 60, 74 (1978) ("in some cases it makes sense to use a

16   motion to dismiss as the vehicle through which to address the viability of the

17   plaintiff's claim. This would be especially true in those cases where, borrowing a

18   phrase from the Supreme Court, 'it takes but momentary reflection' to arrive at a

19   purpose that is both legitimate beyond dispute and rationally related to the state's

20   classification").

21       RMG's apparent suggestion that the Terms of Use for Ticketmaster's

22   website are anticompetitive because they prohibit the use of automated devices is

23   absurd.  Ticket brokers use such devices to cut in line to obtain vast quantities

24   tickets to resell at inflated prices to consumers who were unable to acquire the

25   tickets at face value precisely because of those automated devices.  Any argument

26   that it is anticompetitive for Ticketmaster to attempt, through its Terms of Use, to

27   preserve a level playing field for consumers would turn the aim of the antitrust

28   laws—to prevent higher prices and a reduction in consumer choice—on its head.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

12

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1   The Opposition simply glosses over the fact that it is RMG's clients who seek an

2   unfair and improper advantage by preventing the public from having access to

3   tickets at face value so they can resell those tickets to the public at higher prices.

4       In light of these judicially noticeable facts and obvious realities, to delay

5   consideration of whether Ticketmaster and its clients are justified in imposing a fair

6   and equitable distribution of tickets would only waste judicial resources.

7       **3.    RMG Fails to Allege Facts That Render Ticketmaster's
            Acquisition-Related Conduct Anticompetitive.**

8

9       In its Motion, Ticketmaster noted that it was free to engage in negotiations

10  regarding the possible acquisition of ticket brokers or software companies, and to

11  even acquire such companies, so long as the consummated transactions themselves

12  do not have a "dangerous probability" of producing anticompetitive effects.  *See,*

13  *e.g.*, *Syufy Enterp.*, 903 F.2d at 673 ("in a competitive market, buying out

14  competitors is not merely permissible, it contributes to market stability and

15  promotes the efficient allocation of resources").  Ticketmaster also noted that, not

16  only did RMG fail to identify <u>any</u> particular broker acquisition target, RMG failed

17  to allege how any allegedly contemplated acquisition of a broker or software

18  provider would adversely affect competition in the "ticket resale market."

19      RMG's sole rebuttal to Ticketmaster's argument is to refer to allegations of

20  other allegedly anticompetitive conduct and proclaim that "these activities are

21  anticompetitive and predatory on their face!"  (Opp. at 12:8-20.)  Such a statement,

22  in the absence of any reference to allegations in the FACC of plausible

23  anticompetitive effects or <u>any</u> cases allowing such a vague assertion to support an

24  antitrust complaint, should be rejected.  *See Bell Atlantic Corp. v. Twombly*, 127 S.

25  Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation to provide the 'grounds' of his

26  'entitlement to relief' requires more than labels and conclusions, and a formulaic

27  recitation of the elements of a cause of action will not do").

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

13

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

**D.    RMG Lacks Standing and Has Failed to Allege Injury.**

In its Motion, Ticketmaster argued that RMG lacks standing to assert its attempted monopolization claim because it did not allege any cognizable injury and because ticket buyers in the purported resale market are in a far better position than RMG to assert such a claim, if at all.  (*See* Motion, 8, n. 4.)  RMG, which does not allege that it buys or sells tickets in the purported ticket resale market, has failed to even address this threshold issue and, thus, has implicitly conceded it.  Moreover, the only purported injury alleged by RMG is the injunction, which prohibits RMG's persistent abuse of Ticketmaster's website.  As a matter of law, this is not the type of "injury" that can support an antitrust claim.  (*See id.*)  RMG's Opposition also failed to address this argument and, thus, has apparently conceded it as well.

