**DECLARATION**

Dockets.Justia.com

## DECLARATION OF DAVID N. TARLOW

DAVID N. TARLOW declares and states:

1. I am an attorney duly admitted to practice law before this Court and all of the Courts of the State of California.

2. I submit this declaration pursuant to the joint motion of all parties ("motion") to compel the production of documents.

3. On the afternoon of October 15, 2007, just a few hours after Ticketmaster's motion for preliminary injunction ("MPI") was granted against RMG Technologies, Inc. ("RMG") in this matter, Ticketmaster personally served its Request for Production of Documents ("TRFP") upon RMG's counsel.

4. On October 23, 2007, Ticketmaster's attorney, Mark Lee ("Lee") sent me an email accusing RMG of violating the preliminary injunction and demanding that RMG "provide Ticketmaster with a full accounting of all actions it has taken since October 15, 2007." RMG denied the allegations. A true and correct copy of same is attached hereto as Exhibit "A."

5. On November 6, 2007, Ticketmaster filed an *ex parte* application for expedited discovery, requesting, among other things: (1) HTML and all source code and binary/executable copies of code for RMG's "TBAT," "Super Proxy," and other products and services used to facilitate purchases on ticketmaster.com; (2) all "log: files from the "super proxies" resident on RMG's computers from October 15, 2007 to present; (3) the "properties" files on RMG's computers; (4) a list of or documents identifying all internet service providers and all IP addresses (foreign or domestic) allocated to the "TBAT" product; (5) a list of or documents identifying all internet service providers and all IP addresses (foreign or domestic) controlled by RMG; (6) all files and data related to Ticketmaster's CAPTCHA that services RMG's Optical Character Recognition ("OCR") product, or other mechanism for solving CAPTCHA, which would be stored either on RMG's filesystem(s) or databases; (7) all files and applications related to answering or responding to Ticketmaster's

1

security measures, including, but not limited to "hashcash" or "POW" programs; (8) all documents and applications used in developing RMG's "TBAT," "Super Proxy" and OCR, including test environments; and (8) All documents regarding RMG's "Super Proxy" and OCR performance capabilities.

6. On November 9, 2007, the Honorable Court granted Ticketmaster's *ex parte* application. A true and correct copy of the order of the court is attached hereto as Exhibit "B."

7. On November 13, 2007, I requested, on behalf of RMG, an extension of time to respond to the TRFP. Ticketmaster's attorneys refused my request for an extension of time.

8. On November 14, 2007, RMG responded to TRFP. A true and correct copy of said response is attached hereto as Exhibit "C."

9. On November 21, 2007, I forwarded a link to zip files that contained many of the documents which RMG was ordered to produce to Lee. Further, on November 21, 2007, I sent three emails to Lee containing more documents, including invoices and property files pursuant to the court order. On November 26, 2007, I sent another email to Lee containing further property files pursuant to the court order. On December 7, 2007, I forwarded further documents from RMG to Lee pursuant to the court order. A true and correct copy of all of these emails are attached hereto as Exhibit "D." All of these documents were also responsive to several requests set forth in TRFP.

10. At no time since all of these documents have been provided has Ticketmaster claimed that any technical documents ordered to be produced have been withheld. Moreover, Ticketmaster has not accused RMG of violating the preliminary injunction since.

11. Contrary to the incorrect assertion in the declaration of Raaqim Knight ("Knight") in support of Ticketmaster's Motion to Compel, on December 7, 2007 (not November 21, 2007), I had a meet and confer session with Lee and Alison

