**EXHIBIT H**

Dockets.Justia.com

LAW OFFICES OF

COGGAN & TARLOW

DAVID N. TARLOW
dnt@cogganlaw.com

ADMITTED TO PRACTICE LAW IN:
CALIFORNIA
NEW YORK
NEW JERSEY

REPLY TO _____ LA

1925 CENTURY PARK EAST, SUITE 2320
LOS ANGELES, CALIFORNIA 90067-2343
(310) 407-0922
FAX (310) 407-0923

NEW YORK OFFICE
641 LEXINGTON AVENUE
14TH FLOOR
NEW YORK, NEW YORK 10022
(212) 634-6470
FAX (212) 634-6471

February 26, 2008

**Via Fax and Mail (310)312-4224**
Raaqim Knight, Esq.
Manatt, Phelps & Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, California 90064

Re:  **Ticketmaster, LLC v. RMG Technologies, Inc., Case No.:**
**CV07-2534 ABC(JCx)**

Dear Mr. Knight:

I am in receipt of Ticketmaster's Responses to RMG Technologies, Inc.'s Request for Production of Documents dated January 29, 2008. Ticketmaster's responses are severely deficient in several respects, and they fail to comply with the requirements set forth in Rules 26 and 34. As Ticketmaster requested, and received, an extra three (3) weeks to respond to same, the response should have complied with the Federal Rules of Civil Procedure. As you have requested that we meet and confer regarding RMG's supplemental responses within 10 days, as required by L.R. 37-1, RMG also requests that we meet and confer regarding Ticketmaster's deficient responses to their requests. My calendar is full until March 5, 2008, and I request that we meet and confer on all issues, in my office, at 10:30 a.m. on that day.

**Ticketmaster's Failure to Produce Documents Along with Its Response**

Pursuant to Rule 34(a)-(b) a party is obliged to produce all specified relevant and nonprivileged documents or other things in its possession, custody or control on the date and time specified in the Request for Production of Documents. On December 7, 2007, RMG personally served its request for production of documents upon your office. The request for production of documents required that Ticketmaster "produce and permit the inspection and photocopying of the documents and tangible things...designated at the offices of COGGAN & TARLOW, 1925 Century Park East, Suite 2320, Los Angeles, California within 30 days of service of these demands. Alternatively, the production may be accomplished by your delivery of copies of the requested documents and tangible things to Coggan & Tarlow at the above address provided that Ticketmaster or its authorized representative will make the originals of such documents and tangible things available for inspection and photocopying at a later date and upon reasonable notice by RMG or its authorized representative." Accordingly, Ticketmaster was required to produce and permit inspection of documents and tangible things at the offices of

LAW OFFICES OF
## COGGAN & TARLOW

To:     Raaqim Knight
From:   David N. Tarlow
Date:   2/26/2008
Page:   2

Coggan & Tarlow on or before January 6, 2008. However, Alison Sultan White and Don Brown
both requested an extension of time to respond to January 29, 2008 (even though Ticketmaster
refused to grant RMG an extension of time to respond to its request for production of
documents). RMG agreed to the extension, and gave Ticketmaster to January 29, 2008 to
respond and produce the requested documents. On January 29, 2008, Ticketmaster provided a
written response to the request to produce documents, but has failed to produce a single
document in response to RMG's requests. Thus, demand is made that Ticketmaster produce all
documents which are responsive to its requests forthwith.

### Ticketmaster's Responses to Request Numbers 7, 8 and 9

In Ticketmaster's responses to numbers 7, 8 and 9, it states that it will make all relevant,
unprivileged and responsive documents available for inspection, yet Ticketmaster failed to
produce the documents for the inspection which was to take place in my offices on January 29,
2008, pursuant to the Request for Production of Documents and the extensions of time granted to
Ticketmaster. To date, no such documents have been produced. Ticketmaster's obstructionist
tactics in stating that it will make documents available for inspection, but then failing to produce
them at the inspection, is improper. We can only assume that these tactics have been employed
by Ticketmaster to avoid *its* discovery obligations. Accordingly, please produce said documents
forthwith.

### Ticketmaster's Responses to Request Numbers 1, 2, 3 and 6

Ticketmaster objects to providing any documents regarding its method of determining
convenience charges, the factors considered in determining convenience charges, the
identification of all persons involved in the decision making process in determining convenience
charges and all research conducted in determining convenience charges, based upon a slew of
boilerplate objections, including, but not limited to objections that the requests seek information
which is irrelevant, and the requests are vague and ambiguous. All of the objections set forth by
Ticketmaster to these requests are frivolous and not well taken. First, these requests are all
highly relevant to the subject matter in this case, as they will tend to show whether or not
Ticketmaster has suffered any damages by any of the acts alleged in the Complaint. If
Ticketmaster has simply "passed off" its increased costs in constructing and securing its website
to customers by adding in those costs to its convenience charges, then Ticketmaster's damages
claims, if any, will be reduced. Second, any objection that these requests are vague, ambiguous
or compound are simply the result of Ticketmaster's strained reading of same. Each request is
stated simply and succinctly. RMG is entitled to documents responsive same, as damages are an
element to all of Ticketmaster's claims. *See Lim v. The.TV Corporation International*, (2002) 99
Cal. App. 4th 684, 694. *See also Fisher v. Paul Revere Insurance Group*, (C.A.9(Cal.))55 Fed.
Appx. 412, 414. (Damages are an element of fraud). *See Computer Fraud and Abuse Act* 18

LAW OFFICES OF
## COGGAN & TARLOW

To:     Raaqim Knight
From:   David N. Tarlow
Date:   2/26/2008
Page:   3

U.S.C. § 1030 (Requires $5,000.00 in damage to a computer in order to sue civilly). *See Careau & Co. v. Security Pacific Business Credit, Inc.,* (1990), 222 Cal. App.3d 1371, 1388. (Plaintiff must plead and prove damages in order to prevail on a cause of action for breach of contract). *See also Pacific Gas & Electric v. Bear Stearns & Company* (1990) 50 Cal. 3d 1118, 1126. *See Contemporary Investments, Inc. v. Safeco Title Insurance Co.,* (1983) 145 Cal. App.3d 999, 1002. (Plaintiff must plead and prove the element of damages to prevail on causes of action for inducing breach of contract or intentional interference with contract).

### Ticketmaster's Response to RMG Request for Production Number 12

Ticketmaster has repeatedly asserted that it has lost goodwill with its clients and customers, yet it has objected to a request that it produce any and all documents that refer, reflect or relate to any claim that it made for loss of goodwill from January 1, 2002 to present as irrelevant, vague, ambiguous, overbroad, unduly burdensome and oppressive, and that it requests information protected by attorney-client privilege. These objections are poorly taken. Ticketmaster has claimed loss of goodwill repeatedly in its motion for a preliminary injunction. RMG is entitled to discover all documents that prove or disprove Ticketmaster's theory. If no such documents exist, then Ticketmaster should simply state that they do not exist and explain why. If the only documents that exist are protected by the attorney-client privilege, then produce a privilege log and identify those documents so the Court can determine whether or not same should be provided. If the requested documents exist but are being withheld, then such withholding is wrongful, and said documents should be provided forthwith.

### Ticketmaster's Response to RMG Request for Production Number 33

In this request, RMG simply asks for all documents which reflect the witnesses who have knowledge of Ticketmaster's attempt to stop the use of spiders, robots, bots, automated devices or automated processes on its website. Ticketmaster's objection that this request is vague, ambiguous or overbroad, unduly burdensome or oppressive, or that it calls for any confidential information is simply baseless. In fact, these are precisely the types of documents which should have been provided with initial disclosures. Pointedly, Rule 26(1)(A) specifically requires Ticketmaster to identify the name, address and telephone number of each individual likely to have discoverable information that Ticketmaster may use to support its claims and defenses. For Ticketmaster to withhold documents which simply refer, reflect or relate to these witnesses is improper and in bad faith.

LAW OFFICES OF

## COGGAN & TARLOW

To:     Raaqim Knight
From:   David N. Tarlow
Date:   2/26/2008
Page:   4

### Ticketmaster's Response to RMG Request for Production 46, 47, 48 and 51-66

Ticketmaster, as part of its loss of goodwill claim, argued to the Court that the Hannah Montana fiasco was caused by RMG. RMG anticipates that Ticketmaster will make the same arguments at trial. The information requested in requests 46-48 is calculated to defend against these claims and therefore, is highly relevant.

Moreover, while Ticketmaster claims that each of these requests are premature based upon its motion to dismiss, presumably because Ticketmaster believes that the anti-trust counterclaims will be dismissed. That is no justification for failing to submit to discovery. Even if the anti-trust counterclaims are dismissed, Ticketmaster will still have to litigate against an anti-trust affirmative defense. Pointedly, RMG's 10th Affirmative Defense states "Plaintiff's FAC, and each of its purported claims fail, as this is a frivolous action as same has been brought solely to control competition and violate antitrust laws." Moreover, RMG's 13th Affirmative defense claims that Ticketmaster is acting with unclean hands. Based upon those affirmative defenses, which have not been challenged by Ticketmaster, and are now being litigated, no justification exists for Ticketmaster's failure to produce the responsive documents. Accordingly, request is hereby made that all of such documents be produced in my office forthwith.

### Ticketmaster's Response to Request Numbers 18-24, 32, 34-40, 44-45, 49-50

For all of these requests, Ticketmaster claims that the responsive documents will only be produced after entry of a mutually agreeable protective order. However, with each of these requests, it is entirely unclear why Ticketmaster deems any of this information to be confidential. Here are a few examples: 1) In Request Number 18, RMG seeks all documents which refer, reflect or relate to an investigation which you have conducted with respect to RMG. Any of such information would relate to RMG, and not any trade secret, confidential research, or commercial information of Ticketmaster; 2) In Request Number 19, RMG seeks all documents which refer, reflect or relate to RMG. Again, how could the response to this request possibly include confidential information of Ticketmaster?; 3) In Request Number 20, RMG seeks documents reflecting communications between Ticketmaster and Kovach. Kovach is a witness in this matter who gave a declaration to Ticketmaster for their motion for preliminary injunction. What type of trade secrets, confidential research or commercial information did Ticketmaster discuss with Kovach, a ticket broker that should not be disclosed now? The very fact that Ticketmaster communicated any matters to Kovach in and of itself shows that any documents reflecting same are not confidential. In Request Number 23, RMG seeks information regarding the purchase of tickets made by Kovach or on his behalf since May of 2007. This information is sought to show RMG's affirmative defense of waiver, and Ticketmaster's unclean hands. Kovach's ticket purchases in no way constitute confidential information of Ticketmaster or of Kovach.

LAW OFFICES OF

COGGAN & TARLOW

To:   Raaqim Knight
From: David N. Tarlow
Date: 2/26/2008
Page: 5

Moreover, Rule 34 requires that if an objection is made to part of an item or category, that the part shall be specified and inspection permitted on the remaining parts. Ticketmaster has not specified which parts, if any, of any request is objectionable, nor has it produced or stated that it will produce any documents regarding any remaining parts. This failure to produce documents is improper.

### Ticketmaster's Response to Any Request Whereby It Objects Pursuant to the Attorney-Client Privilege or Work Product Doctrine

Parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party to assess the applicability of the privilege or protection. FRCP 26(b)(5)(A). In Ticketmaster's response to most of the requests, it objects pursuant to the attorney-client privilege or work product doctrine, yet Ticketmaster fails to produce a privilege log indicating if it is withholding documents pursuant to a privilege, and stating the privilege. Thus, RMG has no basis of knowing whether there are documents responsive to its requests which should have been produced. All responses setting forth said objections are improper and should be supplemented with a privilege log.

### Conclusion

I have read your meet and confer letter dated February 21, 2008, and I am aware you would like to meet and confer with me in person at your offices on February 29, 2008. Unfortunately, I will be at an all day mediation on that date, and I am not available to meet and confer with you in person until March 5, 2008 due to the fact that my schedule is full. Moreover, as I have already appeared at your office for a L.R. 37-1 conference, and as RMG is also a prospective moving party, I hereby request that we meet and confer on all issues in my offices, rather than at your offices. Therefore, I propose that we meet and confer at my office on Wednesday, March 5, 2008 at 10:30 a.m. Your attention to this letter is greatly appreciated.

