**EXHIBIT F**

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
rplatt@manatt.com
MARK S. LEE (Bar No. CA 094103)
mlee@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
dbrown@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TICKETMASTER L.L.C., a Virginia limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>RMG TECHNOLOGIES, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CJ 07-2534 ABC(JWJx)<br><br>Hon. Jeffrey W. Johnson<br><br>**DISCOVERY MOTION**<br><br>**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; DECLARATIONS OF ADAM LIEB, RAAQIM KNIGHT, CIPRIANO GARIBAY, AND DAVID TARLOW**<br><br>Hearing Date: April 17, 2008<br>Hearing Time: 2:00 p.m.<br>Location: Courtroom C, 8th Fl, Spring St.<br><br>Pre-Trial Conf.: September 15, 2008<br>Trial Date: October 1, 2008<br>Discovery Cut-Off: May 23, 2008 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41217279.1

JOINT STIPULATION RE
TICKETMASTER'S MOTION TO COMPEL

**DECLARATION OF DAVID N. TARLOW**

DAVID N. TARLOW declares and states:

1. I am an attorney duly admitted to practice law before this Court and all of the Courts of the State of California.

2. I submit this declaration pursuant to the joint motion of all parties ("motion") to compel the production of documents.

3. On the afternoon of October 15, 2007, just a few hours after Ticketmaster's motion for preliminary injunction ("MPI") was granted against RMG Technologies, Inc. ("RMG") in this matter, Ticketmaster personally served its Request for Production of Documents ("TRFP") upon RMG's counsel.

4. On October 23, 2007, Ticketmaster's attorney, Mark Lee ("Lee") sent me an email accusing RMG of violating the preliminary injunction and demanding that RMG "provide Ticketmaster with a full accounting of all actions it has taken since October 15, 2007." RMG denied the allegations. A true and correct copy of same is attached hereto as Exhibit "A."

5. On November 6, 2007, Ticketmaster filed an *ex parte* application for expedited discovery, requesting, among other things: (1) HTML and all source code and binary/executable copies of code for RMG's "TBAT," "Super Proxy," and other products and services used to facilitate purchases on ticketmaster.com; (2) all "log: files from the "super proxies" resident on RMG's computers from October 15, 2007 to present; (3) the "properties" files on RMG's computers; (4) a list of or documents identifying all internet service providers and all IP addresses (foreign or domestic) allocated to the "TBAT" product; (5) a list of or documents identifying all internet service providers and all IP addresses (foreign or domestic) controlled by RMG; (6) all files and data related to Ticketmaster's CAPTCHA that services RMG's Optical Character Recognition ("OCR") product, or other mechanism for solving CAPTCHA, which would be stored either on RMG's filesystem(s) or databases; (7) all files and applications related to answering or responding to Ticketmaster's

20. In meeting and conferring on Ticketmaster's responses to the RRFP, my first course of business was to ask Mr. Knight when the documents which Ticketmaster agreed to produce pursuant to RRFP Numbers 7, 8 and 9 would be produced. Mr. Knight stated that documents would not be produced for "at least 2 to 3 weeks" but that he did not "want to go out on a limb" because it may be longer.

21. I then asked Mr. Knight if Ticketmaster planned on providing any documents regarding its convenience charges, pursuant to RRFP Numbers 1, 2, 3 and 6 and if they were being withheld until the execution of a protective order. I explained to him that documents responsive to these requests were essential to defending against Ticketmaster's damages claims, because if Ticketmaster was passing off its website security expenditure to its customers, then it was not being damaged by the alleged conduct of RMG. Further, Mr. Blum conveyed to Mr. Knight that records regarding the convenience charges that concern the costs of website security are relevant to Ticketmaster's damages claims, specifically to show what was actually spent by Ticketmaster for its security. We asked that these documents be produced forthwith, without objection. Mr. Knight stated that he thought the requests were irrelevant, because Ticketmaster is entitled to use its money anyway it desired. This response confused me and I still do not know what he meant. He also stated he was told by partners at his firm not to compromise on these RRFPs and to advise me that these issues would have to be resolved by the magistrate on a motion to compel.

22. I then asked Mr. Knight if Ticketmaster planned on providing any documents in response to RRFP Number 12, which asked for all documents that reflect any claim that Ticketmaster has made for loss of goodwill. I explained that if Ticketmaster never made a claim for loss of goodwill, it would be relevant to negating its argument that it had lost or is in the process of losing goodwill in this matter. I further explained that if Ticketmaster had made a claim for loss of goodwill, it would be relevant to show the amount at which Ticketmaster valued its