**II.**

**RMG'S COUNTERCLAIM FOR VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW CANNOT BE BASED ON CONDUCT THAT DOES NOT VIOLATE THE CARTWRIGHT ACT.**

RMG's Section 17200 claim is based entirely on RMG's Sherman Act claim.  (FACC, ¶¶ 32-39.)  However, not only is RMG's Sherman Act claim deficient in its own right (for all the reasons discussed above), but even if RMG's Sherman Act claim were properly pleaded, RMG still could not state a claim under Section 17200. RMG's Sherman Act claim is based on alleged <u>unilateral</u> conduct by Ticketmaster, but, as discussed in Ticketmaster's Motion, California's Cartwright Act, unlike the Sherman Act, does not recognize antitrust liability based on unilateral conduct.

In *Dimidovich v. Bell & Howard,* 803 F.2d 1473 (9th Cir. 1986), the Ninth Circuit affirmed the dismissal of a Section 17200 claim because the underlying Cartwright Act claim for alleged unilateral conduct was not actionable. *Id.* at 1478. RMG argues in its Opposition that "unfair" conduct under Section 17200 "means

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

RELY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS

1    conduct that threatens an incipient violation of antitrust law or otherwise

2    significantly threatens or harms competition."  (Opp., 14:11-15 (citing *Cel-Tech*

3    *Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 187

4    (1999)).)  However, if the law were as RMG suggests, the Section 17200 claim in

5    *Dimidovich* should have survived even though the specific Cartwright Act claim

6    failed.  However, the Section 17200 claim in *Dimidovich* was dismissed, because

7    unilateral conduct is not actionable under California's antitrust laws.

8         Contrary to RMG's assertion, no case—including the three district court

9    cases cited by RMG—has considered, let alone explicitly held, that a Section

10   17200 claim can be based on conduct that is not cognizable under the Cartwright

11   Act.  One of those cases, *Catch Curve, Inc. v. Venali, Inc.* 519 F. Supp. 2d 1028

12   (C.D. Cal. 2007), is distinguishable because it alleges a conspiracy to monopolize,

13   which is obviously not unilateral conduct and is cognizable under state law.  In the

14   other two cases, the parties did not raise, and the court did not consider, whether a

15   state law claim under Section 17200 can be based on monopolization. *See Doe v.*

16   *Abbott Laboratories,* 2004 WL 3639688 (N.D. Cal. 2004); *Sunbelt Television, Inc.,*

17   795 F. Supp. 333.

18        Moreover, RMG does not address Ticketmaster's alternative argument that a

19   Section 17200 claim should be dismissed when the underlying claim is legally

20   deficient.  *See Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)

21   (sustaining demurrer of Section 17200 claim that was based solely on defective

22   antitrust claims); *Kentmaster Mfg. Co. v. Jarvis Products Corp.*, 146 F.3d 691, 695

23   (9th Cir. 1998).  RMG's Section 17200 claim fails because the underlying Sherman

24   Act claim also fails.[10]

25   ─────────────
     [10]     As with its underlying antitrust allegations, RMG also lacks standing to
26   assert its Section 17200 claim.  (*See* Motion at 8, n. 4.)  A party only has standing
     to assert a claim under Section 17200 if it (1) has suffered injury in fact, and (2)
27   has lost money or property *as a result of* such unfair competition.  Cal. Bus & Prof.
     Code § 17204; Hall v. Time, Inc., 158 Cal. App. 4th 847 (2008); Californians for
28   Disability Rights v. Mervyn's, LLC, 39 Cal. 4th 223, 227 (2006). RMG fails to
     allege any injury resulting from the challenged conduct. RMG seems to assert that

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

15

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

**III.**

**RMG CANNOT RECOVER DAMAGES FOR "COPYRIGHT MISUSE."**

RMG argues that its copyright misuse counterclaim for damages is "viable" because two district court decisions permitted copyright misuse to be asserted in declaratory relief claims.  (Opp. at 15-16.)  RMG's argument lacks merit for a number of reasons.