1  Sultan White ("White") at the offices of Manatt, Phelps & Phillips LLP. During the
2  meet and confer session, I personally served White, on behalf of Ticketmaster, with
3  RMG's Request for Production of Documents ("RRFP") which called for the
4  production of documents 30 days after service at the offices of Coggan & Tarlow.
5  A true and correct copy of same is attached hereto as Exhibit "E."
6      12.  At the meet and confer, the issue of the definition of "Tickets" was
7  raised. White and Lee told me that I was incorrect in my understanding that
8  "Tickets," as used in the document request means tickets purchased by RMG or on
9  RMG's behalf at www.ticketmaster.com, even though the definition portion of
10 TRFP states "'Tickets' means tickets purchased by You, or on Your behalf, at
11 Ticketmaster's website (www.ticketmaster.com) from January 1, 2002 to the
12 present." They stated that "Tickets" meant all tickets purchased. I told them that
13 their new definition actually constituted a brand new document request than what
14 was served, which would have required a different search and production. I told
15 them that if they wanted to request different documents than those set forth in the
16 TRFP, that they should serve a further request for documents. We then proceeded to
17 discuss most of the responses to the requests, and I agreed to provide a supplemental
18 response to the TRFP, providing further detail with respect to why certain
19 documents did not exist. I did not agree, on behalf of RMG, to a change in the
20 definition of "Tickets," as I was never given the authority to do so.
21     13.  At said meet and confer, White asked me for an extension of time to
22 respond to the RRFP, because the production date was January 7, 2008, and she did
23 not want to work on them over the Holidays. Even though Ticketmaster would not
24 grant RMG an extension, RMG granted Ticketmaster an extension to January 29,
25 2008 to respond.
26     14.  On January 7, 2008, I personally emailed documents responsive to
27 TRFP to White. A true and correct copy of my email to her is attached hereto as
28 Exhibit "F."

15. On January 29, 2008, RMG served its supplemental response. At the time same was served, it was my understanding that more documents would be provided to my office by RMG to forward on to Ticketmaster as I had received them in piecemeal fashion in the past. However, it is my understanding that no further documents were produced to my office, as the documents responsive to the requests had previously been provided. Mr. Knight's assertion in his declaration that any documents were destroyed or tampered with are baseless and untrue. All documents provided to my office pursuant to the order of the court and the TRFP were provided to Ticketmaster. No documents in this matter received by my office were ever destroyed or tampered with. I am highly offended that a fellow officer of the court would make such an unfounded suggestion that my office would ever destroy or tamper with documents.

16. On January 29, 2008, Ticketmaster served its response to RRFP. A true and correct copy of same is attached hereto as Exhibit "G." Therein, it objected to each and every request. To date, Ticketmaster has not produced a single page of any document responsive to the RRFP.

17. On February 26, 2008, I sent a meet and confer letter to Mr. Knight regarding Ticketmaster's improper response to the RRFP and Ticketmaster's failure to produce any documents. A true and correct copy of same is attached hereto as Exhibit "H."

18. On March 5, 2008, an associate at Coggan & Tarlow, Joshua Blum and I participated in a mandatory meet and confer meeting with Mr. Knight and another associate of Manatt, Phelps & Phillips LLP regarding RMG's responses to TRFP and Ticketmaster's responses to RRFP pursuant to LR 37-1.

19. The meet and confer session with respect to RMG's responses to the TRFP lasted approximately 2 ½ hours. Then we met and conferred regarding Ticketmaster's inadequate responses to the RRFP and failure to produce documents occurred. This portion of the meeting took less than 30 minutes.

20. In meeting and conferring on Ticketmaster's responses to the RRFP, my first course of business was to ask Mr. Knight when the documents which Ticketmaster agreed to produce pursuant to RRFP Numbers 7, 8 and 9 would be produced. Mr. Knight stated that documents would not be produced for "at least 2 to 3 weeks" but that he did not "want to go out on a limb" because it may be longer.

21. I then asked Mr. Knight if Ticketmaster planned on providing any documents regarding its convenience charges, pursuant to RRFP Numbers 1, 2, 3 and 6 and if they were being withheld until the execution of a protective order. I explained to him that documents responsive to these requests were essential to defending against Ticketmaster's damages claims, because if Ticketmaster was passing off its website security expenditure to its customers, then it was not being damaged by the alleged conduct of RMG. Further, Mr. Blum conveyed to Mr. Knight that records regarding the convenience charges that concern the costs of website security are relevant to Ticketmaster's damages claims, specifically to show what was actually spent by Ticketmaster for its security. We asked that these documents be produced forthwith, without objection. Mr. Knight stated that he thought the requests were irrelevant, because Ticketmaster is entitled to use its money anyway it desired. This response confused me and I still do not know what he meant. He also stated he was told by partners at his firm not to compromise on these RRFPs and to advise me that these issues would have to be resolved by the magistrate on a motion to compel.

22. I then asked Mr. Knight if Ticketmaster planned on providing any documents in response to RRFP Number 12, which asked for all documents that reflect any claim that Ticketmaster has made for loss of goodwill. I explained that if Ticketmaster never made a claim for loss of goodwill, it would be relevant to negating its argument that it had lost or is in the process of losing goodwill in this matter. I further explained that if Ticketmaster had made a claim for loss of goodwill, it would be relevant to show the amount at which Ticketmaster valued its

goodwill. Both of these reasons are relevant to Ticketmaster's damages claims. Mr. Knight said "I see your point," that these documents were probably relevant, but that he had to go back to his client to see if it was willing to supplement the response. As of the preparation of this stipulation, Ticketmaster's counsel has not contacted me regarding this request.