Very truly yours,

David N. Tarlow

CC:   RMG

213

**EXHIBIT  I**

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
rplatt@manatt.com
MARK S. LEE (Bar No. CA 094103)
mlee@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
dbrown@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TICKETMASTER L.L.C., a Virginia limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>RMG TECHNOLOGIES, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV 07-2534-ABC (JCx)<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1) COPYRIGHT INFRINGEMENT (17 USC § 101, *ET SEQ.*);<br>(2) VIOLATION OF DIGITAL MILLENIUM COPYRIGHT ACT (17 USC § 1201);<br>(3) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030);<br>(4) VIOLATION OF CALIFORNIA PENAL CODE § 502;<br>(5) VIOLATION OF RICO (18 U.S.C. § 1962(c));<br>(6) VIOLATION OF RICO (18 U.S.C. § 1962(d));<br>(7) BREACH OF CONTRACT;<br>(8) INDUCING BREACH OF CONTRACT;<br>(9) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>(10) FRAUD; and<br>(11) AIDING AND ABETTING FRAUD<br><br>Complaint Filed: April 17, 2007 |

FIRST AMENDED COMPLAINT

214

1    Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

2    against defendants RMG Technologies, Inc. ("RMG") and DOES 1-10

3    (collectively, "Defendants"):

4

5    ### JURISDICTION AND VENUE

6    1.    This Court has subject matter jurisdiction over the federal claims

7    in this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a) and 18 U.S.C.

8    Section 1964(c), and has jurisdiction over the other claims in this Complaint under

9    California law pursuant to 28 U.S.C. Section 1367(a).

10    2.    Venue is proper in this Court pursuant to 28 U.S.C. Sections

11    1391(b) and 1400 and 18 U.S.C. Section 1965, in that a substantial part of the

12    events giving rise to the claims occurred in this judicial district, Ticketmaster's

13    principal place of business is within this judicial district, and RMG transacts

14    business in this judicial district. In addition, insofar as the Terms of Use govern the

15    relationship between the parties, those Terms provide for venue in state or federal

16    court in Los Angeles County for disputes relating to the purchase of tickets.

17

18    ### SUMMARY

19    3.    Ticketmaster sells tickets for entertainment and sports events on

20    behalf of its clients to the general public through a variety of means, including

21    Ticketmaster's website, ticketmaster.com. The Terms of Use for Ticketmaster's

22    website prohibit, among other things, use of the website for commercial purposes,

23    use of automated devices such as bots and spiders to search for and purchase

24    tickets, excessive requests for web pages and other abusive uses of the site, and

25    purchasing quantities of tickets that exceed stated per customer ticket limits. To

26    maintain the integrity of its website and prevent abuse, Ticketmaster employs a

27    variety of security features on its website, including a feature commonly known as

28

215

1    CAPTCHA, which is designed to detect automated devices and prevent them from

2    purchasing tickets.

3              4.    Since at least as early as 2004, Defendants have marketed and

4    sold an application that enables RMG's customers to conspire with RMG to use

5    automated devices to unlawfully enter into and navigate through Ticketmaster's

6    website and improperly procure large quantities of tickets for the purpose of

7    reselling them at a profit. Defendants also conspire with RMG's customers to assist

8    those customers in circumventing Ticketmaster's security measures. Aware that

9    their activities violate federal and state law and are causing substantial damage to

10   Ticketmaster, Defendants have systematically attempted to conceal their

11   misconduct from Ticketmaster by, among other means, carefully screening RMG's

12   customers to ensure that none of them has any affiliation with or loyalty to

13   Ticketmaster.

14             5.    These deceptive and improper actions have harmed, and

15   continue to harm, Ticketmaster as well as consumers who seek to lawfully purchase

16   tickets through Ticketmaster's website. By using automated devices provided by

17   RMG, which can navigate a website and complete transactions more quickly than

18   human users can, RMG's customers deprive legitimate consumers of the

19   opportunity to purchase tickets, a problem which is compounded by RMG enabling

20   its customers to purchase quantities of tickets far in excess of the contractual per

21   customer ticket limits. This misuse and abuse alters data on Ticketmaster's

22   website, interferes with the operation of the website, deprives Ticketmaster of

23   various revenue streams, and increases Ticketmaster's operational costs. Moreover,

24   the use of RMG's prohibited automated devices involves the improper copying of

25   pages from Ticketmaster's website and the circumvention of Ticketmaster's

26   technological copy protection systems.

27             6.    Ticketmaster therefore asserts claims against Defendants for

28   copyright infringement and for violations of the federal Digital Millennium

41117842.2                                  3                    FIRST AMENDED COMPLAINT

214

Copyright Act, the federal Computer Fraud and Abuse Act, California Penal Code Section 502, and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Ticketmaster also asserts claims for breach of contract, inducing breach of contract, intentional interference with contractual relations, fraud, and aiding and abetting fraud. As relief, Ticketmaster seeks an injunction, compensatory damages, treble damages, punitive damages, disgorgement of Defendants' ill-gotten gains, imposition of a constructive trust, and recovery of attorneys' fees and costs incurred by Ticketmaster to prosecute this lawsuit.

## THE PARTIES

7.     Plaintiff Ticketmaster L.L.C. is a Virginia limited liability company with its principal place of business in the City of West Hollywood, Los Angeles County, California.

8.     Defendant RMG Technologies, Inc. is a Delaware corporation with its principal place of business in Steubenville, Ohio. RMG does business as, among other things, ticketbrokertools.com. Ticketmaster is informed and believes, and based thereon alleges, that RMG conspired to effect the misconduct alleged herein through its President, C.J. Garibay, and other employees, including without limitation Ed Garibay, Shaun McKeegan, Jay Hasman, and Nathan Mitchell.

9.     The true names, residences and capacities, whether individual, corporate or otherwise, of defendants Does 1 through 10 (collectively, the "Does") are unknown to Ticketmaster. Ticketmaster therefore sues those defendants under such fictitious names. Ticketmaster is informed and believes that the Does are brokers who used RMG's automated devices to access Ticketmaster's website, as well as agents and employees of RMG, and in doing the things hereinafter alleged, each of the Does was acting within the course and scope of such agency and employment and with the knowledge, consent and approval of RMG and each other. Ticketmaster is informed and believes that each of the Does is responsible in

217

1   some manner for the acts alleged herein and for the damages that Ticketmaster has
2   sustained.  Ticketmaster will amend this Complaint to show the true names and
3   capacities of the Does when they are ascertained.

4          10.    Ticketmaster is informed and believes, and based thereon
5   alleges, that at all times mentioned herein, each Defendant conspired with, acted in
6   concert and active participation with, and aided and abetted every other Defendant
7   in committing the wrongful acts alleged in this Complaint.  Ticketmaster is further
8   informed and believes, and based thereon alleges, that each of the Defendants
9   knew, or consciously avoided knowing, that the other Defendants were engaged or
10  intended to engage in conduct that violated Ticketmaster's rights and also violated
11  federal and California law.

12

13                              **FACTS**

14

15  **A.    Ticketmaster Attempts To Make Its Ticketing System As Fair And
        Equitable As Possible For Consumers.**

16         11.    Ticketmaster distributes tickets for live entertainment events to
17  the general public on behalf of Ticketmaster's clients, who are venues, promoters,
18  entertainers and sports franchises.  Ticketmaster sells tickets via retail ticket outlets,
19  telephone call centers, and Ticketmaster's website, www.ticketmaster.com.
20  Ticketmaster spends substantial time, energy and resources attempting to ensure
21  that its website is current, accurate and easily understood for the benefit of its
22  clients and the public.

23         12.    Demand for tickets sold through Ticketmaster, including via
24  ticketmaster.com, often exceeds the supply of tickets available for purchase.  This
25  can inspire intense competition among consumers to purchase tickets to the same
26  event when the tickets become available for sale on ticketmaster.com.

27         13.    Recognizing this competitive reality, Ticketmaster has
28  undertaken various measures to make the ticket buying process as fair and equitable

218

1   as possible for consumers.  For example, Ticketmaster attempts to regulate the
2   speed with which users may copy the web pages necessary to purchase tickets on
3   ticketmaster.com.  Ticketmaster also limits the number of tickets that may be
4   purchased in any single transaction.

5       14.  In addition, Ticketmaster has undertaken measures intended to
6   prevent the use of computer programs or other automated devices—sometimes
7   called software robots or "bots"—which can give users of such devices an unfair
8   advantage over human consumers in the ticket purchasing process.  One of those
9   measures is a security computer program, commonly known as CAPTCHA
10  ("Completely Automated Public Turing test to tell Computers and Humans Apart"),
11  that is designed to distinguish between human users and automated devices.  When
12  a user submits a ticket request, a box appears on the screen with random characters
13  partially obscured behind hash marks, which the user is instructed to retype in order
14  to proceed with the ticket request.  Most automated devices cannot decipher and
15  retype the random characters, and thus cannot proceed past that screen to complete
16  a ticket transaction.

17
**B.  Use Of Ticketmaster's Website Is Subject To Copyright Protections And**
18  **Contractual Terms Of Use.**

19      15.  Ticketmaster's website is a work of authorship protected by
20  copyright law.  Ticketmaster (or its predecessors) has registered versions of its
21  website or portions thereof, with the Copyright Office, as described below:

| Title | Registration No. | Date of Registration |
|---|---|---|
| HTML code for Ticketmaster.com | TX-4-465-209 | February 5, 1997 |
| Ticketmaster.com Website II | TX-4-905-957 | June 18, 1999 |
| Ticketmaster.com Website III | TX-4-905-956 | June 18, 1999 |
| Ticketmaster.com | TX-5-072-126 | March 17, 2000 |

219

| Title | Registration No. | Date of Registration |
|---|---|---|
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com | TX-5-455-574 | December 29, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |

16.    Use of ticketmaster.com by any member of the public is governed by Terms of Use that are set forth on the website.  In all relevant respects, except for the inclusion of a liquidated damages provision in 2006, these Terms of Use have been the same from at least as early as 2003 to the present.  (A copy of Ticketmaster's current Terms of Use is attached hereto as Exhibit "A.")

17.    At all relevant times, the home page for ticketmaster.com has contained the following warning:

> Use of this website is subject to express terms of use which prohibit commercial use of this site. By continuing past this page, you agree to abide by these terms.

The underlined phrase "terms of use" on the home page is a readily visible hypertext link that, when clicked, causes the full Terms of Use to appear on the user's screen.  The same message and related hyperlink to Ticketmaster's Terms of Use appear on almost every webpage on the website.  Thus, a user is repeatedly reminded that use of the site is governed by the Terms of Use, and that continuing to use the site with that knowledge constitutes acceptance of those Terms of Use.

220

18.    To purchase tickets through ticketmaster.com, a user must set up an account with Ticketmaster, and in doing so the user is instructed to review the Terms of Use for the website. Since 2003, it has been necessary as part of the account set-up procedure for the user to expressly consent to the Terms of Use by clicking a button labeled "Accept and Continue." (A copy of the webpage with the "Accept and Continue" button as part of the account set-up procedure is attached hereto as Exhibit "B.")

19.    Users of ticketmaster.com also are referred to the Terms of Use when completing a ticket purchase. Users see a web page which states, "As a user of this website, you agree that you are subject to this website's Terms of Use," and embedded in this statement is a hyperlink that, when clicked, causes the Terms of Use to appear on the user's screen. During 2006, Ticketmaster added an "Accept and Continue" button at the point of purchase, which requires a user, before completing a ticket purchase, to expressly assent to the Terms of Use by clicking a button labeled "Accept and Continue." (A copy of the webpage with the "Accept and Continue" button as part of the ticket purchase procedure is attached hereto as Exhibit "C.")

20.    Consumers who wish to purchase tickets through ticketmaster.com must navigate through a series of pages on the website by clicking on designated hypertext links on those pages. Viewing Ticketmaster's homepage and clicking on the hyperlinks to reach the various other pages that must be viewed to purchase tickets from the website causes copies of each of those pages to be created and to appear on a customer's computer. Ticketmaster's Terms of Use act as a license agreement that describes, *inter alia*, when and in what circumstances a user is permitted to copy pages of the website, especially those pages that must be viewed to purchase tickets.

21.    At all relevant times the Terms of Use have permitted only personal use of the Ticketmaster.com website by consumers, as follows:

221

1

2

3

> **Permitted Use:** You agree that you are only authorized to visit, view and retain a copy of pages of this site for your own personal use... unless otherwise specifically authorized by Ticketmaster to do so.