First, the overwhelming weight of authority holds that there are no damages claim for "copyright misuse," which is what RMG has alleged.  (See FACC ¶¶ 28-31.)  Every significant Ninth Circuit and other decision Ticketmaster has discovered states that "copyright misuse" can only be an affirmative defense to copyright infringement, and does not support a claim for damages.  *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) ("it makes little sense to allow [defendant] to proceed on an independent claim for copyright misuse"); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1198 n. 4 (N.D. Cal. 2004) ("plaintiffs cite no legal authority, and the court is aware of none, that allows an affirmative claim for damages for copyright misuse"); *Association of Med. Colleges v. Princeton Rev., Inc.*, 332 F. Supp. 2d 11, 19 (D.D.C. 2004) ("permitting copyright misuse as an independent, affirmative claim would be contrary to the purpose of the doctrine"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1225 (C.D. Cal. 2003) ("copyright misuse cannot found a claim for damages"); *Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.*, 156 F. Supp. 2d 1148, 1167, n. 28 (C.D. Cal.

---

it has suffered injury due to Ticketmaster's enforcement of its Terms of Use, but having ignored those Terms of Use until this Court issued a preliminary injunction precluding RMG from violating them, RMG was never harmed by them.  Nor may RMG claim harm based on this Court's issuance of a preliminary injunction.  See Rubin v. Greene, 4 Cal. 4th 1187, 1194-95 (1993) (denying claim for relief based on litigation activity because the litigation privilege provided by Section 47(b) of the California Civil Code "affords litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative court actions").

2001), vacated pursuant to settlement, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002) (copyright misuse "must be pled as an affirmative defense, not as a counterclaim").

Second, RMG's opposition does not even mention, let alone attempt to address or distinguish, this authority. This failure demonstrates that RMG cannot meaningfully dispute that there can be no damage claim based on copyright misuse.

Third, the logic underlying this authority underscores why RMG's purported copyright misuse damage counterclaim must be dismissed. Copyright misuse merely postpones enforcement of a copyright during the period of misuse. *Practice Management Info. Corp. v. Am. Med. Ass'n*., 121 F.3d 516, 520-21 & n. 9 (9th Cir. 1997); *Association of Med. Colleges v. Princeton Rev., supra*, 332 F. Supp. 2d at 19. "The doctrine does not prevent plaintiffs from ultimately recovering for acts of infringement that occurred during the period of misuse." *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1108 (N.D. Cal. 2002). Conduct that merely delays when Ticketmaster's copyrights can be enforced does not support a claim for damages against Ticketmaster.

Fourth, the two cases RMG cites—*Open Source Yoga Unity v. Bikram Choudhury*, 2005 WL 756558 (N. D. Cal. 2005) ("*OSYU*"), and *Electronic Data Sys. Corp. v. Computer Assoc. Int'l, Inc*., 802 F. Supp. 1463 (N.D. Tex. 1992) ("*EDS*")—do not hold that a damage claim like the one RMG asserts can be based on "copyright misuse." These cases merely permitted the defense of copyright misuse to be raised in declaratory relief claims when it could not be asserted as an affirmative defense, as described below.

Fifth, the legal deficiencies in RMG's antitrust and unfair competition claims, as described in Ticketmaster's Motion and this reply, establish that the only "misuse" with which Ticketmaster is charged is enforcing its copyrights. Such actions do not constitute copyright misuse as a matter of law. *See OSYU*, *supra*. 2005 WL 756558 *8 (enforcing copyright not copyright misuse as a matter of law).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS

1

2

Accordingly, RMG's second counterclaim seeking damages for "copyright misuse" should be dismissed with prejudice for these reasons.