23. Mr. Knight then said that Ticketmaster would produce documents pursuant to RRFP Number 33 in its document production, but he would not commit to any time frame, other than that nothing would be produced for at least 2 to 3 weeks.

24. I then asked Mr. Knight if Ticketmaster would produce documents responsive to RRFP 46-48 and 51-66, as these requests were relevant to Ticketmaster's loss of goodwill claims and whether Ticketmaster was causing its own loss of goodwill. I explained that these claims were also relevant to RMG's affirmative defenses of frivolous action brought to control competition and violate anti-trust laws, and unclean hands. Mr. Knight said that he had no authority to respond, other than to say that this was a magistrate issue that would have to be dealt with on a motion to compel.

25. With respect to RRFP Numbers 18-24, 32, 34-40, 44-45 and 49-50, Mr. Knight said that documents are being withheld because there is no protective order in place. I asked him if all of the documents responsive to these requests were "confidential." Mr. Knight said "no." I then asked is there any reason why the non-confidential documents could not be produced while the issue of the protective order was being resolved. Mr. Knight said "no." So I asked him to produce them immediately. Mr. Knight said it would be at least 2 to 3 weeks, maybe longer.

26. With respect to the meet and confer with respect to RMG's response to TRFP, Mr. Knight had told me words to the effect that the partners at his firm had given him marching orders that any supplemental or further responses from RMG had to be delivered to Manatt, Phelps & Phillips LLP within two days, by March 7,

2008. I specifically told Mr. Knight that I worked in a small firm of 4 attorneys, I had an appeal due in the Appellate Division for the Second Department of the State of New York in a case against IBM on March 14, 2008 and that I was scheduled to begin a jury trial as lead counsel on March 17, 2008 in Orange County. Based upon these two events, I could not commit to provide further responses to this discovery within two days, but that I would attempt to get it done during the next week. Mr. Knight said he did not have authority to agree to an extension beyond the two days he already offered.

27. While Mr. Knight has given a full recitation of what he recounts occurred during Ticketmaster's portion of the meet and confer, I believe that my recollection is accurately set forth in the stipulation which is attached hereto. Thus, I will only address a few issues with respect to the meet and confer of the issues that Ticketmaster had with RMG's responses.

28. First, Mr. Knight seemed unaware of the definition that Ticketmaster set forth in its requests. When the definition of "Tickets" was brought to his attention, Mr. Knight asked that RMG agree to modify or eliminate the definition altogether. My response was that to do that would constitute a brand new document request for different documents than those which were actually requested. With a different document request, RMG would be entitled to a full 30 days to respond, and therefore, RMG would be prejudiced by simply agreeing to allow Ticketmaster to change its request. Mr. Knight proposed that RMG agree to the modification or elimination of the definition, and provide new responses to each request using the term "Tickets" within two days or else Ticketmaster would file a motion.

29. Second, with respect to several requests, Ticketmaster has asked for information regarding RMG's alleged creation, marketing and sale of "Automated Devices" for use on Ticketmaster's website, as well as information regarding how it "conceals" the fact that tickets are purchased on Ticketmaster's website. I told Mr. Knight that my client states that no such documents exist with respect to

"Automated Devices" or "Concealment" because my client denies its software constitutes an "Automated Device," or that the software "Conceals" any ticket purchase. Thus, it could not provide a supplemental response.

30. After the meet and confer, RMG propounded further document requests upon Ticketmaster for the items which RMG had not yet requested, as the discovery cut off is about 60 days away, and there is still time to conduct follow up discovery.

31. A true and correct copy of the First Amended Complaint in this matter is attached hereto as Exhibit "I."

32. A true and correct copy of Ticketmaster's response to RRFP Number 4 is attached hereto as Exhibit "J."

33. A true and correct copy of the Declaration of Kevin McLain in Reply to MPI is attached hereto as Exhibit "K."

34. A true and correct copy of the Declaration of Mark Lee in Reply to MPI is attached hereto as Exhibit "L."

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

EXECUTED this 19TH day of March, 2008.

*/s/ David N. Tarlow*

DAVID N. TARLOW