4      22.   At all relevant times the Terms of Use have included a variety of

5 provisions that prohibit misuse of the website. For example, the Terms of Use have

6 always prohibited commercial use of Ticketmaster's website, providing in pertinent

7 part as follows:

8

9

10

11

12

13

14

15

> **Commercial Use:** No... areas of this site may be used by our visitors for any commercial purposes... Without limiting the foregoing, you may not use this site to resell tickets of any kind [except as permitted on the site itself]...We reserve the right to block access to this Site or Ticketmaster's other services, or cancel a ticket order or ticket with respect to any person believed to be, or believed to be acting in concert with any person who is believed to be, violating the law or these Terms or Ticketmaster's rights, or utilizing automated means to process or place ticket orders, or who has ordered a number of tickets that exceeds the stated limit. Violating any limitations or terms on the Site will be deemed to be a violation of these Terms.

16     23.   At all relevant times, the Terms of Use have expressly

17 prohibited the use of bots and other automated means to access ticketmaster.com.

18 In that regard, the Terms of Use provide in pertinent part as follows:

19

20

21

22

> **Access and Interference:** You agree that you will not use any robot, spider or other automatic device, process or means to access the Site. . . . You agree that you will not access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval.

23     24.   Similarly, at all relevant times, the Terms of Use have

prohibited the unauthorized use of the site, providing in pertinent part as follows:

24

25

26

27

28

> **Unauthorized Use of the Site:** Any Illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use. You do not have permission to access the Site in any way that violates, or in the course of violating, these Terms of Use. Illegal or unauthorized use of the Site includes, but is not limited to, using the site to facilitate illegal ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot,

222

spider or other automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour period (hereafter referred to as "Abusive Use") .
. . .

25.    Furthermore, the Terms of Use limit the number of tickets that a consumer may purchase in a single transaction. At all relevant times, the Terms of Use have contained a hyperlink to, and have expressly incorporated, Ticketmaster's Purchase Policy. The hyperlink to Ticketmaster's Purchase Policy is easily visible and readily accessible under a heading in the Terms of Use which states "Ticket Purchase Policy." Immediately below this heading in the Terms of Use is the following statement:  "Please review the Purchase Policy, which will govern your order or purchase of any tickets through the Site." Clicking on the "Purchase Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

26.    At all relevant times, the Purchase Policy on Ticketmaster's website has stated as follows:

**Amount of Tickets Per Customer or Ticket Limits.** When purchasing tickets on Ticketmaster.com, you are limited to a specified number of tickets for each event (also known as a "ticket limit"). This amount is included on the unique event page and is verified with every transaction. This policy is in effect to discourage unfair ticket buying practices.

27.    In sum, at all relevant times, the Terms of Use, including the Purchase Policy, have prohibited users from, among other things, using the Ticketmaster website for commercial purposes, using bots and other automated devices to access and navigate the site and conduct transactions, abusing the Ticketmaster system with excessive requests for web pages, and purchasing tickets in excess of the per customer ticket limit. .

41117842.2

10

FIRST AMENDED COMPLAINT

C.  **Defendants Have Misused And Abused Ticketmaster's Website Directly And By Assisting RMG's Customers To Do So.**

28.  Since at least as early as 2004, Defendants have been developing, marketing and selling a software application that enables RMG's customers, who are primarily ticket brokers, to employ automated devices to unlawfully and improperly access Ticketmaster's website and quickly purchase large quantities of tickets in violation of the Terms of Use of ticketmaster.com. These automated devices, which include "auto-workers" and "super-proxy-workers," are designed to, and do, circumvent CAPTCHA and other security measures on Ticketmaster's website.

29.  Ticketmaster is informed and believes, and based thereon alleges, that RMG's customers do not acquire physical possession of or download RMG's devices.   Rather, RMG's customers log onto RMG's website, ticketbrokertools.com, by entering a secret user name and password, and then use a suite of devices and products on that website, including auto-workers and super-proxy-workers, to improperly access Ticketmaster's website. Thus, each and every illegal ticket purchase from Ticketmaster by any customer of RMG is executed jointly with RMG.

30.  RMG provides a variety of online software schemes to maximize the ability of these bots to unlawfully circumvent Ticketmaster's security measures and to accelerate the purchase of numerous tickets. Depending on the level of service and features a customer is purchasing from RMG, a customer can use multiple bots—sometimes hundreds of them—simultaneously to flood the Ticketmaster website with requests for tickets.  If a customer encounters any obstacle in securing tickets or circumventing Ticketmaster's security measures, the customer may immediately consult with an RMG representative to receive information concerning how to maintain improper access to the Ticketmaster system.

224

31.    Defendants also provide consultation to RMG's customers in setting up hardware, telecommunications equipment, and other tools to further expand their illegal invasion of Ticketmaster's website. Ticketmaster is informed and believes, and based thereon alleges, that Defendants have consulted with customers throughout the United States, including in California, to lend assistance in establishing or expanding the customers' illegal ticket-buying operations.

32.    Defendants carefully screen potential customers of RMG to ensure that they have no affiliation with or loyalty to Ticketmaster. Indeed, Defendants warn RMG's customers not to publicize the existence of RMG's ticket-buying services, out of concern that Defendants' illegal activities might be discovered by Ticketmaster. Rather, if an existing customer wishes to recommend RMG's services to another broker, the existing customer is instructed to provide the name of the potential customer to RMG, so that Defendants may first screen the potential customer before deciding whether to initiate contact with the potential RMG customer.

33.    Defendants have reviewed and consented to Ticketmaster's Terms of Use by accessing www.ticketmaster.com. To design automated devices that can circumvent Ticketmaster's security measures and exploit the Ticketmaster system, it is necessary for Defendants to regularly visit Ticketmaster's website. Like any other visitor to the site, Defendants would see repeated reminders of the Terms of Use and would be instructed to review them. Moreover, Ticketmaster is informed and believes, and based thereon alleges, that Defendants have purchased tickets on Ticketmaster's website through their automated devices, as part of their ongoing testing of devices, and that Defendants have been required to click the Accept and Continue button, thereby expressly confirming their assent to the Terms of Use, when making such ticket purchases.

34.    Ticketmaster is informed and believes, and based thereon alleges, that in the course of using RMG's automated devices, Defendants, as well

225

1    as RMG's customers, have repeatedly and systematically requested more than 1000
2    pages of the website in applicable twenty-four hour periods, and have accessed,
3    reloaded or refreshed transactional events or ticketing pages and made other
4    requests to transactional servers more than once during applicable three-second
5    intervals.    Moreover, Ticketmaster is informed and believes, and based thereon
6    alleges, that users of these devices have routinely bought quantities of tickets
7    through Ticketmaster in excess of per-customer ticket limits, and that all or
8    substantially all of these purchases are made for a commercial purpose.

9            35.    The Ticketmaster system sometimes can detect the presence of
10    an automated device. When that occurs, the system generates a message to the user
11    explaining that the use of automated devices is prohibited.    Ticketmaster is
12    informed and believes, and based thereon alleges, that its system has generated such
13    messages in response to automated devices used by RMG customers, and that the
14    message is intercepted by and visible to RMG because the access to Ticketmaster's
15    website is occurring through RMG's applications.    Nonetheless, Defendants have
16    ignored the warnings and have continued to facilitate the use of automated devices
17    to unlawfully navigate through the Ticketmaster website and wrongfully acquire
18    tickets.

19            36.    When the Ticketmaster system detects the presence of an
20    automated device, the system, in addition to generating the message described
21    above, temporarily disables the automated device.  Ticketmaster is informed and
22    believes, and based thereon alleges, that its system has temporarily disabled
23    automated devices used by customers of RMG, but when that occurs, Defendants
24    provide technical assistance to their customers to regain access to the Ticketmaster
25    system, such as helping the customer to deploy the automated device from a
26    different IP address (Internet Protocol address) and enable their customers to
27    continue with their unauthorized use of the Ticketmaster system.

28

41117842.2                        13                FIRST AMENDED COMPLAINT

226

37. Ticketmaster diligently tries to identify users of bots and other prohibited automated devices, but some users of these devices go to great lengths to hide their tracks. Ticketmaster is informed and believes, and based thereon alleges, that Defendants have assisted RMG's customers in evading detection by, among other means, helping customers obtain new IP addresses from their Internet Service Providers, and advising the customers to remove data and clean out "cookies" from the computers they use when accessing ticketmaster.com, thereby eluding identification by Ticketmaster as repeat visitors to the site.

38. Thus, it was not until quite recently that Ticketmaster was able to assemble the evidence necessary to link Defendants with, among other things, unlawful access to www.ticketmaster.com and Defendants' related use of prohibited automated devices.

**D.    The Wrongful Conduct Has Harmed Ticketmaster's Website And Operations.**

39. Ticketmaster has been harmed by the use of RMG's automated devices. To meet the demands of consumers and Ticketmaster's own clients, Ticketmaster must provide an equitable ticket distribution system that gives all consumers a fair opportunity to acquire the best available tickets for events. The use of automated devices undermines this effort, because automated devices can navigate through Ticketmaster's website and purchase tickets at a speed that legitimate consumers who do not use such devices cannot match. As a result, the inventory of tickets available to consumers who do not use such devices is substantially diminished, which has led some consumers to question Ticketmaster's ability to ensure a level playing field for the purchase of tickets.

40. This harm is compounded by the fact that users of automated devices inundate the Ticketmaster system with thousands of requests for tickets, and each request causes tickets to be placed temporarily on reserve, even if they are not ultimately purchased. While a ticket is on reserve, it is unavailable to any other

227

1    user of the site.  Not only does this further diminish the inventory of tickets for
2    legitimate consumers, but it impedes Ticketmaster's ability to provide an important
3    service to its clients.  Clients use the Ticketmaster system to monitor ticket sales
4    activity to make a variety of decisions, including whether to open more seats or
5    move the seats to other distribution channels.  The artificially high volume of seats
6    revolving in and out of reserve status due to the use of automated devices makes it
7    difficult to gauge how well tickets for the event are actually selling, which in turn
8    interferes with the clients' ability to make the ongoing decisions that are based on
9    sales activity.

10         41.    Users  of  automated  devices  also  block  access  to  the
11   Ticketmaster system by legitimate consumers in a variety of other ways.  For
12   example, Ticketmaster's website allocates traffic to various servers through a load
13   balancing program that is designed to ensure consumer requests are processed
14   equitably and that no consumer receives slower service merely because his or her
15   request was directed to one server rather than another.  However, users of
16   automated devices bypass the load balancing program and target specific servers
17   directly with thousands of requests, thus interfering with the website's traffic
18   allocation feature and putting some consumers whose requests were allocated to the
19   same server that was targeted by the automated device at risk of slower service.

20         42.    In addition, users of automated devices deprive Ticketmaster of
21   revenue and revenue opportunities in a variety of ways.  Ticketmaster's website is
22   part of a carefully crafted business model that integrates other services and features
23   into the ticket purchasing process. The website is designed so that users will follow
24   certain steps and will see certain pages in the process of requesting and purchasing
25   tickets. Based on this expected flow of traffic, clients, advertisers and Ticketmaster
26   itself offer particular services or opportunities on particular pages, ranging from
27   parking at the event to signing up for client newsletters.  However, automated
28   devices, which do not use traditional browsers, bypass the HTML code for these

228

1  features, so the users of those devices never even see these offers. These same

2  offenders further exacerbate the problem by purchasing enormous quantities of

3  tickets, which diminishes the ticket inventory for legitimate consumers and reduces

4  the number of legitimate consumers who will reach the pages that provide these up-

5  sell opportunities.

6       43.    Furthermore, by accessing the Ticketmaster system at targeted

7  points, automated devices alter the security features of the website itself. Normally,

8  users receive automatic and temporary permission—in effect, a token—to make

9  requests on the system. That token is automatically revoked if the pace of requests

10 exceeds a certain limit. However, by systematically deleting cookies on the user's

11 system, automated devices enable the user to constantly assume a new identity and

12 acquire new tokens even though that same user is far exceeding the request limit.

13      44.    All of these problems involve, in one way or another, alteration

14 of the Ticketmaster system and deletion, destruction and alteration of data on the

15 system.

16      45.    The use of automated devices also diverts resources from the

17 service of legitimate consumers. Ticketmaster must take extraordinary actions to

18 enhance the website infrastructure so it can support all of the activity on its website,

19 including all of the artificial and inflated activity generated by the automated

20 devices, and otherwise ensure the ongoing integrity of the website in the face of this

21 onslaught of devices. The use of these prohibited devices also significantly

22 increases the costs of data storage, troubleshooting and system maintenance.

23

24                 **FIRST CLAIM FOR RELIEF**

25                 **Copyright Infringement**

26                 **(Against All Defendants)**

27      46.    Ticketmaster alleges and incorporates by reference all of the

28 preceding paragraphs.