3

**IV.**

4

5

**RMG'S ALLEGED COPYRIGHT MISUSE DOES NOT SUPPORT DECLARATORY RELIEF.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

RMG's reliance on two district court decisions that permitted the copyright misuse defense to be asserted in declaratory relief claims—*OSYU*, 2005 WL 756558, and *EDS*, 802 F. Supp. 1463—is misplaced.     <u>First</u>, courts have consistently held that when copyright misuse has already been raised as an affirmative defense (as it has here), "separately litigating that defense in a declaratory posture would not serve the purposes of declaratory relief, such as clarifying and settling the legal relations of the parties, or affording a declaratory plaintiff relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, *supra*, 269 F. Supp. 2d at 1226; *see also Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D. N.J. 2005) ("defendants may not transmute [their copyright misuse defense] into an independent claim merely by labeling it one for declaratory judgment").     This is especially true here, because RMG's declaratory relief counterclaim seeks to invalidate Ticketmaster's copyrights based on the alleged "copyright misuse."   (*See* FACC ¶ 31.)   However, "copyright misuse does not invalidate a copyright."   *Practice Management Info. Corp. v. Am. Med. Ass'n.*, *supra*, 121 F.3d at 520-21 & n. 9 (9th Cir. 1997).

24

25

26

27

<u>Second</u>, the two cases RMG cites are consistent with these principles.   They approved limited assertions of the defense in declaratory relief claims, but only because the defense could not have been raised by an answer in those actions. *OSYU, supra*, involved a defendant who threatened to sue for copyright infringement but had not actually done so.   Plaintiff sought declaratory relief that

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

18

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1    its actions were not infringing based on, *inter alia*, copyright misuse. Affirming

2    that "copyright misuse exists solely as a defense to copyright infringement . . . and

3    thus arguably cannot exist as an affirmative claim," the court noted that

4    "[declaratory relief plaintiff] OSYU does not assert the [copyright misuse]claim as

5    a separate cause of action or seek damages or a separate injunction based on the

6    claim, but rather, it asserts the claim simply as an affirmative defense should it be

7    found liable for infringement." *OSYU,* 2005 WL 756558, at *8 & n. 5.

8         Similarly, *EDS*, *supra,* involved a copyright misuse defense that could not

9    have been raised as an affirmative defense because there was no underlying

10   copyright infringement claim. In that circumstance, the court noted that although

11   the plaintiff sought "damages and a declaration that [defendant] CA's misuse of its

12   copyrights renders CA's copyrights invalid and unenforceable," it would permit the

13   copyright misuse claim to proceed only "to the extent that EDS seeks a declaration

14   that it has not infringed CA's copyrights because of CA's alleged misuse of such

15   copyrights . . ." *EDS, supra,* 802 F. Supp. at 1465.

16        The *EDS* court did express uncertainty about whether copyright misuse

17   could be asserted as an independent claim. *See id.* at 1466. However, that

18   relatively early decision was hampered by a lack of authority. (*Id.*) The first

19   reported appellate decision to acknowledge copyright misuse was *Lasercomb*

20   *America, Inc. v. Reynolds*, 911 F.2d 970, 972 77 (4th Cir. 1990), which was

21   published only two years before *EDS*. The Fifth Circuit, which governs the *EDS*

22   court, subsequently clarified that copyright misuse in that Circuit, as in the Ninth

23   Circuit, is merely a defense to copyright infringement based on the unclean hands

24   doctrine. *Alcatel USA, Inc. v. DGI Technologies, Inc*., 166 F.3d 772, 792-95

25   (5th Cir. 1999). Thus, *EDS* thus is no longer good law in the Fifth Circuit to the

26   extent it is inconsistent with *Alcatel*. Moreover, given the Ninth Circuit, Central

27   District, and other contrary authority cited above, it likewise does not support

28   RMG's contention that copyright misuse can be asserted in a declaratory relief

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41206032.1

19

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1    claim. More recent courts have refused to follow *EDS* to the extent it implies there

2    might be an independent claim for misuse. *See, e.g., Association of Amer. Med.*

3    *Col. v. The Princeton Review*, *supra*, 332 F. Supp. 2d at 18-20 (court refuses to

4    follow *EDS* and holds that copyright misuse cannot exist as an independent claim

5    because it would be contrary to "the policy reasons underlying the development of

6    the doctrine of copyright misuse . . .")