229

1            47.    Ticketmaster owns valid U.S. Copyright registrations in its

2    website and specific portions thereof.

3            48.    In creating, causing the use of, and using bots, programs, or

4    other automatic devices on the ticketmaster.com website to acquire tickets for the

5    commercial purpose of reselling them, Defendants have acted in excess of the terms

6    of the license agreement created by Ticketmaster's Terms of Use, and thereby

7    copied or caused to be copied without authorization pages from the

8    ticketmaster.com site and other original elements of Ticketmaster's copyrighted

9    website. Defendants had the right and ability to supervise the infringing activities

10   of RMG, RMG's employees and RMG's customers, and induced or materially

11   contributed to the infringing activities of those employees and customers while

12   knowing of and directly benefiting from that infringing activity.

13           49.    As a proximate result of this direct, contributory and vicarious

14   copyright infringement, Ticketmaster suffered significant damage in an amount not

15   presently known with certainty, but which will be proven at trial. Further,

16   Ticketmaster is suffering irreparable harm because of Defendants' infringing

17   activity.

18           50.    Ticketmaster is entitled to the range of relief provided by

19   17 U.S.C. Sections 502-505, including injunctive relief, an order for the

20   impounding and destruction of all copies of all bots, programs, or other automatic

21   devices used by Defendants to violate Ticketmaster's rights, compensatory

22   damages in an amount to be determined, statutory and punitive damages, and its

23   costs and attorneys' fees.

24

25

26

27

28

230

1

## **SECOND CLAIM FOR RELIEF**

2

### **Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201**

3

### **(Against All Defendants)**

4    51.    Ticketmaster alleges and incorporates by reference all of the

5    preceding paragraphs.

6    52.    Ticketmaster is informed and believes, and based thereon

7    alleges, that Defendants are manufacturing, importing, trafficking in and using bots,

8    programs, or other technology, products, services, devices, components, or parts

9    thereof, that are primarily designed and produced to circumvent the technological

10    measures by which Ticketmaster effectively controls access to its copyrighted

11    website.

12    53.    Ticketmaster is informed and believes, and based thereon

13    alleges,  that these bots, programs, or other technical devices have no commercially

14    significant purpose or use other than to circumvent the technological measures that

15    Ticketmaster uses to control access to its website, and that Defendants are creating,

16    marketing, trafficking in and using those devices for that purpose.

17    54.    Ticketmaster has suffered significant damages in an amount not

18    presently known with certainty, but which will be proven at trial, as a proximate

19    result of Defendants' above-referenced misconduct.

20    55.    Ticketmaster is entitled to the range of relief provided by

21    17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or

22    statutory damages, and its costs and attorneys' fees in an amount to be proven at

23    trial.

24

25

26

27

28

231

1

## THIRD CLAIM FOR RELIEF

2

## Violation Of Computer Fraud And Abuse Act, 18 U.S.C. § 1030

3

### (Against All Defendants)

4        56.    Ticketmaster alleges and incorporates by reference all of the

5    preceding paragraphs.

6        57.    Ticketmaster's computers are involved in interstate and foreign

7    communication.

8        58.    Ticketmaster is informed and believes, and based thereon

9    alleges, that Defendants have knowingly and with intent to defraud trafficked in

10   passwords or other information that has been used to access Ticketmaster's website

11   without authorization or in excess of authorized access, in violation of the

12   Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6)(A).

13       59.    Furthermore, Ticketmaster is informed and believes, and based

14   thereon alleges, that Defendants have intentionally accessed Ticketmaster's

15   computers without authorization or in excess of authorized access, and, through

16   interstate or foreign communication, obtained information from those computers, in

17   violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C).

18   Ticketmaster is informed and believes, and based thereon alleges, that as a result of

19   this conduct, Ticketmaster sustained economic damages of at least $5,000 over a

20   one-year period.

21       60.    Furthermore, Ticketmaster is informed and believes, and based

22   thereon alleges, that Defendants knowingly, and with intent to defraud, have

23   accessed Ticketmaster's computers without authorization or in excess of authorized

24   access, and by means of such conduct furthered their intended fraud and obtained

25   items of value greater than $5,000 over a one-year period, in violation of the

26   Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

27       61.    As alleged in more detail in Paragraphs 39-45 above, these

28   violations have damaged Ticketmaster by, among other things, diminishing the

1    inventory of tickets available through Ticketmaster to legitimate consumers,

2    causing artificially high levels of tickets to be placed on reserve and thereby

3    interfering with the transmission of real time sales information to Ticketmaster's

4    clients, interfering with and disrupting Ticketmaster's load balancing program and

5    thereby denying service to legitimate consumers, bypassing required website entry

6    and exit points, which directly and indirectly reduces integral revenue

7    opportunities, altering website security features through manipulation of request

8    limit monitoring, requiring Ticketmaster to undertake extraordinary actions to

9    monitor and enhance website infrastructure, and significantly increasing costs of

10    data storage, troubleshooting and system maintenance.

11         62.    Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g),

12    Ticketmaster is entitled to an injunction, damages, and other legal and equitable

13    relief as prayed for in this Complaint.

14

15                       **FOURTH CLAIM FOR RELIEF**

16               **Violation Of California Penal Code § 502**

17                      **(Against All Defendants)**

18         63.    Ticketmaster alleges and incorporates by reference all of the

19    preceding paragraphs.

20         64.    Defendants have knowingly used and caused to be used

21    Ticketmaster's computer services without permission, in violation of California

22    Penal Code Section 502(c)(3).

23         65.    Furthermore, Defendants have knowingly and without

24    Ticketmaster's permission provided, or assisted in providing, a means of accessing

25    Ticketmaster's website, in violation of California Penal Code Section 502(c)(6).

26         66.    Furthermore, Ticketmaster is informed and believes, and based

27    thereon alleges, that through their use of bots and other automated devices in

28    violation of the Terms of Use, Defendants have knowingly and without permission

283

1    disrupted Ticketmaster's computer services and have caused the denial of those
2    services to authorized users of the computer system, in violation of California Penal
3    Code Section 502(c)(5).

4          67.   Furthermore, Ticketmaster is informed and believes, and based
5    thereon alleges, that Defendants have knowingly accessed Ticketmaster's website
6    in violation of the Terms of Use and thus without permission, in violation of
7    California Penal Code Section 502(c)(7).

8          68.   Furthermore, Ticketmaster is informed and believes, and based
9    thereon alleges, that Defendants have without permission taken data from
10   Ticketmaster's computer system and computer service and have used the data on
11   that system to wrongfully obtain tickets, in violation of California Penal Code
12   Sections 502(c)(1) and (2).

13         69.   As alleged in more detail in Paragraphs 39-45 above, these
14   violations have damaged Ticketmaster by, among other things, diminishing the
15   inventory of tickets available through Ticketmaster to legitimate consumers,
16   causing artificially high levels of tickets to be placed on reserve and thereby
17   interfering with the transmission of real time sales information to Ticketmaster's
18   clients, interfering with and disrupting Ticketmaster's load balancing program and
19   thereby denying service to legitimate consumers, bypassing required website entry
20   and exit points, which directly and indirectly reduces integral revenue
21   opportunities, altering website security features through manipulation of request
22   limit monitoring, requiring Ticketmaster to undertake extraordinary actions to
23   monitor and enhance website infrastructure, and significantly increasing costs of
24   data storage, troubleshooting and system maintenance.

25         70.   Pursuant to California Penal Code Section 502(e), Ticketmaster
26   is entitled to an injunction, compensatory and punitive damages, attorneys' fees,
27   and other legal and equitable relief as prayed for in this Complaint.

28

234

1    71.    Defendants have acted with oppression, fraud and malice toward

2   Ticketmaster, entitling Ticketmaster to an award of punitive damages in an amount

3   sufficient to deter them from future misconduct.

4

5                          **FIFTH CLAIM FOR RELIEF**

6                    **Violation of RICO, 18 U.S.C. § 1962(c)**

7                         **(Against all Defendants)**

8    72.    Ticketmaster alleges and incorporates by reference all of the

9   preceding paragraphs.

10    73.    Defendants have repeatedly and systematically engaged in

11  "racketeering activity" as defined in 18 U.S.C. Section 1961(1) through their

12  violations of 18 U.S.C. Section 1029, which prohibits fraud and related activity in

13  connection with access devices.  Defendants have provided devices, along with

14  technical assistance in exploiting such devices, to gain access to numerous

15  customer accounts on Ticketmaster's website without Ticketmaster's consent or

16  permission. Each instance of providing devices constitutes a separate offense under

17  18 U.S.C. Section 1029.

18    74.    As a separate and independent basis for RICO liability,

19  Defendants have engaged in racketeering activity through their violations of 18

20  U.S.C. Section 1343, which prohibits wire fraud.  Defendants have repeatedly and

21  systematically communicated with RMG's customers via telephone and the Internet

22  and with Ticketmaster's website via the Internet for the purpose effectuating their

23  fraudulent scheme of providing a means for RMG's customers to unlawfully access

24  Ticketmaster's website by means of false representations and omissions and to

25  obtain tickets to which such individuals are not entitled.  Each communication via

26  wire constitutes a separate offense under 18 U.S.C. Section 1343.

27

28

235

1    75.    RMG and its customers collectively comprise an "enterprise" as
2    defined in 18 U.S.C. Section 1961(4), and Defendants are employed by or
3    associated with that enterprise.

4    76.    Defendants conduct the affairs of the enterprise through "a
5    pattern of racketeering activity" as defined in 18 U.S.C. Section 1961(5).  As
6    alleged above, Defendants have engaged in at least two acts of racketeering activity
7    within the last ten years.

8    77.    Ticketmaster and the enterprise are both involved in interstate
9    commerce.

10    78.    Accordingly, Defendants have violated, and continue to violate,
11    18 U.S.C. Section 1962(c), which makes it unlawful for any persons employed by
12    or associated with any enterprise engaged in, or the activities of which affect,
13    interstate commerce, to conduct or participate, directly or indirectly, in the conduct
14    of such enterprise's affairs through a pattern of racketeering activity.

15    79.    Ticketmaster has been injured in its business or property as a
16    result of this violation of 18 U.S.C. Section 1962(c).  Under 18 U.S.C. Section
17    1964, Defendants are jointly and severally liable to Ticketmaster for three times the
18    damages that Ticketmaster has suffered as a result of Defendants' fraudulent
19    actions, as well as an injunction as prayed for in this Complaint, and its attorneys'
20    fees and costs in prosecuting this lawsuit.

21

22                    **SIXTH CLAIM FOR RELIEF**
23              **Violation of RICO, 18 U.S.C. § 1962(d)**
24                    **(Against all Defendants)**

25    80.    Ticketmaster alleges and incorporates by reference all of the
26    preceding paragraphs.

27    81.    All Defendants conspired with one another to violate 18 U.S.C.
28    Section 1962(c), thereby violating 18 U.S.C. Section 1962(d).

236

1    82.    Ticketmaster has been injured in its business or property by
2  reason of this conspiratorial conduct.

3    83.    By reason of Defendants' violation of 18 U.S.C. Section
4  1962(d), Defendants are jointly and severally liable to Ticketmaster for three times
5  the damages that Ticketmaster has suffered as a result of Defendants' fraudulent
6  actions, as well as an injunction as prayed for in this Complaint, and its attorneys'
7  fees and costs in prosecuting this lawsuit.

8
9                    **SEVENTH CLAIM FOR RELIEF**
10                         **Breach Of Contract**
11                        **(Against All Defendants)**

12    84.    Ticketmaster alleges and incorporates by reference all of the
13  preceding paragraphs.

14    85.    At all relevant times, the home page and most other pages on
15  ticketmaster.com have informed users that their use of the website is subject to
16  express terms and conditions set forth in the Terms of Use, and that by continuing
17  past the page in question, the user expressly and/or impliedly agrees to be bound by
18  those terms. Users have a reasonable opportunity to review the Terms of Use upon
19  first entering the website, and they also have a reasonable opportunity to review the
20  Terms of Use during their use of the site. The link to the Terms of Use is displayed
21  in such a manner as to provide consumers with clear notice of their existence.

22    86.    Ticketmaster is informed and believes, and based thereon
23  alleges, that Defendants expressly assented to the Terms of Use when setting up
24  accounts on ticketmaster.com. Moreover, since the middle of 2006, it has been
25  necessary for users of ticketmaster.com to expressly assent to the Terms of Use
26  each time they submit a request to purchase tickets. Thus, Ticketmaster is informed
27  and believes that Defendants have repeatedly provided their express assent to the
28  Terms of Use.