7        Here, in contrast to *OSYU* or *EDS*, RMG <u>has</u> alleged copyright misuse as its

8    Nineteenth Affirmative Defense. (*See* Answer at ¶ 154.) RMG nevertheless also

9    asserts copyright misuse "as a separate cause of action" to "seek damages" in a

10   manner the *OSYU*, *EDS*, and other authorities cited above recognize is improper.

11   RMG further seeks "declaratory relief" to invalidate Ticketmaster's copyright

12   registrations, a remedy the Ninth Circuit has affirmed is unavailable to RMG for

13   any alleged "misuse." *Practice Management, supra*.

14       Accordingly, RMG's declaratory relief counterclaim should be dismissed to

15   the extent it is based on copyright misuse for these reasons.

## V.

## <u>RMG FAILS TO STATE ANY CLAIM AGAINST IAC.</u>

18       RMG's claims against Ticketmaster under Section 2 of the Sherman Act and

19   Section 17200 are also asserted against IAC. RMG's arguments in support of its

20   claims against IAC are completely without merit.

21       First, RMG labels as "absurd" the assertion that a parent corporation cannot

22   conspire with its subsidiary, because it would allow "any subsidiary to take anti-

23   competitive actions to clear out a market and pave the way for its parent to enter

24   the market and usurp all the market share." (Opp., 13:2-7.) However, RMG did

25   not and cannot cite any authority for its position because, far from being "absurd,"

26   it is black letter law that a parent corporation cannot conspire with its wholly

27   owned subsidiary to commit an antitrust violation. *See Copperweld Corp. v.*

28   *Independence Tube Corp.*, 467 U.S. 752, 778 (1984).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41206032.1

20

RELY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIMS

1    Second, RMG tries to back away from its conspiracy claim by arguing that
2  IAC "acted in conjunction with Ticketmaster to obtain a monopoly in the ticket
3  resale business, for their mutual benefit." (Opp. at 12:23-25.)  Not only is this
4  alternative theory not alleged in the FACC, but RMG cites no case to support any
5  such notion that a parent corporation can be held liable for attempted
6  monopolization where it "acted in conjunction" with its subsidiary.  Even if RMG's
7  "in conjunction with" theory were recognized and actually alleged, RMG still fails
8  to respond to the argument by Ticketmaster and IAC that an attempt to acquire
9  some unidentified entity, without any specification of resulting harm to
10  competition, insufficiently pleads anticompetitive conduct. (Motion at 14:7-15:24.)

11                                   **CONCLUSION**

12    RMG does not and cannot allege that Ticketmaster is excluding RMG's
13  customers or anyone else from being able to buy tickets.  Rather, if RMG's
14  customers use Ticketmaster's services to buy tickets, they must follow reasonable
15  rules with an obvious legitimate business justification.  Seeking to turn antitrust
16  law on its head, RMG complains that Ticketmaster is violating antitrust law by
17  restricting users of prohibited automated devices from taking large quantities of
18  tickets before the public can access them.  These claims run contrary to common
19  sense and the antitrust doctrines RMG seeks to rewrite.

20    For all of the foregoing reasons, Ticketmaster and IAC respectfully request
21  that each of RMG's Counterclaims be dismissed with prejudice.

22  Dated: February 11, 2008        MANATT, PHELPS & PHILLIPS, LLP
                                    ROBERT H. PLATT
23                                   MARK S. LEE
                                    CHAD S. HUMMEL
24                                   TAMAR FEDER

25                                   By: _____
26                                       Chad S. Hummel
                                        Attorneys for *Plaintiff and Counterclaim-*
27                                       *Defendant* TICKETMASTER, L.L.C. and
                                        *Counterclaim-Defendant*
28                                       IAC/INTERACTIVECORP

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
41206032.1                                        21              RELY IN SUPPORT OF MOTION TO
                                                                 DISMISS FIRST AMENDED
                                                                 COUNTERCLAIMS