237

87.    The Terms of Use prohibit, among other things, commercial use of the site, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits.    These Terms of Use are fair and reasonable.

88.    Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

89.    Ticketmaster is informed and believes, and based thereon alleges, that since at least as early as 2004, Defendants have repeatedly and systematically breached the Terms of Use by using bots and other automated devices to access the website and buy tickets, by using the website for a commercial purpose, and by buying tickets in quantities that exceed per customer ticket limits. Ticketmaster is informed and believes, and based thereon alleges, that as part of this misuse of Ticketmaster's website, Defendants repeatedly and systematically requested more than 1000 pages of the website in applicable twenty-four hour periods, and accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable three-second intervals.

90.    It can be impracticable and extremely difficult to ascertain the damages from abusive use of Ticketmaster's website.    Therefore, Ticketmaster made a reasonable attempt at a formula for calculating the damages caused by abusive use of its website, and in early 2006 Ticketmaster added a liquidated damages provision to the Terms of Use that includes this formula.    The liquidated damages provision states in pertinent part as follows:

> You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive

238

Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request each time that a page request is made after that first 1000 during that twenty-four hour period.

91.    Ticketmaster is entitled to liquidated damages in accordance with the foregoing provision, in an amount to proven at trial when the full extent of Defendants' requests for pages on Ticketmaster's website is ascertained.   In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for breaches of the Terms of Use that occurred before the liquidated damages provision was added to the Terms of Use, and as an alternative to liquidated damages should the liquidated damages provision be unenforceable for any reason.

92.    The Terms of Use also provide that Ticketmaster is entitled to injunctive relief to enjoin violations of the Terms of Use.   At all relevant times the Terms of Use have provided in pertinent part as follows: "You agree that monetary damages may not provide a sufficient remedy to Ticketmaster for violations of these Terms and you consent to injunctive or other equitable relief for such violations."

93.    Defendants' conduct has significantly and irreparably damaged Ticketmaster and will continue to do so unless restrained by this Court.   Thus, in addition to liquidated damages and other damages for abusive use of its website, Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed for in this Complaint.

239

# EIGHTH CLAIM FOR RELIEF

## Inducing Breach Of Contract

## (Against all Defendants)

94.    Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

95.    At all relevant times, the home page and most other pages on ticketmaster.com have informed users that their use of the website is subject to express terms and conditions set forth in the Terms of Use, and that by continuing past the page in question, they expressly and/or impliedly agree to be bound by those terms. Users have a reasonable opportunity to review the Terms of Use upon first entering the website, and they also have a reasonable opportunity to review the Terms of Use during their use of the site. The link to the Terms of Use is displayed in such a manner as to provide consumers with notice of their existence.

96.    Ticketmaster is informed and believes, and based thereon alleges, that Defendants expressly assented to the Terms of Use when setting up accounts on ticketmaster.com. Moreover, since the middle of 2006, it has been necessary for users of ticketmaster.com to expressly assent to the Terms of Use each time they submit a request to purchase tickets. Thus, Ticketmaster is informed and believes that Defendants have repeatedly provided their express assent to the Terms of Use.

97.    The Terms of Use prohibit, *inter alia*, commercial use of the site, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits. These Terms of Use are fair and reasonable.

98.    Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

99.    Since at least as early as 2004, customers of RMG have repeatedly and systematically breached the Terms of Use by using bots and other automated devices to access the website and buy tickets, by using the website for a

240

commercial purpose, and by buying tickets in quantities that exceed per customer ticket limits. Ticketmaster is informed and believes that, as part of this misuse of Ticketmaster's website, these RMG customers repeatedly and systematically requested more than 1000 pages of Ticketmaster's website in applicable twenty-four hour periods, and accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable three-second intervals.

100.    Defendants knew of the Terms of Use and that those Terms of Use constitute an agreement between Ticketmaster and RMG's customers, and Defendants intended to cause RMG's customers to breach those agreements. Indeed, the entire business model of RMG is to enable its customers to breach Ticketmaster's Terms of Use.

101.    Defendants' conduct caused RMG's customers to breach their contracts with Ticketmaster. In fact, RMG's automated devices were the means by which RMG's customers did in fact breach their contracts with Ticketmaster.

102.    Ticketmaster has been harmed as a result, and Defendants' conduct was a substantial factor in causing such harm. At all relevant times, the Terms of Use have contained a liquidated damages provision that provides in pertinent part as follows:

> You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request each time that a page request is made after that first 1000 during that twenty-four hour period.

241

103.   Ticketmaster is entitled to liquidated damages in accordance with the foregoing provision, in an amount to proven at trial when the full extent of the requests for pages on Ticketmaster's website by RMG's customers is ascertained.   In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for breaches of the Terms of Use that occurred before the liquidated damages provision was added to the Terms of Use, and as an alternative to liquidated damages should the liquidated damages provision be unenforceable for any reason.

104.   Ticketmaster is informed and believes that Defendants' conduct was undertaken with the intent to injure Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights, and constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code Section 3294. As a result, Ticketmaster is entitled to an award of punitive damages against each Defendant in an amount sufficient to deter them from future misconduct.

## NINTH CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations

### (Against all Defendants)

105.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

106.   As alleged above, RMG's customers were bound by the Terms of Use on Ticketmaster's website and at all relevant times Defendants were aware that these RMG customers were bound by the Terms of Use.   Moreover, at all relevant times, Defendants were aware of the content of the Terms of Use.

107.   The Terms of Use prohibit, *inter alia*, commercial use of the site, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits.  These Terms of Use are fair and reasonable.

242

1          108. Ticketmaster has performed all conditions, covenants and
2  promises required to be performed by it in accordance with the Terms of Use.

3          109. By marketing and selling automated devices to circumvent
4  Ticketmaster's security devices and providing tools and assistance to RMG's
5  customers to enable them to inundate Ticketmaster's website with requests and
6  excess ticket purchases, Defendants intended to disrupt the performance of the
7  contracts between Ticketmaster and RMG's customers.

8          110. Since at least as early as 2004, customers of RMG have
9  repeatedly and systematically used bots and other automated devices to access the
10  website and buy tickets, have used the website for a commercial purpose, and have
11  bought tickets in quantities that exceed per customer ticket limits. Ticketmaster is
12  informed and believes, and based thereon alleges, that as part of this misuse of
13  Ticketmaster's website, these RMG customers repeatedly and systematically
14  requested more than 1000 pages of Ticketmaster's website in applicable twenty-
15  four hour periods, and accessed, reloaded or refreshed transactional events or
16  ticketing pages and made other requests to transactional servers more than once
17  during applicable three-second intervals.

18          111. Defendants' conduct made it substantially more difficult and
19  expensive for Ticketmaster to perform under those contracts. As alleged in more
20  detail in Paragraphs 39-45 above, these violations have damaged Ticketmaster by,
21  among other things, diminishing the inventory of tickets available through
22  Ticketmaster to legitimate consumers, causing artificially high levels of tickets to
23  be placed on reserve and thereby interfering with the transmission of real time sales
24  information to Ticketmaster's clients, interfering with and disrupting
25  Ticketmaster's load balancing program and thereby denying service to legitimate
26  consumers, bypassing required website entry and exit points, which directly and
27  indirectly reduces integral revenue opportunities, altering website security features
28  through manipulation of request limit monitoring, requiring Ticketmaster to

243

1  undertake extraordinary actions to monitor and enhance website infrastructure, and

2  significantly increasing costs of data storage, troubleshooting and system

3  maintenance.   Thus, Defendants' conduct was a substantial factor in causing harm

4  to Ticketmaster.

5        112.  At all relevant times, the Terms of Use have contained a

6  liquidated damages provision that provides in pertinent part as follows:

7        You agree that Abusive Use of the Site, as defined above,
       causes damage and harm to Ticketmaster in the form of,
8        among other things, impaired goodwill, lost sales, and
       increased expenses associated with responding to Abusive
9        Use of the Site. You further agree that monetary damages
       for Abusive Use of the Site are difficult to ascertain and
10       that proof of monetary damages for Abusive Use would
       be costly and inconvenient to calculate. Accordingly you
11       agree that liquidated damages are warranted for Abusive
       Use. Therefore, you agree that if you, or others acting in
12       concert with you, alone or collectively request more than
       1000 pages of the Site in any twenty-four hour period,
13       you, and those acting in concert with you, will be jointly
       and severally liable for liquidated damages in the amount
14       of ten dollars ($10.00) per page request each time that a
       page request is made after that first 1000 during that
15       twenty-four hour period.

16       113.  Ticketmaster is entitled to liquidated damages in accordance

17  with the foregoing provision, in an amount to proven at trial when the full extent of

18  the requests for pages on Ticketmaster's website by RMG's customers is

19  ascertained.  In addition, Ticketmaster is entitled to compensatory damages, in an

20  amount to be proven at trial, for breaches of the Terms of Use that occurred before

21  the liquidated damages provision was added to the Terms of Use, and as an

22  alternative to liquidated damages should the liquidated damages provision be

23  unenforceable for any reason.

24       114.  Ticketmaster is informed and believes that Defendants' conduct

25  was undertaken with the intent to injure Ticketmaster, or with a willful and

26  conscious disregard of Ticketmaster's rights, and constitutes clear and convincing

27  evidence of oppression, fraud and malice under California Civil Code Section 3294.

28

1  As a result, Ticketmaster is entitled to an award of punitive damages against each

2  Defendant in an amount sufficient to deter them from future misconduct.

3

### TENTH CLAIM FOR RELIEF

#### Fraud

#### (Against all Defendants)

7      115.  Ticketmaster alleges and incorporates by reference all of the

8  preceding paragraphs.

9      116.  Ticketmaster is informed and believes, and based thereon

10  alleges, that Defendants have repeatedly accessed Ticketmaster's website, and in

11  proceeding to use the website, represented to Ticketmaster that they would comply

12  with the Terms of Use, and thus that they would not, among other things, use the

13  site for commercial purposes, use bots or other automated devices, abuse the

14  website, or exceed per-customer ticket limits.

15      117.  Ticketmaster is informed and believes, and based thereon

16  alleges, that Defendants clicked the "Accept and Continue" button on

17  Ticketmaster's website when setting up online accounts, thereby expressly

18  representing to Ticketmaster that they would comply with the Terms of Use for the

19  website, and thus that they would not, among other things, use the site for

20  commercial purposes, use bots or other automated devices, abuse the website, or

21  exceed per-customer ticket limits.

22      118.  In addition, Ticketmaster is informed and believes, and based

23  thereon alleges, that since 2006, Defendants have been required to click the

24  "Accept and Continue" button on Ticketmaster's website when completing

25  purchases of tickets, thereby expressly representing to Ticketmaster that they would

26  comply with the Terms of Use for the website, and thus that they would not, among

27  other things, use the site for commercial purposes, use bots or other automated

28  devices, abuse the website, or exceed per-customer ticket limits.

275

119.  Each and every such representation was false.  Ticketmaster is informed and believes, and based thereon alleges, that every time Defendants accessed and used the website, and every time they clicked the Accept and Continue button, they intended to, and did, violate the Terms of Use as described above.    Moreover, Ticketmaster is informed and believes that every time Defendants accessed and used Ticketmaster's website, they concealed from Ticketmaster their true intent to violate the Terms of Use.

120.  Ticketmaster relied on each such representation and omission by providing the information and services available on the website to Defendants.

121.  Ticketmaster's reliance was reasonable. Defendants received ample notice of the Terms of Use every time they accessed and used the website, and it has been necessary for them to click the Accept and Continue button both when setting up online accounts and when completing a ticket purchase.

122.  As a result of Defendants' fraudulent representations and omissions, Ticketmaster sold tickets to Defendants that Ticketmaster otherwise could have sold to legitimate users of the site but was unable to due to the RMG customers' misconduct.  Moreover, Defendants obtained information about the workings and architecture of Ticketmaster's website to assist in their design of prohibited automated devices, and Defendants used Ticketmaster's website to test their devices, which in turn have been used by others to defraud Ticketmaster.

123.  As a proximate result of this fraudulent misconduct, Ticketmaster has been damaged in an amount to be proved at trial.

124.  Ticketmaster is informed and believes that Defendants' conduct was undertaken with the intent to injure Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights, and constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code Section 3294. As a result, Ticketmaster is entitled to an award of punitive damages against each Defendant in an amount sufficient to deter them from future misconduct.

246

1

2              **ELEVENTH CLAIM FOR RELIEF**

3                 **Aiding and Abetting Fraud**

4                 **(Against all Defendants)**

5          125.  Ticketmaster alleges and incorporates by reference all of the

6   preceding paragraphs.

7          126.  RMG's customers have repeatedly accessed Ticketmaster's

8   website, and in proceeding to use the website, represented to Ticketmaster that they

9   would comply with the Terms of Use, and thus that they would not, among other

10  things, use the site for commercial purposes, use bots or other automated devices,

11  abuse the website, or exceed per-customer ticket limits.

12         127.  These RMG customers clicked the "Accept and Continue"

13  button on Ticketmaster's website when setting up their online accounts, thereby

14  expressly representing to Ticketmaster that they would comply with the Terms of

15  Use for the website, and thus that they would not, among other things, use the site

16  for commercial purposes, use bots or other automated devices, abuse the website, or

17  exceed per-customer ticket limits.

18         128.  In addition, since 2006, these RMG customers have repeatedly

19  clicked the "Accept and Continue" button on Ticketmaster's website when

20  completing purchases of tickets, thereby expressly representing to Ticketmaster that

21  they would comply with the Terms of Use for the website, and thus that they would

22  not, among other things, use the site for commercial purposes, use bots or other

23  automated devices, abuse the website, or exceed per-customer ticket limits.

24         129.  Each and every such representation by these RMG customers

25  was false.  Ticketmaster is informed and believes, and based thereon alleges, that

26  every time the RMG customers accessed and used the website, and every time they

27  clicked the Accept and Continue button, they intended to, and did, violate the

28  Terms of Use as described above.  Moreover, Ticketmaster is informed and

247

1  believes, and based thereon alleges, that every time the RMG customers accessed
2  and used Ticketmaster's website, they concealed from Ticketmaster their true intent
3  to violate the Terms of Use.

4      130. Ticketmaster relied on each such representation and omission by
5  providing the information and services available on the website to RMG's
6  customers, including the sale to them of substantial quantities of tickets.

7      131. Ticketmaster's reliance was reasonable. RMG's customers
8  received ample notice of the Terms of Use every time they accessed and used the
9  website, and it has been necessary for them to click the Accept and Continue button
10  both when setting up their online accounts and when completing a ticket purchase.

11      132. As a result of the fraudulent representations and omissions of
12  RMG's customers, Ticketmaster sold tickets to them that Ticketmaster otherwise
13  could have sold to legitimate users of the site but was unable to due to the RMG
14  customers' misconduct.

15      133. As a proximate result of this fraudulent misconduct,
16  Ticketmaster has been damaged in an amount to be proved at trial.

17      134. Defendants have aided and abetted all of this fraudulent
18  misconduct. Defendants had actual knowledge that each of RMG's customers was
19  acquiring RMG's products and services for the purpose of defrauding Ticketmaster,
20  and Defendants provided substantial assistance to RMG's customers for this
21  purpose by providing RMG's products and services and counseling RMG's
22  customers how to exploit the Ticketmaster system. Thus, Defendants are liable for
23  all of the damages and harm that Ticketmaster has incurred by reason of the RMG
24  customers' fraudulent misconduct.

25      135. Ticketmaster is informed and believes that Defendants' conduct
26  was undertaken with the intent to injure Ticketmaster, or with a willful and
27  conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
28  evidence of oppression, fraud and malice under California Civil Code Section 3294.

248

1   As a result, Ticketmaster is entitled to an award of punitive damages against each

2   Defendant in an amount sufficient to deter them from future misconduct.

3

4           WHEREFORE, Ticketmaster respectfully requests that the Court:

5           1.    Enjoin all Defendants from:

6                       a.  infringing or assisting any other person or entity in infringing

7   Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth

8   herein by copying pages from that website in excess of the scope of the license

9   granted by the ticketmaster.com Terms of Use;

10                      b.  manufacturing,    adapting,    modifying,    exchanging,

11  distributing, creating, importing, trafficking in, or using any bots, programs or other

12  technology, products, services, devices, components, or parts thereof to circumvent

13  the technological measures by which Ticketmaster controls access to its website;

14                      c.  accessing, visiting, purchasing tickets on, facilitating the

15  purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is

16  in excess of the agreement formed by the Terms of Use by which users are

17  permitted to visit that website;

18                      d.  using, or causing, urging or assisting any other person to use,

19  automated means such as bots to access Ticketmaster's website;

20                      e.  using, or causing, urging or assisting any other person to use,

21  any program that is designed to circumvent security measures such as CAPTCHA

22  to attempt to access Ticketmaster's website;

23                      f.  designing, selling or marketing any program or device that is

24  designed to provide an automated means of accessing Ticketmaster's website or

25  that is designed to circumvent security measures such as CAPTCHA on

26  Ticketmaster's website;

27                      g.  soliciting the design, purchase, sale or use of any program or

28  device that is designed to provide an automated means of accessing Ticketmaster's

249

1  website or that is designed to circumvent security measures such as CAPTCHA on

2  Ticketmaster's website;

3  h. purchasing, selling, transferring or acquiring any program or

4  device that is designed to provide an automated means of accessing Ticketmaster's

5  website or that is designed to circumvent security measures such as CAPTCHA on

6  Ticketmaster's website;

7  i. accessing or using Ticketmaster's website for any

8  commercial purpose whatsoever;

9  j. abusing Ticketmaster's website in any way, such as

10  exceeding limits in the Terms of Use for requesting web pages and making requests

11  to transactional servers more than once during any three-second interval;

12  k. purchasing tickets in excess of per customer ticket limits; and

13  l. reselling any tickets obtained through Ticketmaster that were

14  not obtained legitimately in accordance with the Terms of Use;

15  2. Order that Defendants be required to:

16  a. account for, hold in constructive trust, pay over to

17  Ticketmaster, and otherwise disgorge all profits derived by Defendants from their

18  individual and collective misconduct as alleged herein; and

19  b. pay to Ticketmaster the costs of this action, together with

20  reasonable attorneys' fees and disbursements, in accordance with federal and

21  California law, including but not limited to 17 U.S.C. Sections 505 and 1203, and

22  California Penal Code Section 502(e)(2);

23  3. Award to Ticketmaster liquidated, compensatory, statutory,

24  treble and punitive damages; and

25  / / /

26  / / /

27

28

250

1          4.    Award to Ticketmaster all further relief, as the Court deems just

2    and equitable.

3

4    Dated:  June 25, 2007                    MANATT, PHELPS & PHILLIPS, LLP
                                              ROBERT H. PLATT
5                                             MARK S. LEE
                                              DONALD R. BROWN
6

7                                             By: _Robert H. Platt_____

8                                             Robert H. Platt
                                              Attorneys for *Plaintiff*
9                                             TICKETMASTER L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41117842.2                            38                  FIRST AMENDED COMPLAINT

251

1

## **JURY DEMAND**

2          Ticketmaster demands a jury trial in this action.

3

4   Dated:  June 25, 2007                    MANATT, PHELPS & PHILLIPS, LLP
                                             ROBERT H. PLATT
5                                            MARK S. LEE
                                             DONALD R. BROWN
6

7
                                        By: _Robert H. Platt /DEF_____
8                                            Robert H. Platt
                                             Attorneys for *Plaintiff*
9                                            TICKETMASTER L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

262

## PROOF OF SERVICE

I, Rebecca Blake, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 6, 2007, I served a copy of the within document(s):

### FIRST AMENDED COMPLAINT

☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐  by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Golden State Overnight agent for delivery.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒  by sending an electronic message with attached PDF.

Caryn Brottman Sanders, Esq.
Law Offices of Caryn Sanders
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0788
Fax: (661) 362-0789
Email: caryn@sanders-law.com

Joseph S. Provanzano, J.D.
Law Offices of Joseph S. Provanzano
16 Bourbon Street, Suite C
Peabody, Massachusetts 01960-1338
Tel: (978) 535-8222
Fax: (978) 535-8228
Email: JoePro12@aol.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 6, 2007, at Los Angeles, California.

Rebecca Blake

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120062.1

263

1

## PROOF OF SERVICE

2

I, Rebecca Blake, declare:

3

I am a citizen of the United States and employed in Los Angeles County, California. I am
over the age of eighteen years and not a party to the within-entitled action. My business address
is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 25, 2007, I
served a copy of the within document(s):

4

5

6

FIRST AMENDED COMPLAINT FOR: (1)COPYRIGHT INFRINGEMENT (17 USC
§ 101, *ET SEQ.*); (2) VIOLATION OF DIGITAL MILLENIUM COPYRIGHT ACT
(17 USC § 1201); (3) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18
U.S.C. § 1030); (4) VIOLATION OF CALIFORNIA PENAL CODE § 502;
(5)VIOLATION OF RICO (18 U.S.C. § 1962(c)); (6) VIOLATION OF RICO (18
U.S.C. § 1962(d)); (7)BREACH OF CONTRACT; (8) INDUCING BREACH OF
CONTRACT; (9) INTENTIONAL INTERFERENCE WITH CONTRACTUAL
RELATIONS; (10) FRAUD; and (11) AIDING AND ABETTING FRAUD

7

8

9

10

☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

11

12

☐  by placing the document(s) listed above in a sealed United States Postal Service
Express Mail envelope with postage thereon fully prepaid, in the United States
mail at Los Angeles, California addressed as set forth below.

13

14

☒  by placing the document(s) listed above in a sealed envelope and affixing a pre-
paid air bill, and causing the envelope to be delivered to a Golden State Overnight
agent for delivery.

15

16

☐  by personally delivering the document(s) listed above to the person(s) at the
address(es) set forth below.

17

18

☒  by sending an electronic message with attached PDF.

19

David N. Tarlow, Esq.
Law Offices of Coggan & Tarlow
1925 Century Park East, Suite 2320
Los Angeles, California 90067-2343
Tel. No. (310) 407-0922
Fax No. (310) 407-0923
Email: dnt@cogganlaw.com

20

21

22

23

I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

254

1        I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

2

3        Executed on June 25, 2007, at Los Angeles, California.

4

5    _Rebecca Blake_
                      Rebecca Blake

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

255

# EXHIBIT "A"

256

Terms of Use

Welcome to Ticketmaster. The following are the Terms of Use (these "Terms") that govern use of the Ticketmaster.com and Ticketmaster.ca web sites (collectively, the "Site"). When we say the "Site" we are also referring to the TicketExchange sections of the Site where you can buy and resell tickets. By using or visiting the Site, you expressly agree to be bound by these Terms and to follow these Terms and all applicable laws and regulations governing the Site. Ticketmaster, Ticketmaster Canada Ltd. and each of their respective subsidiaries (collectively "Ticketmaster" or "we") reserve the right to change these Terms at any time, effective immediately upon posting on the Site. Please check this page of the Site periodically. If you violate these Terms, Ticketmaster may terminate your use of the Site, bar you from future use of the Site, cancel tickets you receive through the site, cancel your ticket order, and/or take appropriate legal action against you.

**Permitted Use**
You agree that you are only authorized to visit, view and to retain a copy of pages of this Site for your own personal use, and that you shall not duplicate, download, publish, modify or otherwise distribute the material on this Site for any purpose other than to review event and promotional information, for personal use, or to purchase tickets or merchandise, unless otherwise specifically authorized by Ticketmaster to do so. You also agree not to deep-link to the site for any purpose, unless specifically authorized by Ticketmaster to do so or unless deep-linking to TicketExchange pages where you have posted tickets for sale. The content and software on this Site is the property of Ticketmaster and/or its suppliers and is protected by U.S., Canadian and international copyright laws. We post a legal notice and various credits on pages of the Site, which may not be removed. Please do not remove this notice or these credits, or any additional information contained along with the notices and credits.

**Ticket Purchase Policy**
Please review the Purchase Policy, which will govern your order or purchase of any tickets through the Site.

**TicketExchange Selling Policy**
Please review the TicketExchange Selling Policy, which will govern your sale, or attempted sale, of any tickets using the TicketExchange portions of the Site.

**Truthfulness and Accuracy of the Information You Provide; Complying with Laws; Verifications and Authorizations**
The sale or purchase of tickets to entertainment events is regulated by certain states, counties and cities. You may be asked to provide information during processes you engage in on the Site. You represent and warrant that all information you provide will be true, complete and correct, and that you will update all information as it changes. You also acknowledge that complying with laws is your responsibility, AND YOU AGREE NOT TO HOLD US LIABLE FOR YOUR FAILURE TO COMPLY WITH ANY LAW OR OUR FAILURE TO NOTIFY YOU OF, OR PROPERLY APPLY, ANY LAW. WE WILL COMPLY WITH LAW ENFORCEMENT AND MAY PROVIDE THEM WITH ALL INFORMATION YOU SUBMIT TO US TO ASSIST IN ANY INVESTIGATION OR PROSECUTION THEY MAY CONDUCT. If we are unable to verify or authenticate any information or tickets you provide during any registration, ordering, purchase, ticket posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no longer able to verify or authorize your credit card or bank account information, you may be prohibited from using the Site.

**User Contributions to the Site**
From time to time, the Site may provide you with opportunities to contribute to the Site, which may include, but not be limited to, uploading your user profile, participating in chats and using bulletin boards. Anything that is contributed to the Site by you or other Site users will be referred to in these Terms as "User Content". Ticketmaster is not liable or responsible for any User Content. The contributions of third parties do not necessarily represent the view or opinions of Ticketmaster. Ticketmaster cannot preview User Content before it appears. Users can be held liable for any illegal or prohibited User Content they provide to the Site, including among other things, infringing, defamatory or offensive materials. If you discover this kind of material on the Site, please notify us at legal@ticketmaster.com if the material is on Ticketmaster.com and legal@ticketmaster.ca if the material is on Ticketmaster.ca. We will investigate your claim and may then take the actions deemed appropriate.

**Links and Search Results**
The Site may automatically produce search results that reference or link to third party sites throughout the World Wide Web. Ticketmaster has no control over these sites or the content within them. Ticketmaster cannot guarantee, represent or warrant that the content contained in the sites is accurate, legal and/or inoffensive. Ticketmaster does not endorse the content of any third party site, nor do we warrant that they will not contain viruses or otherwise impact your computer. By using the Site to search for or link to another site, you agree and understand that you may not make any claim against Ticketmaster for any damages or losses, whatsoever, resulting from your use of the Site to obtain search results or to link to another site. If you have a problem with a link from the Site, please notify us at legal@ticketmaster.com if the link is on Ticketmaster.com and legal@ticketmaster.ca if the link is on Ticketmaster.ca, and we will investigate your claim and take any actions we deem appropriate in our sole discretion.

Policies and Se

257

**Prohibited Content**

The following is a partial list of the kind of User Content which is illegal or prohibited on the Site. It includes User Content that:

- Is patently offensive to the online community, such as User Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual, could be harmful to minors;
- Harasses or advocates harassment of another person;
- Involves the transmission of "junk mail", "chain letters", or unsolicited mass mailing or "spamming";
- Promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;
- Promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated music or links to pirated music files;
- Contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);
- Displays pornographic or sexually explicit material of any kind;
- Provides material that exploits people under the age of 18 in a sexual or violent manner, or solicits personal information from anyone under 18;
- Provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;
- Solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and
- Engages in commercial activities without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

**Offline Conduct**

Although Ticketmaster cannot monitor the conduct of users off the Site, it is also a violation of these rules to use any information obtained from this Site in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit or sell to any Site user without their prior explicit consent.

**Commercial Use**

No bulletin board, chat or other areas of this Site may be used by our visitors for any commercial purposes such as to conduct sales of tickets, merchandise or services of any kind, except that TicketExchange can be used to resell tickets to the extent compliant with law. You must obtain our prior written consent to make commercial offers of any kind, whether by advertising, solicitations, links, or any other form of communication, except you may post tickets for resale through TicketExchange to the extent you are doing so in accordance with law. Without limiting the foregoing, you may not use the Site to resell or link to other sites for the purpose of selling tickets of any kind, except you may resell tickets through TicketExchange to the extent you are doing so in accordance with law. We will investigate and take appropriate legal action against anyone who violates this provision, including without limitation, removing the offending communication from the Site and barring such violators from use of the Site. We reserve the right to block access to this Site or Ticketmaster's other services, or cancel a ticket order or ticket with respect to any person believed to be, or believed to be acting in concert with any person who is believed to be, violating the law or these Terms or Ticketmaster's rights, or utilizing automated means to process or place ticket orders, or who has ordered a number of tickets that exceeds the stated limit. Violating any limitations or terms on the Site will be deemed to be a violation of these Terms. Please note that Ticketmaster has entered into agreements with certain sport teams for whom Ticketmaster hosts web sites that are designed to allow such sports teams' season ticket holders to sell individual game tickets from their season ticket packages through such web sites ("Season Ticket Sale Sites"). Some of these Season Ticket Sale Sites can be found through this Site. Nothing in this paragraph shall prohibit the sale or purchase of tickets through the Season Ticket Sale Sites or through TicketExchange, as long as such sales and purchases are conducted pursuant to the terms that apply to the Season Ticket Sale Sites or TicketExchange (as the case may be) and comply with law.

**Access and Interference**

You agree that you will not use any robot, spider or other automatic device, process or means to access the Site. Nor shall you use any manual process to monitor or copy our web pages or the content contained thereon or for any other unauthorized purpose without our prior expressed written permission. You agree that you will not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site. You agree that you will not take any action that imposes an unreasonable or disproportionately large load on our infrastructure. You agree that you will not access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval. You agree that you will not copy, reproduce, alter, modify, create derivative works, or publicly display any content (except for your own personal, non-commercial use) from the Site without the prior expressed written permission of Ticketmaster.

**Unauthorized Use of the Site**

Any illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use. You do not

258

have permission to access the Site in any manner that violates, or may violate, or facilitate violating, these Terms of Use. Illegal or unauthorized use of the Site includes, but is not limited to, using the site to facilitate illegal ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot, spider or other automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour period (hereafter referred to as "Abusive Use"); or (b) to use any passcode or password, regardless of whether or not such password or passcode is unique, to participate in a pre-sale or other offer on the Site if you are not the original recipient of such passcode or password (i.e., if you did not receive the passcode or password from Ticketmaster, or from the fan club or other organization with whom Ticketmaster is working to enable such pre-sale or offer) or if your participation in such pre-sale or other offer is inconsistent with such pre-sale's or offer's terms.

### Suspected Violation of these Terms of Use or Law; Injunctive, Equitable Relief, and Liquidated Damages

Violations of these Terms of Use, including Unauthorized Use of the Site, may be investigated and appropriate legal action may be taken, including without limitation civil, criminal and injunctive redress. You understand and agree that in Ticketmaster's sole discretion, and without prior notice, Ticketmaster may terminate your access to the Site, cancel your ticket order or tickets acquired through your ticket order, cancel your ticket postings, remove any unauthorized User Content or exercise any other remedy available, if Ticketmaster believes that your conduct or the conduct of any person with whom Ticketmaster believes you act in concert, or the User Content you provide, or any resale of such tickets purchased through Ticketmaster, violates or is inconsistent with these Terms or the law, or violates the rights of Ticketmaster, a client of Ticketmaster or another user of the Site. You agree that monetary damages may not provide a sufficient remedy to Ticketmaster for violations of these Terms and you consent to injunctive or other equitable relief for such violations.

You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request each time that a page request is made after that first 1000 during that twenty-four hour period. You also agree that this will be the measure of damages for any Abusive Use that occurred prior to this provision of these Terms of Use being in effect.

Ticketmaster is not required to provide any refund to you if it exercises any of its rights or remedies because you have violated these Terms or any of Ticketmaster's rights. For more information about how we handle copyright infringements on the Site, please see our Copyright Policy. Additionally, we reserve the right, in our sole discretion, to modify, suspend or discontinue any part of this Site at any time, with or without notice to you. We also reserve the right, in our sole discretion, to impose limits on certain features and services and to restrict access to any part or to all of the Site without notice to you. We shall not be liable to you or any third party for any claim or cause of action arising out of our exercise of the foregoing rights.

### Privacy

We believe that your privacy and the privacy of all our users is important. These Terms are subject to the Privacy Policy, which is hereby incorporated by reference. Ticketmaster will not be responsible or otherwise liable for any use or disclosure of your contact information, or financial information, by a third party to whom Ticketmaster is allowed to disclose your contact information under the Privacy Policy. If you post any User Content to the Site, by electronic mail or otherwise, we will treat it as non-confidential and non-proprietary to you. When we say in these Terms "post" we mean the provision of information (including, but not limited to, "User Content") to the Site through features of the Site that are used to make information available to other members of the public (e.g., user reviews, bulletin boards, chat rooms, etc.). Information that is posted to the Site shall not be subject to the Privacy Policy and may be publicly displayed and disclosed and otherwise used by Ticketmaster or any third party in any way. By posting User Content to the Site, you authorize us to use or allow others to distribute, reproduce or otherwise use such User Content. You should not post information about yourself on the Site that can be used to identify or contact you, including, but not limited to, your name, home or work address, phone numbers, pagers, email address or other such information. If you post such information, Ticketmaster cannot prevent it from being used in a manner that violates these Terms, the law, or your personal privacy and safety. By posting such information on the Site, you violate these Terms, and you assume the risks and sole liability for the results of such posting. You understand that if you post tickets on TicketExchange through the posting process applicable to licensed resellers, under certain circumstances some of your contact information may be displayed to the public.

Ticketmaster is not liable for any lost data resulting from the operation of the Site or the enforcement of the Terms. We urge all users to maintain their own back up versions of any User Content or other information they submit to the Site.

### U.S. Export Controls

259

This Site and software derived from this one is fully subject to United States export controls. No software from this site may be downloaded or otherwise exported or re-exported: (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S Commerce Department's Table of Deny Orders. By downloading or using the Site or any software derived there from, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

**Copyright Policy**
We will terminate the privileges of any user who uses this Site to unlawfully transmit copyrighted material without a license express consent, valid defence or fair use exemption to do so. In particular, users who submit User Content to this Site, whether articles, images, stories, software or other copyrightable material must ensure that the User Content they upload does not infringe the copyrights or other rights of third parties (including, but not limited, to trademark, trade secret, privacy or publicity rights). After proper notification by the copyright holder or it agent to us, and confirmation through court order or admission by the user that they have used this Site as an instrument of unlawful infringement, we will terminate the infringing users' rights to use and/or access to this Site. We may, also in our sole discretion, decide to terminate a user's rights to use or access to the Site prior to that time if we believe that an alleged infringement has occurred.

**Disclaimers**
TICKETMASTER DOES NOT PROMISE THAT THE SITE WILL BE ERROR-FREE, UNINTERRUPTED, OR THAT IT WILL PROVIDE SPECIFIC RESULTS FROM USE OF THE SITE OR ANY CONTENT, SEARCH OR LINK ON IT. THE SITE AND ITS CONTENT ARE DELIVERED ON AN "AS-IS" AND "AS-AVAILABLE" BASIS. TICKETMASTER CANNOT ENSURE THAT FILES YOU DOWNLOAD FROM THE SITE WILL BE FREE OF VIRUSES OR CONTAMINATION OR DESTRUCTIVE FEATURES. TICKETMASTER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ALSO ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. TICKETMASTER WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, INCLUDING WITHOUT LIMITATION, DIRECT, INDIRECT, INCIDENTAL, AND PUNITIVE AND CONSEQUENTIAL DAMAGES. TICKETMASTER MAKES NO GUARANTEE OF ANY SPECIFIC RESULT FROM USE OF THIS SITE OR USE OF THE TICKETMASTER SERVICE.

TICKETMASTER DISCLAIMS ANY AND ALL LIABILITY FOR THE ACTS, OMISSIONS AND CONDUCT OF ANY THIRD PARTY USERS, TICKETMASTER USERS, ADVERTISERS AND/OR SPONSORS ON THE SITE, IN CONNECTION WITH THE TICKETMASTER SERVICE OR OTHERWISE RELATED TO YOUR USE OF THE SITE AND/OR THE TICKETMASTER SERVICE. TICKETMASTER IS NOT RESPONSIBLE FOR THE PRODUCTS, SERVICES, ACTIONS OR FAILURE TO ACT OF ANY VENUE, PERFORMER, PROMOTER OR OTHER THIRD PARTY IN CONNECTION WITH OR REFERENCED ON THE SITE.

Without limiting the foregoing, you may report the misconduct of users and/or third party advertisers, service and/or product providers referenced on or included in the Site to Ticketmaster at legal@ticketmaster.com if on Ticketmaster.com or at legal@ticketmaster.ca if on Ticketmaster.ca. Ticketmaster may investigate the claim and take appropriate action, in its sole discretion.

**Limitation on Liability**
IN NO EVENT WILL TICKETMASTER BE LIABLE TO YOU FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES, OR FOR LOST PROFITS, REVNUES OR BUSINESS OPPORTUNITIES, EVEN IF TICKETMASTER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**Disputes**
If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in the United States, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California. If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you have a dispute regarding the Site but not regarding an event (and not regarding a ticket for an event), then: (a) if you are accessing the Site from the United States or any country other than Canada, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California; and (b) if you are accessing the Site from Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you are purchasing or selling through TicketExchange tickets to an event that is located in the State of Illinois, then this paragraph shall not apply to your purchase or sale, and instead the paragraph that will apply is the paragraph below entitled "Additional Provisions Applicable to Persons Using TicketExchagne to Buy or Sell Tickets to any Event Located in the State of Illinois."

2 60

**Indemnity**
You agree to indemnify and hold Ticketmaster and its affiliates, and each of Ticketmaster's and its affiliates' respective officers, agents, employees, contractors and principals, harmless from any loss, liability, claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of your use of the Site, including also your use of the Site to provide a link to another site or to upload content or other information to the Site.

**Trademarks**
Ticketmaster and Ticketmaster.com and design are registered trademarks of Ticketmaster. All rights reserved.

**Additional Provisions Applicable to Persons Using TicketExchange to Buy or Sell Tickets to any Event Located in the State of Illinois**
If, and only if, you are using TicketExchange to purchase or sell a ticket to an event that is located in the State of Illinois, then you understand, agree and acknowledge the following:

- This website is operated by Ticketmaster L.L.C. Ticketmaster's address in the State of Illinois is: 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607.
- If you have a complaint or inquiry regarding ticket resales made through TicketExchange for any event located in the State of Illinois, please email us at ticketexchange@ticketmaster.com or call us at (877) 446-9450.
- These Terms shall be governed by and construed in accordance with the laws of the State of Illinois. In the event of a dispute, you, Ticketmaster, and all buyers and sellers of tickets through TicketExchange each agree to submit to the exclusive jurisdiction and venue of the state and federal courts located in Chicago, Illinois, and the parties consent to the exclusive and personal jurisdiction and venue of these courts, subject to the following: If you are a reseller of one or more tickets through TicketExchange and you have a dispute with any person or business who buys any of those tickets from you, or you are a buyer of one or more resold tickets resold through TicketExchange and you have a dispute with the person or business that sold any of those tickets to you, you hereby agree that that dispute will be solely and finally settled in Illinois by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, and the non-prevailing party in the arbitration shall pay the fees and expenses of the arbitrator(s) and the costs of arbitration and the enforcement of any award rendered therein, including the attorneys' fees and expenses of the prevailing party. In order to commence such a proceeding, please send a letter describing the dispute to Ticketmaster Legal Department, 8800 Sunset Blvd., West Hollywood, CA 90069.

---

Home    Music    Sports    Arts & Theater    Family    Gift Cards

Site Map    |    About Ticketmaster    |    Our Policies    |    Privacy Policy    |    Sell Tickets With Us    |    International    |    Care

Use of this site is subject to express terms of use, which prohibit commercial use of this site. By continuing past this page, you agree to abid

© 2007  Ticketmaster. All rights reserved.

Partner Sites: Admission  Condo Direct  Cottonblend  Domania  Expedia  GetSmart  HomeConnections  Home Loan Center  Hotels  H
iNest  IOS Catalog  LendingTree  LendingTree Loans  LiveDaily  RealEstate  ReserveAmerica  ServiceMagic  Shoes  Smith + Noble
TicketWeb



# ticketmaster

⊙ You have 1:30 minutes to complete this page.
After 1:30 minutes these tickets will be released.

## create account

Already have a Ticketmaster Account? Sign in

First name

Email address

Retype Email
address

Zip/Postal code

Type password        6-12 characters

Retype password

As a Ticketmaster user, by purchasing a ticket to an event or completing a registration form in order to be able to purchase a ticket to an event, you agree that Ticketmaster may share your information with the venues, promoters, artists, teams, leagues and other third parties associated with that event. These parties may use your information to contact you or may use or disclose your information in other ways. Please contact them directly to learn about their policies. Ticketmaster may also contact you and use and disclose the information you submit, as described in the Ticketmaster Privacy Policy.

As a registered user of Ticketmaster.com, you are subject to the terms of use which, among other things, prohibits commercial use of this site.

Create and Continue

Already have an account? Sign in

© 2005 Ticketmaster. All rights reserved.

25 37

262

# EXHIBIT "C"

Ticketmaster

complete this page within 1:00 minute.
:00 minute, the tickets we're holding will be released for others to buy.

**te Account**

Already have a Ticketmaster Account? **Log In**

name
address
pe Email address
ostal code
password          5-12 characters
pe password

irchasing a ticket to an event, or completing this registration form in order to be able to purchase a ticket to an event or to bid in an auction, you
ite that you consent to Ticketmaster sharing your email address and other information with those involved in the event (e.g., venues, teams, artists'
sentatives and fan clubs, promoters and leagues), and that you consent to those involved in the event using your information to contact you by email
ler means to send you marketing or other messages or using or disclosing your information in other ways. Please contact them directly to learn about
policies. By completing this registration form, you also indicate that you consent to Ticketmaster contacting you by email or other means to send you
:ting or other messages and using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy.

i are under 13 years old, you must not fill in this form or provide any information about yourself.

registered user of Ticketmaster.com, you are subject to the terms of use which, among other things, prohibits commercial use of this site.

**Accept and Continue**

© 2006 Ticketmaster. All rights reserved.

26 33
264

**EXHIBIT  J**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiff incorporates by reference each and every one of the General Responses and Objections as though fully set forth herein. Plaintiff further objects to this request because it seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request on the ground that it is vague and ambiguous, including but not limited to the phrases "internet security costs" and "factored". Plaintiff further objects to this request to the extent it lacks foundation. Plaintiff further objects to this request on the ground that it is compound, overbroad, unduly burdensome and oppressive. Plaintiff further objects to this request on the ground that it seeks the production of documents containing confidential, sensitive, proprietary, commercial, business and financial information. Plaintiff further objects to this request to the extent that it seeks documents protected by attorney-client privilege or the work-product doctrine.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Convenience charges are based, among other things, on Plaintiff's cost of doing business, which is in turn affected by the cost of, among other things, Plaintiff's attempt to maintain a secure website. Plaintiff has conducted a diligent search and reasonable inquiry during its effort to comply with this Request and has no documents currently within its possession, custody or control that identify the cost of attempting to maintain a secure website as a specific factor in determining convenience charges.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all DOCUMENTS which refer, reflect or relate to whether the costs associated with paying YOUR information technology staff are factored into YOUR convenience charges.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41184987.5                                6                TICKETMASTER L.L.C.'S RESPONSES TO
                                                           REQUESTS FOR PRODUCTION (SET ONE)

265

**EXHIBIT K**

## DECLARATION OF KEVIN MCLAIN

I, Kevin McLain, declare:

1.    I understand that in opposing Ticketmaster's motion for a preliminary injunction, RMG has argued that Ticketmaster had all of the information it needed to move for a preliminary injunction in May 2007, when it obtained the declaration of Chris Kovach. I don't know how much evidence is "enough" to move for a preliminary injunction, but as the person primarily responsible for assembling much of the information Ticketmaster has obtained in connection with its lawsuit against RMG and this motion, I can advise the Court that Ticketmaster was not able to find and did not obtain much of the evidence it submitted with its motion until July and August of 2007.

2.    Ticketmaster had some information about RMG before obtaining Mr. Kovach's declaration; it filed suit against RMG in April. Mr. Kovach's information was helpful in providing certain information about RMG and how its products worked. However, Ticketmaster did not know how extensive the problem was at that time.    I initially hoped that, with the information we had, we would be able to create technical countermeasures to eliminate the problem. Creating, developing and implementing those countermeasures was a very laborious task and took many weeks. We ran the countermeasures in July and August 2007, and they had a positive but incomplete effect, as I mentioned in my earlier declaration. However, Ticketmaster did not learn the extent of RMG's actions until it ran those technical countermeasures, and we saw how many millions of ticket requests were being made using such technology.

3.    After learning about RMG's programs from Mr. Kovach, I also was able to gather some information about the extent of RMG's actions by "data mining" Ticketmaster's database and publicly available information about IP addresses. This process involved searching for, locating, and analyzing large volumes of data. Engaging in that data mining is also a very laborious, time

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DECLARATIONS IN SUPPORT OF REPLY
MOTION FOR PRELIMINARY INJUNCTION

264

1    consuming exercise that was made more difficult by RMG's efforts to conceal its

2    actions. It took weeks to accomplish.

3        4.    Using the information provided by Mr. Kovach and uncovered

4    in our own investigations, Ticketmaster did not have all of the evidence presented

5    with its motion until August of 2007.

6        5.    I have read the declaration of Cipriano Garibay, and noted that

7    in that declaration he disputes whether CAPTCHA is "computer program." A

8    "computer program" is a set of instructions that achieve a certain result in a

9    computer. CAPTCHA is created by, has functionality because of, and appears on a

10   webpage due to computer codes created by  computer programmers that give

11   instructions to computers to create and give the desired functionality to the

12   "CAPTCHA" page. CAPTCHA and the computer codes that create it and give it

13   functionality certainly are "computer programs."

14       6.    I believe that would be true for all of the ticketmaster.com web

15   pages. All of those pages, which have distinctive designs that are original to

16   Ticketmaster, are created by what is called HTML and other computer codes.

17       7.    I understand that in opposition papers RMG has claimed that

18   Ticketmaster has no goodwill. Ticketmaster has thousands of clients who have

19   hired it over many years because of its demonstrated reputation and ability to

20   distribute tickets efficiently and fairly. They entrust Ticketmaster with the

21   responsibility to do so for them. Ticketmaster has spent millions of dollars in

22   advertising and developing its website and computer systems over many years.

23   Ticketmaster's name appears on every ticket it sells. There is very valuable

24   goodwill associated with Ticketmaster. Ticketmaster is the premier ticket

25   distribution company in the world for a reason.

26       8.    Recently, Ticketmaster has learned of a number of news stories

27   describing disappointed children and angry parents because of an inability to get

28   tickets to "Hannah Montana" events. Money alone cannot compensate

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41158806 1

3

DECLARATIONS IN SUPPORT OF REPLY TO
MOTION FOR PRELIMINARY INJUNCTION

267

1    Ticketmaster for the harm caused by children who have been disappointed and

2    parents who are angry at Ticketmaster when tickets are not available.  Such people

3    may never be Ticketmaster customers, and may develop negative impressions about

4    Ticketmaster that last for years.

5                I declare under penalty of perjury under the laws of the United

6    States of America that the forgoing is true and correct.

7                EXECUTED this 24th day of September, 2007 at Los Angeles, California.

8

9                                          _____

10                                         Kevin McLain

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41158896.1

4

DECLARATIONS IN SUPPORT OF REPLY TO
MOTION FOR PRELIMINARY INJUNCTION

268

**EXHIBIT  L**

## DECLARATION OF MARK S. LEE

I, Mark S. Lee, declare:

      1.    Since filing the last papers related to this motion on September 10, 2007, I directed that Internet searches be conducted to look for and copy news stories discussing Ticketmaster and ticket availability that were dated after the last filing. A number of such stories were discovered. Some of those stories were in text, while others had only a link to a video clip of the story itself. I directed that copies be made of those stories and, on some occasions where only a videoclip was provided, that the text be transcribed. Attached as Exhibit 24 are true copies of those stories, and, for some of the stories, a transcription of the video clip available on the Internet.

      2.    I also directed that the video clips be copied from the internet and onto a DVD. A true copy of those stories as copied on that DVD is attached as Exhibit 25. I am informed and believe that the stories copies on that DVD are viewable on a computer with a DVD drive, but that they are not viewable on a DVD player.

      3.    Ticketmaster has obtained a number of federal trademark registrations. True copies of some registrations obtained from the U.S. Patent & Trademark Office are attached as Exhibit 28.

      4.    I am informed and believe that Ticketmaster was recently served with a Civil Investigative Demand by the Attorney General of Missouri. A true copy of that request is attached as Exhibit 26.

////

////

////

////

////

////

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41158806.1

7

DECLARATIONS IN SUPPORT OF REPLY TO
MOTION FOR PRELIMINARY INJUNCTION

269

5.      I also am informed and believe that the Attorney General of Arkansas on September 21, 2007 announced that his office was investigating this issue. A true and correct copy of an announcement of that investigation that I printed from the Arkansas Attorney General's website is attached as Exhibit 27.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 24th day of September, 2007 at Los Angeles, California.

Mark S. Lee

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41158806.1

8

DECLARATIONS IN SUPPORT OF REPLY TO
MOTION FOR PRELIMINARY INJUNCTION